United States Bankruptcy Court
Southern District of Texas
**ENTERED**
January 09, 2026
Nathan Ochsner, Clerk

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TEDDER INDUSTRIES, LLC,[1] | Case No. 25-90805 (CML) |
| Debtor. | Re: Docket No. 10 |

### FINAL ORDER (I) AUTHORIZING
### THE DEBTOR TO USE CASH COLLATERAL; (II) PROVIDING
### ADEQUATE PROTECTION TO AGENT; (III) GRANTING LIENS
### AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS;
### (IV)\ SCHEDULING A FINAL HEARING; AND (VI) GRANTING RLEATED RELIEF

Upon the motion (the "**Motion**") [Docket No. 10] of Tedder Industries, LLC, as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), for entry of orders seeking, among other things: (i) authorization for the Debtor's use of cash collateral, and (ii) granting related relief, as more fully set forth in Motion; due, proper and sufficient notice of the Motion and the final hearing thereon having been given; and this Court having found that no other further notice is necessary; and this Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation upon the Motion and all of the proceedings had before this Court in connection with the Motion,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

**A.** **Commencement of the Chapter 11 Case**: On December 8, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United

---

[1] The last four digits of the Debtor's federal tax identification number are 7652. The location of the Debtor's service address is: 4411 W Riverbend Ave, Post Falls, ID 83854-8150.

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"), thereby commencing this chapter 11 case (the "**Chapter 11 Case**").

      **B.**     **Debtor in Possession; No Committee**:  Since the Petition Date, the Debtor has been managing and operating its business and properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no official committee of unsecured creditors or other statutory committee (any such official committee of unsecured creditors or statutory committee, a "**Committee**") and no trustee or examiner has been appointed in the Chapter 11 Case.

      **C.**     **Jurisdiction and Venue**:  This Court has jurisdiction over this Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. §157(b)(2).  The predicates for relief sought herein are sections 105, 361, and 363 of the Bankruptcy Code, rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "**Complex Case Procedures**").  Venue is proper before this Court pursuant to 28 U.S.C. § 1408.  This Court may enter a final order consistent with Article III of the United States Constitution.

      **D.**     **Notice**.  Notice of the hearing on this Final Order and the relief requested in the Motion on an interim basis has been provided as described in the Motion and the Final Order by the Debtor in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances.

E.     **Necessity of Relief Requested**.  The Debtor has requested entry of this Final Order

pursuant to Bankruptcy Rule 4001(b)(2) and Bankruptcy Local Rules 4001-1, 4002-1, and 9013-

1, and good cause has been shown for entry of this Final Order.  The Debtor would not have

sufficient available sources of working capital to operate its business in the ordinary course or to

maintain its property without the use of cash collateral, including the cash in the checking accounts

ending -5456, -3882, -9344, -5118, -5316, -5167 and -7577 at First Interstate Bank (the "***Operating***

***Accounts***"), which is cash collateral of Main Street Capital Corporation as agent for the lenders

(the "***Agent***" or "***Lender***"), and includes cash proceeds and other cash equivalents, and all cash

and cash equivalent proceeds of the Lender's prepetition collateral, constituting cash collateral

within the meaning of 11 U.S.C. § 363(a) (the "***Cash Collateral***").  The Cash Collateral also serves

as security for repayment of the Debtor's obligations under the Loan Agreement (as defined

herein).  Without access to, and the ability to use Cash Collateral, the Debtor's ability to manage,

administer and preserve its estate would be immediately and irreparably harmed, thereby

materially impairing its estate and creditors and the likelihood of a successful outcome in this

Chapter 11 Case.

F.     **Debtor's Stipulations**:  The Debtor stipulates as follows (collectively,

the "***Debtor's Stipulations***"):

> a.  As of the Petition Date, the Debtor was party to that certain *Loan Agreement*,
> dated as of August 31, 2018 (as amended, restated, or modified from time to
> time, the "***Loan Agreement***"), which Loan Agreement governs the loan
> (the "***Loan***") in the stated principal amount of $21,300,000 made by the lenders
> party thereto (the "***Lenders***") to the Debtor.
>
> b.  The Lender has a valid security interest and perfected lien in all property
> defined as the Collateral in subparagraph (c) as evidenced by: (i) that certain
> *Security Agreement*, dated as of August 31, 2018 (as amended, supplemented,
> or modified from time to time, the "***Security Agreement***"); (ii) those certain
> *UCC-1 Financing Statements* filed by or on behalf of the Lender; (iii) that
> certain *Pledge Agreement* dated as of August 31, 2018 (as amended,
> supplemented, or modified from time to time, the "***Pledge Agreement***");

(iv) that certain *Intellectual Property Security Agreement,* dated as of August 31, 2018 (as amended, supplemented, or modified from time to time, the "***IP Security Agreement,***" and, together with the Loan Agreement, the Security Agreement, the Pledge Agreement, and all other instruments evidencing, securing, or pertaining to the Loan, the "***Loan Documents***");

c.  The Debtor admits, acknowledges, and does not dispute that, as security for repayment of the Debtor's obligations under the Loan, the Lender holds valid, senior, perfected, and enforceable liens (the "***Prepetition Liens***") in all of the collateral described in the Security Agreement (collectively, the "***Collateral,***" and together with any other property the Debtor granted or pledged as collateral pursuant to any of the Loan Documents to secure the Loan, the "***Prepetition Collateral***") consisting of substantially all of the assets of the Debtor.

d.  The Debtor admits, acknowledges, and does not dispute that, as of the Petition Date, the Debtor owed the Lenders pursuant to the Loan Documents, without objection, defense, counter-claim, or offset of any kind, (x) unpaid principal on account of the Loan in the aggregate amount of not less than $21,300,000, plus (y) all accrued and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accounts', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other obligations owing under or in connection with the Loan Documents (clauses (x) and (y), collectively, the "***Prepetition Secured Indebtedness***").

e.  The Debtor further admits, acknowledges, and does not dispute that: (i) the amounts owing to the Lender pursuant to the Loan Documents are due and owing, and are legally binding and enforceable obligations of the Debtor; (ii) the Loan Documents are valid and enforceable against the Debtor in accordance with their terms; and (iii) the liens of the Lender in, to, and against all of the Prepetition Collateral are valid, enforceable, and properly perfected, and are not subject to avoidance under any state or federal law.

G.  **Lender Consent:**  The Lender consents to the use of the Cash Collateral pursuant to the terms and conditions of this Final Order.  The terms and conditions of the proposed use of the Cash Collateral pursuant to this Final Order are fair and reasonable.  The Lender does not consent to any further or other use of the Cash Collateral for any other purpose except as set forth in this Final Order.

H.      **Adequate Protection**.  The Lender consents to, and the Debtor agrees to provide, the adequate protection of its interest in the Cash Collateral by (i) the Debtor's continued operation of the business pursuant to the Budget (as defined below) and (ii) the replacement liens provided herein, subject to the terms and conditions contained herein, all as more fully described and subject to the terms and conditions contained herein including, without limitations, the Milestones (as defined below).

Based upon the foregoing, the record before this Court, and good and sufficient cause appearing therefor, there is good cause for the Court to authorize the Debtor's limited use of the Cash Collateral under the terms and conditions contained herein (and not otherwise),

**IT IS HEREBY ORDERED THAT:**

1.      The paragraphs contained in the foregoing findings and conclusions of this Final Order are incorporated herein by reference, and the Debtor and the Lender consent and stipulate to the facts and findings contained in such preamble and to the entry of this Final Order.

2.      Any objections to the Motion with respect to the entry of this Final Order that have not previously been withdrawn, waived, or otherwise resolved are hereby denied and overruled.

3.      **Authorization to Use Cash; Budget**.  The Motion is granted on a final basis as set forth herein.  The Debtor may use the Cash Collateral in the Operating Accounts pursuant to the Budget, subject and pursuant to the terms and conditions set forth in this Final Order and for no other purpose without: (i) the prior written consent of the Lender; or (ii) further order of the Court after due and proper notice and opportunity to object; *provided, however*, that total operating disbursements under the Budget may not exceed 15% on a total-disbursements cumulative basis for each rolling 4-week period commencing upon the entry of this Final Order (the "***Budget Variance***"); *provided further* that any proceeds, distribution, or otherwise from any insurance

claim made by or on behalf of the Debtor shall be deposited into a segregated account that shall not be used by the Debtor except in accordance with the Budget absent written consent from the Lender, such consent not to be unreasonably withheld.  Any objections to the Motion with respect to the entry of this Final Order that have not previously been withdrawn, waived, or otherwise resolved are hereby denied and overruled.  Attached hereto as **Exhibit A** is the Debtor's initial four-week budget (the "***Initial Budget***").  The Lender has consented to the Initial Budget. On the first business day of every month, the Debtor shall file, only upon the Lender's reasonable consent, a subsequent four-week budget (each such budget, a "***Proposed Budget***").  The U.S. Trustee and the Committee (if any) shall have five (5) business days to file written objections to a Proposed Budget, after which period such Proposed Budget shall become an approved budget (each, an "***Approved Budget***," and together with the Initial Budget, the "***Budget***"), and the Debtor shall be authorized to operate under such Budget. Any available cash in excess of expenses provided for in the Budget from the prior month shall be paid to Lender.  If a Proposed Budget does not become an Approved Budget, the previous Approved Budget, or the Initial Budget, as applicable, shall remain the Budget pending resolution of any objection, or filing of a Proposed Budget which becomes an Approved Budget.

4.     **Adequate Protection**.  Pursuant to sections 105, 361, 362, and 363(e) of the Bankruptcy Code, the Lenders are entitled to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in value of their respective interests in the Prepetition Collateral resulting from, among other things, the Carve Out (as defined below), the use of Cash Collateral, the use, sale, or lease of any of the Prepetition Collateral, the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, and/or for any other reason for which adequate protection may be granted under

the Bankruptcy Code ("***Diminution in Value***").  The foregoing shall not, nor shall any provision

of this Final Order be construed as, a determination or finding that there has been or will be any

Diminution in Value of the Prepetition Collateral (including Cash Collateral) and the rights of all

parties as to such issues are hereby preserved.  Based on the Motion, the First Day Declaration,

and the record presented to the Court, the terms of the proposed adequate protection arrangements

and the use of the Prepetition Collateral, including Cash Collateral, are fair and reasonable and

reflect the Debtor's prudent business judgment.  As adequate protection for the Debtor's use of the

Cash Collateral, the Lender shall receive the following adequate protection:

(a)  <u>Compliance with Budget</u>.  Pending further order of the Court, the Debtor

shall operate its business and only make expenditures in accordance with the Budget and

within the Budget Variance.

(b)  <u>Adequate Protection Liens</u>.  Pursuant to Bankruptcy Code sections 361(2)

and 363(c)(2), and subject in all cases to the Carve Out, effective as of the Petition Date

and in each case perfected without the necessity of the execution by the Debtor (or

recordation or other filing) of security agreements, control agreements, pledge agreements,

financing statements, mortgages or other similar documents, or by possession or control by

the Agent or any other party, the Debtor is authorized to grant, and hereby is deemed to

have granted, to the Agent, for the benefit of itself and the other Lenders, valid, binding,

continuing, enforceable, fully-perfected, nonavoidable, first-priority senior (except as

otherwise provided in this paragraph below with respect to the Permitted Prior Liens (as

defined below) and the Carve Out), additional and replacement security interests in and

liens on (all such liens and security interests, the "***Adequate Protection Liens***") (i) the

Prepetition Collateral and (ii) all of the Debtor's now-owned and hereafter-acquired real

and personal property, assets and rights, including all prepetition property and post-petition property of the Debtor of any kind or nature, wherever located, whether encumbered or unencumbered, including, without limitation, any unencumbered assets of the Debtor, if any, and all prepetition property and post-petition property of the Debtor's estate, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all equipment, goods, accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the Debtor (including any accounts opened prior to, on, or after the Petition Date), insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all owned real estate, real property leaseholds, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, all commercial tort claims, and all claims and causes of action (including causes of action arising under section 549 of the Bankruptcy Code, claims arising on account of transfers of value from the Debtor to a non-Debtor affiliate incurred on or following the Petition Date), and any and all proceeds, products, rents, and profits of the foregoing (all property identified in this paragraph being collectively referred to as the "***Replacement Collateral***"), subject only to the Permitted Prior Liens and the Carve Out, in which case the Adequate Protection Liens shall be immediately junior in priority to such Permitted Prior Liens and to the Carve Out; notwithstanding the foregoing, the Replacement Collateral shall exclude all claims and causes of action arising under any section of chapter 5 of the Bankruptcy Code other than claims and causes of action arising under section 549

of the Bankruptcy Code (the "***Avoidance Actions***"), but, subject to entry of a Final Order, shall include any and all proceeds of and other property that is recovered or becomes unencumbered as a result of (whether by judgment, settlement, or otherwise) any Avoidance Action ("***Avoidance Proceeds***").  As used herein, "***Permitted Prior Liens***" shall mean any legal, valid, binding, perfected, enforceable liens on or security interests in the Prepetition Collateral as of the Petition Date which have priority over the Prepetition Liens that are not subject to avoidance, recharacterization, offset, subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, or other challenge.

(c)      <u>Adequate Protection Superpriority Claims</u>  As further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Debtor is authorized to grant, and hereby is deemed to have granted effective as of the Petition Date, to the Agent, for the benefit of itself and the other Lenders, allowed superpriority administrative expense claims in the Chapter 11 Case ahead of and senior to any and all other administrative expense claims in the Chapter 11 Case to the extent of any Diminution in Value (the "***Adequate Protection Superpriority Claims***"), junior only to the Carve Out.  Subject to the Carve Out, the Adequate Protection Superpriority Claims shall not be junior or *pari passu* to any other claims against the Debtor and shall have priority over all now or hereinafter incurred administrative expense claims against the Debtor, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, and 1114 of the Bankruptcy Code.

4.      **Carve Out**.

(a)      <u>Priority of Carve Out</u>.  Each of the Prepetition Liens, Adequate Protection Liens, the Prepetition Secured Indebtedness, and Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve Out.

(b)      <u>Definition of Carve Out</u>.  As used in this Final Order, the "***Carve Out***" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee (the "***U.S. Trustee***") under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the Carve Out Trigger Notice (as defined in (iii) below)); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the Carve Out Trigger Notice); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "***Allowed Professional Fees***") incurred or accrued by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "***Debtor Professionals***") or the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "***Committee Professionals***" and, together with the Debtor Professionals, the "***Professional Persons***") at any time before delivery by the Lenders of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice, (the amounts set forth in clauses (i) through (iii), the "***Pre-Carve Out Trigger Notice Cap***"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $200,000 incurred after the first business day following delivery by the Lenders of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the

amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**"). For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Lenders or the Lenders' advisors to the Debtor's lead restructuring counsel (Vartabedian Hester & Haynes LLP), the U.S. Trustee, and counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of a Termination Event (defined below) stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(c)     <u>Carve Out Reserve</u>. Notwithstanding the occurrence of a Termination Event, upon delivery of a Carve Out Trigger Notice on the Termination Declaration Date (as defined below), such Carve Out Trigger Notice shall constitute a demand to the Debtor to utilize all cash on hand as of such date and any available cash thereafter held by the Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees plus a reasonable estimate of fees and expenses not yet allowed for the period through and including the Termination Declaration Date (the "**Allowed and Estimated Professional Fees**"). The Debtor shall deposit and hold such amounts in a segregated account in trust to pay such Allowed and Estimated Professional Fees (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims. On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtor to utilize all cash on hand as of such date and any available cash thereafter held by the Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap. The Debtor shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger**

*Notice Reserve*" and, together with the Pre-Carve Out Trigger Notice Reserve, the "***Carve Out Reserves***") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in the Pre-Carve Out Trigger Notice Cap (the "***Pre-Carve Out Amounts***"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, any such excess shall be paid to the Lenders in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay all the amounts set forth in the Post-Carve Out Trigger Notice Cap (the "***Post-Carve Out Amounts***"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, any such excess shall be paid any unpaid Pre-Carve Out Amounts until paid in full, and then paid to the Lenders in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the Loan Documents, or this Final Order: (i) following delivery of a Carve Out Trigger Notice, the Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtor until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Agent for application in accordance with the Prepetition Documents; (ii)(A) disbursements by the Debtor from the Carve Out Reserves shall not increase or reduce the Prepetition Secured Indebtedness, (B) failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, (C) in no way shall the Approved Budget, Proposed Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed

as a cap or limitation on the amount of the Allowed Professional Fees due and payable by

the Debtor; and (iii) the Carve Out shall be senior to all liens and claims securing the

Prepetition Secured Indebtedness, the Adequate Protection Liens, the Adequate Protection

Superiority Claims, and any claims arising under section 507(b) of the Bankruptcy Code.

Notwithstanding anything to the contrary herein, if either of the Carve Out Reserves is not

funded in full in the amounts set forth herein, then any excess funds in one of the Carve

Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out

Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the

applicable amount set forth herein, prior to making any payments to the Lenders.

(d)      No Direct Obligation To Pay Allowed Professional Fees.  The Lenders

reserve the right to object to the allowance of any fees and expenses, whether or not such

fees and expenses were incurred in accordance with the Approved Budget.  Except for

permitting the funding of the Carve Out Reserves as provided herein, none of the Lenders

shall be responsible for the payment or reimbursement of any fees or disbursements of any

Professional Person or any fees or expenses of the U.S. Trustee or Clerk of the Court

incurred in connection with the Case or any successor case(s) under any chapter of the

Bankruptcy Code (a "***Successor Case***").  Nothing in this Final Order or otherwise shall be

construed to obligate the Lenders, in any way, to pay compensation to, or to reimburse

expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds

to pay such compensation or reimbursement.

(e)      Payment of Carve Out On or After the Termination Declaration Date.  Any

payment or reimbursement made on or after the occurrence of the Termination Declaration

Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out

on a dollar-for-dollar basis; *provided, however*, if the Debtor Professionals use their retainers to pay such Allowed Professional Fees, such payments shall not reduce the Carve Out.

5.     **Term**.  Unless extended further with the written consent of the Lender (confirmed by the entry of a further order of this Court), the authorization granted to the Debtor to use the Cash Collateral under this Final Order shall terminate upon the earlier of: (i) the date upon which a chapter 11 or chapter 7 trustee is appointed and (ii) the occurrence of an uncured event of default by the Debtor under this Final Order.  Notwithstanding any such termination, the obligations of the Debtor contained herein, including the Debtor's stipulations contained herein, and the rights, claims, liens, priorities, and other benefits and protections afforded to the Lender under this Final Order shall remain unimpaired and unaffected by any such termination, and shall survive any such termination.

6.     **Information Requests**.  The Debtor agrees to promptly provide information reasonably requested by the Lender concerning the Lender's Collateral.  On or before the third business day of each month during the term of this Final Order, the Debtor shall provide budget-to-actual variance reports to the Lender for the immediately prior month.  The Debtor shall also (a) reasonably cooperate with any appraiser, financial advisor, or other consultant hired by the Lender, and (b) promptly respond to reasonable requests for information made by or on behalf of the Lender.  The Debtor's financial advisor, if any, shall promptly respond to reasonable inquiries made by or on behalf of the Lender concerning the financial condition of the Debtor's business, the sources and uses of the Cash Collateral, and any other matter involving the Lender's Collateral.

7.   **Compliance with Covenants and Non-Financial Loan Obligations**. The Debtor shall comply with all covenants and non-financial obligations under the Loan Documents including, without limitation, financial reporting requirements.

8.   **Insurance Claims**.  The Debtor shall notify the Lender of any (A) insurance claim made by or on behalf of the Debtor and (B) any insurance proceeds, distribution, or otherwise from any insurance claim made by or on behalf of the Debtor within two (2) business days of the earlier of (i) the Debtor making such claim or (ii) the Debtor becoming aware that such claim has been made.  Notwithstanding anything herein to the contrary, the Debtor shall notify the Lender of any information under (A) or (B) above from prior to the entry of this Final Order within three (3) business days of the entry of this Final Order.

9.   **Reservation of Certain Third-Party Rights and Bar of Challenge and Claims.**

(a)   The stipulations, admissions, waivers, and releases contained in this Final Order, including the Debtor's Stipulations, shall be binding upon the Debtor, its estate, and any of their respective successors in all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.  The stipulations, admissions, waivers, and releases contained in this Final Order, including, the Debtor's Stipulations, shall be binding upon all other parties in interest, including any Committee and any other person acting on behalf of the Debtor's estate, including a trustee, except as to a party in interest solely to the extent such party in interest obtains proper standing and has timely and properly filed an adversary proceeding or contested matter under the Bankruptcy Rules asserting a Challenge (as defined below) on or before the date that is seventy-five (75) calendar days after entry of the Final Order; *provided* that if a Committee is appointed, such Committee shall have until the later of such

seventy-five (75) day period and the date that is sixty (60) calendar days after its appointment (the "***Challenge Period Termination Date***"); *provided however* that if, prior to the Challenge Period Termination Date, either the Chapter 11 Case converts to chapter 7 or a chapter 11 trustee is appointed, then in such case the Challenge Period Termination Date shall be extended solely with respect to the trustee until the later of the then Challenge Period Termination Date and the date that is ten (10) days following such conversion or appointment; (ii) seeking to avoid, object to, or otherwise challenge the Debtor's Stipulations regarding: (A) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and Prepetition Liens; or (B) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition Secured Indebtedness (any such claim, a "***Challenge***"); and (iii) in which the Court enters a final order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter.

(b)      Upon the occurrence of the Challenge Period Termination Date without the filing of a Challenge (or if any Challenge is filed and overruled): (i) any and all Challenges by any party (whether on behalf of the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in the Chapter 11 Case, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Cases ) shall be deemed to be forever barred; (ii) the Prepetition Secured Indebtedness shall constitute allowed secured claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Case and any Successor Cases; (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected liens on the

Prepetition Collateral, not subject to recharacterization, subordination, or avoidance; and (iv) all of the Debtor's stipulations and admissions contained in this Final Order, including the Debtor's Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Lenders' claims, liens, and interests contained in this Final Order shall be in full force and effect and forever binding upon the Debtor, the Debtor's estate, and all creditors, interest holders, and other parties in interest in this Case and any Successor Cases.

(c)     If any such adversary proceeding or contested matter is timely and properly filed under the Bankruptcy Rules, the stipulations and admissions contained in this Final Order, including the Debtor's Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other party-in-interest except to the extent that such stipulations and admissions were successfully and expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date.  Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including, without limitation, any Committee appointed in the Case, standing or authority to pursue any cause of action belonging to the Debtor or its estate, including, without limitation, any challenges (including a Challenge) with respect to the Loan Documents, the Prepetition Liens, and the Prepetition Secured Indebtedness, and a separate order of the Court conferring such standing on any Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party-in-interest.

10.     **No Marshaling**.  The Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, and proceeds of the Collateral shall be received and applied pursuant to this Order and the Loan Documents

notwithstanding any other agreement or provision to the contrary. Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the Collateral after the Termination Date.

11.     **Charging Expenses Against Collateral**.  Except as may otherwise be provided herein, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Case or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the Lender, the obligations to the Lender, the Collateral (including Cash Collateral), or the Replacement Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Lender. Nothing contained in this Final Order shall be deemed a consent by the Lender to any charge, lien, assessment, or claim against the Collateral or the Replacement Collateral, or otherwise, and no action, inaction or acquiescence by the Lender shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the Lender, the obligations to the Lender, the Collateral, or the Replacement Collateral.

12.     **Milestones**.  The Debtor shall complete the following actions within the time period indicated unless the Lender provides written consent to extend or waive such milestone (each a "***Milestone***" and collectively, the "***Milestones***"):

(a)     on or before **January 12, 2026**, the Debtor's broker will begin marketing efforts for the sale of all or substantially all assets pursuant to section 363 of the Bankruptcy Code (the "***Sale***");

(b)     on or before **March 5, 2026**, shall be the deadline for the submission of final offers for the Sale;

(c)      on or before **March 20, 2026**, shall be the deadline for the execution of a purchase and sale agreement by the Debtor and buyer, which purchase and sale agreement must be reasonably acceptable to the Lender, including without limitation, with respect to the purchase price;

(d)      on or before **March 26, 2026**, obtain an order, in a form reasonably acceptable to the Lender, from this Court approving the Sale; and

(e)      close the Sale on or before **April 2, 2026**.

13.      <u>**Events of Default**</u>. Each of the following shall constitute an event of default under this Final Order ("***Event of Default***"):

a.      If the Debtor's actual operating disbursements under the Budget exceed the amounts set forth in the Budget by more than the Budget Variance without the prior written consent of the Lender or further authority from the Court;

b.      If the Debtor pays obligations not shown on the Budget without the prior written consent of the Lender or further authority from the Court;

c.      If any representation made by the Debtor after the commencement of the Chapter 11 Case in any report or financial statement delivered to the Lender proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading);

d.      If the Debtor fails to deposit any proceeds, distribution, or otherwise from any insurance claim made by or on behalf of the Debtor in a segregated account or used by the Debtor absent written consent from the Lender not to be unreasonably withheld;

e.      If the Debtor fails to timely provide the information required under

paragraphs 6 and 8 of this Final Order and such failure continues for more than three (3) business days following written request by Lender;

      f.     If the Debtor fails to comply with all covenants and non-financial obligations under the Loan Documents including, without limitation, the financial reporting requirements;

      g.     If the Debtor fails to achieve a Milestone or Milestones without first obtaining the Lender's written consent to extend or waive such Milestone or Milestones;

      h.     If a trustee or examiner, with authority to affect the operation of the Debtor's business, is appointed in this Chapter 11 Case without the Lender's consent;

      i.     If this Chapter 11 Case is converted to a case under chapter 7 without the Lender's consent; or

      j.     If this Chapter 11 Case is dismissed without the Lender's consent.

14.    **No Cash Collateral Usage Upon Event of Default**.  Upon the occurrence of an Event of Default, the Lender may give written notice thereof to lead bankruptcy counsel to the Debtor, counsel for any Committee appointed in this Chapter 11 Case (if any), and the U.S. Trustee (which notice may be given by any manner of electronic transmission) that the Lender's consent to the use of the Cash Collateral has terminated (the "***Default Notice***"), which shall be effective on the fifth (5th) business day from the date of the Default Notice; *provided that* the Debtor may cure any Event of Default prior to the fifth (5th) business day from the date of the Default Notice; *provided further that* the Debtor may continue to use Cash Collateral pending the Court's adjudication of the Stay Relief Motion described below.

15.    **Stay Relief**. Upon occurrence of an Event of Default, but after any applicable cure period as provided herein, the Lender may file a motion with the Court seeking emergency relief

(the "*Stay Relief Motion*") on no less than five (5) days' written notice, which may be contemporaneous with the period under the Default Notice, with service on (i) counsel for the Debtor, (ii) counsel for any Committee, and (iii) the U.S. Trustee, for an order of the Court modifying the automatic stay in the Chapter 11 Case to permit the Lender to exercise its rights and remedies against the Collateral or the Replacement Collateral to the extent available in accordance with the applicable Loan Documents, this Final Order, or applicable law, and as fashioned by the Bankruptcy Court.

16.     **Section 552(b) of the Bankruptcy Code**. The Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Lender with respect to proceeds, product, offspring, or profits of any of the Collateral.

17.     **Binding Effect of Final Order**.  Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon the Debtor, the Lender, all other creditors of any of the Debtor, and all other parties-in-interest and their respective successors and assigns, including any trustee hereinafter appointed or elected, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate in this Chapter 11 Case.

18.     **Other Provisions**.  Nothing in this Final Order will be deemed or construed as an admission or waiver by the Lender, the Debtor, or any Committee as to adequate protection, or any other issue in this Chapter 11 Case that is not specifically addressed in this Final Order. Nothing in this Final Order shall prejudice the Lender's rights to seek an order of this Court

prohibiting Debtor's use of the Cash Collateral or seek any other relief that the Lender may deem necessary and appropriate under the circumstances.

19.     **Notice**.  The Debtor shall promptly mail copies of a notice of entry of this Final Order by first class mail, postage prepaid, electronic mail, or overnight mail upon (a) the U.S. Trustee; (b) the Debtor's 30 largest unsecured creditors; (c) counsel to Main Street Capital Corporation, Porter Hedges, LLP, 1000 Main St., 36th Floor, Houston, Texas 77002, Attn.: Joshua W. Wolfshohl; (d) the United States Attorney's Office for the Southern District of Texas; (e) the Internal Revenue Service; (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service; and (g) any party required to be served under Bankruptcy Local Rule 9013-1(d).  Due to the nature of the relief requested herein, the Debtor submits that no other or further notice need be provided.

20.     **Compliance with Local Bankruptcy Rule 9013-1(i)**.  The requirements set forth in Local Bankruptcy Rule 9013-1(i) are satisfied by the contents of the Motion.

21.     **Debtor's Authorization**.  The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

22.     **Retention of Jurisdiction**.  This Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Final Order.

Signed:  January 09, 2026

_Christopher M. Lopez_
Christopher Lopez
United States Bankruptcy Judge

## EXHIBIT A

**Budget**

| Week Count in Forecast | Week 1 | Week 2 | Week 3 | Week 4 |
|---|---|---|---|---|
| Week in Calendar Year | Week 50 | Week 51 | Week 52 | Week 1 |
| Days in Period | 7 | 7 | 7 | 7 |
| | Forecast | Forecast | Forecast | Forecast |
| Period Beginning | 12/7/2025 | 12/14/2025 | 12/21/2025 | 12/28/2025 |
| Period Ending | 12/13/2025 | 12/20/2025 | 12/27/2025 | 1/3/2026 |
| **Total Cash Receipt Inflows** | $ 287,923 | $ 690,622 | $ 571,894 | $ 389,749 |
| | | | | |
| **Cash Outflows:** | | | | |
| **Credit Card Payment\*** | 219,894 | - | - | 204,434 |
| **AP Payment** | 139,868 | 434,186 | 42,530 | 202,361 |
| **Salaries and Wages** | - | 274,873 | - | 312,914 |
| **Employee Benefits** | - | 57,688 | - | 58,240 |
| **Temporary Labor** | - | 85,639 | 27,550 | 27,550 |
| **Sales and Use Taxes** | 75,262 | - | - | - |
| **Total Operating Cash Outflows** | $ 435,024 | $ 852,385 | $ 70,080 | $ 805,499 |
| | | | | |
| **Operating Cash Flow (Before Restructure Costs)** | $ (147,101) | $ (161,763) | $ 501,814 | $ (415,750) |
| | | | | |
| Secured Lender Professional Fees | – | – | – | – |
| US Trustee Quarterly Fees | – | – | – | – |
| Debtor's Professionals | (150,000) | (50,000) | – | – |
| **Net Change in Cash** | $ (297,101) | $ (211,763) | $ 501,814 | $ (415,750) |
| | | | | |
| **Beginning Cash** | $ 1,046,396 | $ 749,294 | $ 537,531 | $ 1,039,345 |
| (+ / -) Net Change in Cash | (297,101) | (211,763) | 501,814 | (415,750) |
| **Ending Cash** | $ 749,294 | $ 537,531 | $ 1,039,345 | $ 623,595 |

*Credit card payments reflected in this budget relate to ordinary-course business expenses that are unavailable to pay via check or ACH. These charges primarily include digital marketing and advertising spend (including Google and Meta platforms), employee travel and lodging, marketing and promotional expenses, and incidental operating purchases.*