**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| TEDDER INDUSTRIES, LLC,[1] | § | Case No. 25-90805 (CML) |
| | § | |
| Debtor. | § | |
| | § | |

**DEBTOR'S EMERGENCY MOTION**
**FOR ENTRY AN ORDER (I) APPROVING POSTPETITION FINANCING;**
**AND (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE STATUS**

> **Emergency relief has been requested. Relief is requested not later than 4:00 p.m. (prevailing Central Time) on January 14, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Tedder Industries, LLC, as debtor and debtor-in-possession (the "Debtor" or "Tedder"), by and through its proposed counsel, hereby submits this motion (the "Motion") for entry of an Order (the "Order") pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures"), among other things, (i) authorizing the Debtor to obtain access to the DIP Facility (as defined

---

[1] The last four digits of the Debtor's federal tax identification number are 7652. The location of the Debtor's service address is: 4411 W Riverbend Ave, Post Falls, ID 83854-8150.

below); (ii) authorizing the Debtor to enter into the DIP Documents (as defined below)[2]; (iii) granting the DIP Facility and all obligations owing thereunder allowed super-priority administrative expense claim status; (iv) granting post-petition liens and providing the DIP Superpriority Claims (each as defined below) on account of the obligations incurred by the Debtor under the DIP Facility, and (v) authorizing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents. In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Thomas Magrath in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 16] (the "First Day Declaration") and the *Declaration of Thomas Magrath in Support of Debtor's Emergency Motion for Entry of an Order (I) Approving Postpetition Financing and (II) Granting Liens and Providing Superpriority Administrative Expense Status* filed contemporaneously herewith (the "Magrath Declaration").

## SUMMARY

1.      The Debtor seeks to continue its operations in the ordinary course of business while it develops its plan of reorganization during these chapter 11 cases, including sale of its assets. The Debtor is facing short-term liquidity issues preventing it from, among other things, paying its employees on time. By this Motion, the Debtor is seeking approval of a senior secured, super-priority credit facility of up to $700,000.00 (the "DIP Facility," and all amounts extended postpetition under the DIP Facility, the "DIP Loans"), under an existing $2,300,000 revolving loan facility (the "Revolving Facility,") and a term loan of up to $21,000,000.00 (the "Term Loan"), pursuant to the terms and conditions of that certain prepetition loan agreement dated as of

---

[2]     Capitalized terms used but not defined herein have the meanings given to such terms in the DIP Documents, the Order, or *Emergency Motion of the Debtor for Interim and Final Orders (I) Authorizing the Debtor to Use Cash Collateral; (II) Providing Adequate Protection to Agent: (III) Granting Liens and Providing Superpriority Administrative Expense Claims; (IV) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 10] (the "Cash Collateral Motion"), or the final order granting the Cash Collateral Motion [Docket No. 61] (the "Cash Collateral Order"), as applicable.

August 31, 2018 (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "Loan Agreement"), by and among Tedder, as borrower (the "Borrower"), and Main Street Capital Corporation, as agent ("Main Street" or the "Agent") to certain lenders thereto (the "Lenders").[3]

2.      The Debtor submits that the DIP Facility is a sound exercise of the Debtor's business judgment.

## JURISDICTION AND VENUE

3.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this case, the Debtor, property of the Debtor's estate and this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this District is proper under 28 U.S.C. § 1408.

4.      The bases for the relief requested herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, Local Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1, and the Complex Case Procedures.

### CONCISE STATEMENT OF THE MATERIAL TERMS OF THE ORDER PURSUANT TO BANKRUPTCY RULE 4001 AND THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS PROCEDURES FOR COMPLEX CHAPTER 11 CASES

| DIP Facility Term | Relief Requested[4] |
|---|---|
| **DIP Facility** | The DIP Facility includes a senior secured, superpriority, priming loan facility in the amount of up to $700,000.00. |
| **Loan Documents** | The DIP Facility consists of a draw request (such draw request, as amended, restated, supplemented, waived, and/or modified from time to time, the "DIP Documents") from an existing revolving loan facility under prepetition loan documents (as amended or restated from time to time, the "Loan Documents"). |
| **Adequate Protection** | Priority of Adequate Protection Liens.  The Adequate Protection Liens, as defined in the Cash Collateral Order, shall be junior only to the DIP Liens.   The Adequate |

---

[3]     A copy of the Loan Agreement is attached to the proposed Order as Exhibit A.

[4]     Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Order.

| DIP Facility Term | Relief Requested[4] |
|---|---|
|  | Protection Liens shall otherwise be senior to all other security interests in or liens on any of the Debtor's assets.<br><br>Priority of the Adequate Protection Superpriority Claim. The Adequate Protection Superpriority Claim, as set forth in the Cash Collateral Order, shall be junior to the DIP Superpriority Claim, and subject the lien priorities set forth herein. |
| **Cash Collateral** | Subject to the Cash Collateral Order. |
| **Superpriority Claims and DIP Liens** | Granting to the DIP Lender: (i) superpriority administrative claims; (ii) perfected senior priming liens pursuant to section 364(d) of the Bankruptcy Code on all assets of the Debtor; (iii) perfected senior liens pursuant to section 364(c)(2) of the Bankruptcy Code on all assets of the Debtor not subject to a valid, perfected, and non-avoidable lien in existence as of on the Petition Date, excluding Avoidance Actions, but including Avoidance Proceeds solely to the extent that all other Collateral is insufficient to satisfy the Secured Obligations; and (iv) perfected junior security interests on other assets of the Debtor subject to permitted liens on the Petition Date pursuant to section 364(c)(3) of the Bankruptcy Code. |
| **Use of DIP Facility Proceeds** | The proceeds of the DIP Facility and the DIP Collateral are subject to the Cash Collateral Order in all respects. |
| **Automatic Stay** | None. |
| **506(c) and 552(b) Waiver** | The Lenders shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral. The "equities of the case" exception of section 552(b) of the Bankruptcy Code shall not apply to the Lenders with respect to the DIP Documents and/or the DIP Collateral.  No person or entity shall be entitled, directly or indirectly, to, charge or recover from the Collateral, whether by operation of section 506(c) of Bankruptcy Code, sections 105 or 552(b) of the Bankruptcy Code, or otherwise, or direct the exercise of remedies or seek (whether by order of this Bankruptcy Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral or property after an Event of Default under the DIP Documents, or termination or breach under the DIP Documents or this Order. |

5.      The following chart contains a summary of the material terms of the Order, as required by Bankruptcy Rules 4001(b)(1)(B) and 4001(c)(1)(B) and the Complex Case Procedures.[5]

---

[5]     The summaries contained in this Motion are qualified in their entirety by the provisions of the Order. To the extent anything in this Motion is inconsistent with the Order, the terms of the Order shall control.

| Summary of Material Terms[6] | | Location |
|---|---|---|
| **Parties to the DIP Documents**<br><br>Bankruptcy Rule 4001(c)(1)(B) | **Borrower:** Tedder Industries, LLC<br><br>**Agent:** Mainstreet Capital Corporation ("Main Street") | Credit Agreement Preamble |
| **Term**<br><br>Bankruptcy Rule 4001(b)(l)(B)(iii), 4001(c)(1)(B) | The DIP Facility shall mature upon the earlier of (i) the sale of the assets, (ii) confirmation of the chapter 11 plan, or (iii) April 9, 2026. | Order paragraph 3(a) |
| **Commitment**<br><br>Bankruptcy Rule 4001(c)(1)(B) | $700,000 Revolving Commitment<br><br>Commitment of up to $700,000 under the existing revolving facility. | DIP Documents |
| **Conditions of Borrowing**<br><br>Bankruptcy Rule 4001(c)(1)(B) | Subject to the draw request under existing revolving credit facility. | Loan Agreement |
| **Interest Rates**<br><br>Bankruptcy Rule 4001(c)(1)(B) | 12.0% interest rate | Loan Agreement<br><br>Definition of Applicable Rate |
| **Parties with an Interest in Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(i) | The Agent and the Lenders (both of which are affiliates of Main Street) | Order Preamble |
| **Purposes for Use of Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | Pursuant to the Cash Collateral Order. | Cash Collateral Order |
| **Budget**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | The use of cash and proceeds from the DIP Facility is subject to the Approved Budget under the Cash Collateral Order. | Cash Collateral Order |
| **Fees** | Application Fee of 1% of the revolving loan commitment, which has been previously paid. | Loan Agreement |

---

[6]   Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Order or Loan Agreement, as applicable.

| | Summary of Material Terms[6] | Location |
|---|---|---|
| Bankruptcy Rule 4001(c)(1)(B) | Closing Fee of 1% of the amount of each draw under the Revolving Credit Facility that represents an increase above the highest amount borrowed under the Revolving Credit Facility (here, not applicable). | Section 6.2 (Application and Closing Fees) |
| **Adequate Protection**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | Subject to Cash Collateral Order.<br><br>Priority of Adequate Protection Liens.  The Adequate Protection Liens, as defined in the Cash Collateral Order, shall be junior only to the DIP Liens. The Adequate Protection Liens shall otherwise be senior to all other security interests in or liens on any of the Debtor's assets.<br><br>Priority of the Adequate Protection Superpriority Claim. The Adequate Protection Superpriority Claim, as set forth in the Cash Collateral Order, shall be junior to the DIP Superpriority Claim, and subject the lien priorities set forth herein. | Order at paragraphs 10-11; Cash Collateral Order. |
| **Reporting Information**<br><br>Bankruptcy Rule 4001(c)(l)(B) | Subject to Cash Collateral Order. | Cash Collateral Order. |
| **Chapter 11 Milestones**<br><br>Bankruptcy Rule 4001(c)(1)(B) | Subject to Cash Collateral Order | Cash Collateral Order |
| **Liens and Priorities**<br><br>Bankruptcy Rule 4001(c)(l)(B)(i) | DIP Liens.<br>     (a) As security for the DIP Obligations, effective and perfected as of entry of this Order and without the necessity of the execution by the Debtor (or recordation or other filing) of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the Debtor of, or over, any DIP Collateral, the following security interests and liens, hereby are granted by the Debtor to the Lenders (all property of the Debtor identified in clauses (i), (ii), and (iii) below being collectively referred to as the "DIP Collateral") (all such liens on and security interests in the DIP Collateral granted to the Lenders, pursuant to this Order, the DIP Documents, the "DIP Liens"):<br>     (i)  First Lien on Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all prepetition and postpetition property of the Debtor, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date or the date acquired (if acquired after the Petition Date) is not subject to valid, perfected, and non-avoidable liens, if any (collectively, "Unencumbered Property"), including (i) any unencumbered cash of the Debtor (wherever maintained) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, equity interests, and any claims and causes of the Debtor (ii) any | Order at paragraph 9 |

| Summary of Material Terms[6] | Location |
|---|---|
| claims and causes of action against any directors or officers of the Debtor as well as including any proceeds of, or property recovered in connection with, any successful claims and causes of action against any directors or officers of the Debtor; and (iii) excluding any claims and causes of action of the Debtor under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or other applicable law (collectively, the "Avoidance Actions"), but including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Claims secured by the DIP Liens as set forth in this Order, any proceeds of, or property recovered in connection with, any successful Avoidance Action (whether by judgment, settlement or otherwise, and unencumbered or not, the "Avoidance Proceeds"); <br><br> (ii) Priming Liens Senior to the Pre-Petition Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior priming security interest in and lien upon all prepetition and post-petition property of the Debtor (including any Cash Collateral), whether now existing or hereafter acquired, excluding any Avoidance Actions but including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Claims secured by the DIP Liens as set forth in the Order, Avoidance Proceeds. Such security interests and liens shall be senior in all respects to the prepetition interests in such property of the Lenders arising from current and future liens of the Lenders; <br><br> (iii) Liens Junior to Certain Other Liens. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all pre-petition and post-petition property of the Debtor (other than the property described in clauses (i) or (ii) of this paragraph 11, as to which the liens and security interests in favor of the Lenders will be as described in such clauses) excluding any Avoidance Actions but including, solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Claims secured by the DIP Liens as set forth in this Order, Avoidance Proceeds, whether now existing or hereafter acquired, that is (i) subject to valid, perfected, and unavoidable liens in existence immediately prior to the Petition Date or (ii) subject to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the prepetition security interests and liens of the Lender; and <br><br> (iv) Liens Senior to Certain Other Liens. The DIP Liens shall not be subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or (b) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtor. <br><br> (b) The DIP Liens shall be effective immediately upon the Order Entry Date. <br><br> (c) The DIP Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the Order Entry Date without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing agreements, financing statements, or other agreements or documents, such that no additional steps need be taken by the Lenders to perfect such liens and security interests. | |

| Summary of Material Terms[6] | | Location |
|---|---|---|
| | Subject to applicable non-bankruptcy law, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting the Lenders a first-priority lien on and security interest in the Debtor's interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by the Debtor in favor of the Lenders in accordance with the terms of the Loan Agreement and the other DIP Documents.<br><br>(d) The DIP Liens, DIP Superpriority Claims, and other rights, benefits, and remedies granted under this Order to the Lenders shall continue in the Chapter 11 Case, in any successor cases under the Bankruptcy Code resulting from conversion of the Chapter 11 Case ("Successor Cases") and following any dismissal of the Chapter 11 Case, and such liens, security interests, and claims shall maintain their priority as provided in this Order until all the DIP Obligations have been indefeasibly paid in full in cash and completely satisfied and all of the commitments thereunder have been terminated in accordance with the DIP Documents and the Loan Agreement. | |
| **Carve Out**<br><br>Bankruptcy Rule 4001(c)(1)(B) | None. | |
| **Events of Default**<br><br>Bankruptcy Rule 4001(c)(l)(B) | The Loan Agreement contains events of default that are usual and customary for commercial financing. | Loan Agreement, Section 11 |
| **Waiver/Modification of the Automatic Stay** | None | |
| **Waiver/Modification of Applicability of Nonbankruptcy Law Relating to Perfection or Enforceability of Liens**<br><br>Bankruptcy Rule 4001(c)(1)(B)(vii) | (a) The DIP Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the Order Entry Date without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements, or other agreements or documents, such that no additional steps need be taken by the Lenders to perfect such liens and security interests. Subject to applicable non-bankruptcy law, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting the Lenders a first-priority lien on and security interest in the | Order at paragraph 9(c) |

| Summary of Material Terms[6] | Location |
|---|---|
| | Debtor's interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by the Debtor in favor of the Lenders in accordance with the terms of the Loan Agreement and the other DIP Documents. | |
| **Waiver of Rights under Section 506(c)**<br><br>Bankruptcy Rule 4001(c)(1)(x) | No person or entity shall be entitled, directly or indirectly, to, charge or recover from the Collateral, whether by operation of section 506(c) of Bankruptcy Code, sections 105 or 552(b) of the Bankruptcy Code, or otherwise, or direct the exercise of remedies or seek (whether by order of this Bankruptcy Court or otherwise) to marshal or otherwise control the disposition of Collateral or Property after an Event of Default under the DIP Documents, or termination or breach under the DIP Documents or this Order. | Order at paragraph 28 |
| **Indemnification**<br><br>Bankruptcy Rule 4001(c)(1)(B)(ix) | 8.6 Indemnification.<br><br>(a) **EACH LOAN PARTY AGREES TO INDEMNIFY, DEFEND, AND HOLD HARMLESS EACH INDEMNIFIED PARTY (AS DEFINED HEREIN) FROM AND AGAINST (AND WILL REIMBURSE EACH INDEMNIFIED PARTY AS THE SAME ARE INCURRED) ALL CLAIMS ARISING OUT OF OR IN CONNECTION WITH OR BY REASON OF (INCLUDING, WITHOUT LIMITATION, IN CONNECTION WITH ANY INVESTIGATION, LITIGATION OR PROCEEDING OR PREPARATION OF A DEFENSE IN CONNECTION THEREWITH) (I) THE LOAN DOCUMENTS OR ANY OF THE TRANSACTIONS CONTEMPLATED BY THE LOAN DOCUMENTS, (II) THE ACTUAL OR PROPOSED USE OF THE PROCEEDS OF THE LOANS, (III) ANY ACT ARISING OUT OF OR IN CONNECTION WITH AGENT'S OR ANY LENDER'S REPRESENTATION ON THE BOARD OF ANY LOAN PARTY (TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW), (IV) THE DIRECT OR INDIRECT RESULT OF THE VIOLATION BY ANY LOAN PARTY OR ANY OF ITS SUBSIDIARIES OR AFFILIATES OF ANY ENVIRONMENTAL AND SAFETY LAW, (V) ANY LOAN PARTY'S OR ANY OF ITS SUBSIDIARY'S GENERATION, MANUFACTURE, PRODUCTION, STORAGE, RELEASE, THREATENED RELEASE, DISCHARGE, DISPOSAL OR PRESENCE OF A HAZARDOUS SUBSTANCE AT, TO OR FROM ANY OF ITS PROPERTIES, (VI) ANY PERSONAL INJURY TO AGENT'S, ANY LENDER'S OR ANY LOAN PARTY'S OR ANY SUBSIDIARY OF ANY LOAN PARTY'S RESPECTIVE REPRESENTATIVES, INVITEES, OR LICENSEES, AND (VII) ANY DAMAGE TO ANY LOAN PARTY'S ASSETS OR THE ASSETS OF ANY SUBSIDIARY OF ANY LOAN PARTY.**<br><br>(b) **THE LOAN PARTIES AGREE NOT TO, AND TO CAUSE THEIR RESPECTIVE SUBSIDIARIES AND AFFILIATES NOT TO, ASSERT ANY CLAIM AGAINST ANY INDEMNIFIED PARTY ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, OR PUNITIVE DAMAGES ARISING OUT OF OR OTHERWISE RELATING TO THE LOAN** | Loan Agreement, § 8.06 |

| Summary of Material Terms[6] | Location |
|---|---|
| DOCUMENTS, ANY OF THE TRANSACTIONS CONTEMPLATED BY THE LOAN DOCUMENTS OR THE ACTUAL OR PROPOSED USE OF THE PROCEEDS OF THE LOANS.<br><br>(c) EACH INDEMNIFIED PARTY SHALL BE INDEMNIFIED UNDER THE TERMS OF THE LOAN DOCUMENTS FOR ITS OWN ORDINARY NEGLIGENCE (WHETHER SOLE, JOINT OR CONCURRENT); HOWEVER, NO LOAN PARTY IS OBLIGATED TO INDEMNIFY ANY INDEMNIFIED PARTY UNDER THE LOAN DOCUMENTS TO THE EXTENT A CLAIM IS FOUND IN A FINAL, NON-APPEALABLE JUDGMENT BY A COURT OF COMPETENT JURISDICTION TO HAVE RESULTED PRIMARILY FROM ANY INDEMNIFIED PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.<br><br>(d) FOR PURPOSES OF THIS *SECTION*, (I) "INDEMNIFIED PARTY" MEANS EACH LENDER AND AGENT AND THEIR RESPECTIVE AFFILIATES, PARTNERS, OFFICERS, MEMBERS, SHAREHOLDERS OR OTHER EQUITYHOLDERS, BOARD MEMBERS, EMPLOYEES, AGENTS, REPRESENTATIVES, ADVISORS, SUCCESSORS AND ASSIGNS, AND (II) "CLAIM" MEANS ANY AND ALL CLAIMS, DAMAGES, LOSSES, LIABILITIES, PENALTIES, COSTS, OBLIGATIONS, ACTIONS, JUDGMENTS, LITIGATION, INVESTIGATIONS, ORDERS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' AND PARALEGAL FEES AND EXPENSES, WHETHER OR NOT SUIT IS FILED) INCURRED BY, ASSERTED AGAINST, OR AWARDED AGAINST ANY INDEMNIFIED PARTY.<br><br>(e) IN THE CASE OF ANY INVESTIGATION, LITIGATION OR PROCEEDING TO WHICH THE INDEMNITY PROVIDED FOR IN THIS *SECTION 8.6* APPLIES, SUCH INDEMNITY SHALL BE EFFECTIVE WHETHER OR NOT SUCH INVESTIGATION, LITIGATION OR PROCEEDING IS BROUGHT BY ANY LOAN PARTY, ANY LOAN PARTY'S EQUITYHOLDERS, SUBSIDIARIES, AFFILIATES OR CREDITORS OR ANY INDEMNIFIED PARTY AND WHETHER OR NOT THE LOANS ARE CONSUMMATED OR, IF CONSUMMATED, HAVE BEEN REPAID. EACH LOAN PARTY AGREES THAT NO INDEMNIFIED PARTY SHALL HAVE ANY LIABILITY TO ANY LOAN PARTY OR ANY OF ITS SUBSIDIARIES OR AFFILIATES OR TO ANY LOAN PARTY'S EQUITYHOLDERS OR CREDITORS OR THE EQUITYHOLDERS OR CREDITORS OF ANY LOAN PARTY'S SUBSIDIARIES FOR ANY INDIRECT OR CONSEQUENTIAL DAMAGES ARISING OUT OF, RELATED TO OR IN CONJUNCTION WITH THE LOANS OR ANY LOAN DOCUMENTS.<br><br>(f) ALL COVENANTS, AGREEMENTS, REPRESENTATIONS AND WARRANTIES MADE IN THIS AGREEMENT SHALL SURVIVE AND CONTINUE IN EFFECT AFTER THE CLOSING DATE. THE INDEMNITY SET OUT IN THIS *SECTION* AND ITS | |

| Summary of Material Terms[6] | Location |
|---|---|
| TERMS AND PROVISIONS SHALL SURVIVE THE SATISFACTION AND PAYMENT IN FULL IN CASH OF THE OBLIGATIONS AND THE TERMINATION OF THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS.<br><br>(g) AMOUNTS PAYABLE UNDER THIS *SECTION* SHALL BE A PART OF THE OBLIGATIONS AND, IF NOT PAID UPON DEMAND, SHALL BEAR INTEREST AT THE DEFAULT RATE UNTIL PAID IN FULL IN CASH. | |

## STATEMENT REGARDING SIGNIFICANT PROVISIONS

6.      The Order contains the following provisions (the "Significant Provisions") identified in the Complex Case Procedures.

   a.      **Sale or Plan Confirmation Milestones**. None.

   b.      **Cross-Collateralization**. None.

   c.      **Roll Ups**. None.

   d.      **Liens on Avoidance Actions or Proceeds of Avoidance Actions**. Solely to the extent that all other DIP Collateral is insufficient to satisfy the DIP Claims secured by the DIP Liens as set forth in the Order, any proceeds of, or property recovered in connection with, any successful Avoidance Action.

   e.      **Default Provisions and Remedies**. Commercial terms under prepetition loan agreement.

   f.      **Releases of Claims**. None.

   g.      **Limitations on the use of cash collateral other than the carve out**. No carve out; limitations on the use of cash collateral are described in the Cash Collateral Order.

   h.      **Priming Liens**. The Order provides the DIP Lender, pursuant to section 364(d) of the Bankruptcy Code, perfected senior priming liens on all prepetition and post-petition property of the Debtor.

   i.      **Any other provision that limits the ability of estate fiduciaries to fulfill their duties under the Bankruptcy Code and applicable law**.  None.

7.      The explanation for the inclusion of the foregoing Significant Provisions, as required by Complex Case Procedures is that is that such Significant Provisions were necessary to

obtain the Lender's agreement to provide the DIP Facility on the terms and conditions reflected in the prepetition Loan Agreement and the Order. As set forth herein, the DIP Facility is critical to ensure that the Debtor has sufficient liquidity to fund payroll, maintain its operations, pursue and achieve a successful restructuring transaction, and maximize the value of the Debtor's estate for all parties in interest.

8.      In light of the foregoing, the Debtor submits that the Significant Provisions are appropriate under the facts and circumstances of this Chapter 11 Case. Accordingly, the Significant Provisions in the Order should be approved.

## **BACKGROUND**

### A.      **General Background**

9.      On December 8, 2025 (the "Petition Date"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

10.      The Debtor remains in possession of its assets and continues to operate and manage its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

11.      As of the date hereof, no trustee, examiner or committee of creditors has been appointed in this Chapter 11 Case.

12.      Additional information regarding the Debtor and this Chapter 11 Case, including the Debtor's business operations, capital structure, and the reasons for and objectives of this Chapter 11 Case, is set forth in the First Day Declaration.

### B.      **Summary of the Debtor's Pre-Petition Capital Structure**

13.      The description of the Debtor's capital structure is included in the First Day Declaration and in the Cash Collateral Motion.

12

## THE DEBTOR'S NEED FOR DIP FINANCING

14.     The Debtor seeks relief under the Motion to obtain additional financing to satisfy its short-term liquidity needs, including to fund payroll, maintain its business operations in the ordinary course, and prosecute the Chapter 11 Case. As set forth in the Magrath Declaration, the Debtor is suffering from a short-fall of its liquidity due to, among other reasons, a delay in the timing of certain of its account receivables.  The Debtor needs immediate additional financing to fund payroll and operations. Absent access to the DIP Financing, the Debtor will experience irreparable harm because it cannot pay employees without additional financing. Through the additional financing, the Debtor will have access to the necessary funding to pay (a) employees; (b) rent; (c) insurance; and (d)  operating expenses including utilities and supplies.

15.     Given the urgency and unexpected lack of liquidity, the Debtor reached out to its prepetition Lenders to secure additional financing under existing revolving loan facility. Other potential lenders would not be able to provide emergency financing on a sufficiently short notice and on the terms as favorable as the Debtor's prepetition loan facility with the Lenders, including in terms of the amount of fees, interest rates, diligence, and other terms customary in post-petition financing, such as third-party releases. Therefore, when the Debtor needed to obtain DIP financing, the existing Lenders were able to move faster through its updated diligence and had a higher likelihood of closing compared to potential other lenders, especially given the relatively small amount of the needed DIP.  It is the Debtor's opinion that expanding the scope and length of the DIP marketing process would not yield any material interest in providing DIP financing without a priming lien or on better terms.

16.     The Debtor exercised its reasonable business judgment in selecting the financing proposed by Main Street.

13

17.     The provisions of the Order were extensively negotiated and are the most favorable terms that the Debtor was able to obtain under the circumstances. Approval of the Motion will ensure the Debtor is able to fund payroll, maintain its operations, pursue and achieve a successful restructuring transaction, and maximize the value of its estate for the benefit of its stakeholders.

## BASIS FOR RELIEF

**A.      The Debtor Should Be Authorized to Obtain Postpetition Financing through the DIP Documents.**

      i.      ***Entering into the DIP Facility is an Exercise of the Debtor's Sound Business Judgment.***

18.     The Court should authorize the Debtor, in exercising its sound business judgment, to enter into the DIP Documents and obtain postpetition DIP financing under the DIP Facility. Courts grant considerable deference to a debtor's business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions and underlying policy considerations of the Bankruptcy Code. *See, e.g., In re N. Bay Gen. Hosp., Inc.*, No. 08-20368 (Bankr. S.D. Tex. July 11, 2008) (order approving postpetition financing as exercise of debtors' business judgment); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

19.     To determine whether a debtor has met the business judgment standard, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In*

*re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code").

20.     The Debtor's entry into the DIP Facility represents a sound exercise of its business judgment. The Debtor is requesting authorization to enter into the DIP Documents for the purpose of ensuring sufficient liquidity to maintain its business operations and fund the additional expenses of this Chapter 11 Case. A result of good-faith, arm's-length negotiations, the DIP Facility is critical for the Debtor to maintain its operation to execute and complete its restructuring efforts successfully. No alternative sources of financing with terms as favorable as those contained in the DIP Facility are currently available to the Debtor.

21.     Absent the DIP Facility, the Debtor's ability to continue operating as a going concern will be jeopardized to the detriment of all parties in interest.

**B.     The Debtor Should Be Authorized to Grant Liens and Superpriority Claims to the Lenders.**

22.     The Debtor proposes to obtain financing under the DIP Facility, in part, by providing superpriority claims and liens pursuant to section 364(c) and (d) of the Bankruptcy Code. Significantly, the Debtor proposes to provide: (a) the DIP Superpriority Claim; (b) pursuant to section 364(c)(2) of the Bankruptcy Code, perfected senior liens on all assets of the Debtors not subject to a valid, perfected, and non-avoidable lien in existence as of on the Petition Date (or as such lien may be perfected after the Petition Date to the extent permitted by section 546 of the Bankruptcy Code) including, and effective upon entry of the Order, the Avoidance Proceeds; (c) pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior priming security interest in and lien upon all prepetition and

post-petition property of the Debtors (including any Cash Collateral) and effective upon entry of

the Order, the Avoidance Proceeds, and (d) pursuant to section 364(c)(3) of the Bankruptcy Code,

perfected junior security interests on other assets of the Debtor subject to permitted liens on the

Petition Date.

23.     In the event that a debtor demonstrates that it is unable to obtain unsecured credit

allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, section

364(c) provides that a court:

> may authorize the obtaining of credit or the incurring of debt (1) with
> priority over any or all administrative expenses of the kind specified in
> section 503(b) or 507(b) of the Bankruptcy Code; (2) secured by a lien on
> property of the estate that is not otherwise subject to a lien; or (3) secured
> by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c); *see also In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987)

(secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing,

upon showing that unsecured credit cannot be obtained).

24.     Courts have articulated a three-part test to determine whether a debtor is entitled to

financing pursuant to section 364(c) of the Bankruptcy Code. Specifically, courts look to whether:

> a.     the debtor is unable to obtain unsecured credit under section 364(b)
> of the Bankruptcy Code, *i.e.*, by allowing a lender only an
> administrative claim;
>
> b.     the credit transaction is necessary to preserve the assets of the estate;
> and
>
> c.     the terms of the transaction are fair, reasonable, and adequate, given
> the circumstances of the debtor-borrower and proposed lenders.

*See In re Ames Dep't Stores*, 115 B.R. 34, 37–40 (Bankr. S.D.N.Y. 1990); *see also In re St. Mary*

*Hosp.*, 86 B.R. 393, 401–02 (Bankr. E.D. Pa. 1988); *Crouse Group*, 71 B.R. at 549.

25.     To the knowledge of the Debtor, no party would be able to provide under the time

constraints of the Debtor's unexpected liquidity crisis a holistic package of postpetition financing

to the Debtor on an unsecured basis. The only option to achieve the terms of the DIP Facility was for the Debtor to enter into an arrangement with the Lenders whereby the DIP Facility would be secured by first priority priming liens. To Debtor's knowledge, no other party under the time constraints would be able to provide more favorable terms to meet the Debtor's liquidity needs to maintain operations through this Chapter 11 Case.

26.    Further, section 364(d) of the Bankruptcy Code provides that a debtor may obtain credit secured by a senior or equal lien on property of the estate already subject to a lien where the debtor is "unable to obtain such credit otherwise" and "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1). As such, the Debtor may incur "priming" liens under the DIP Facility if it is unable to obtain unsecured or junior secured credit and either (a) the Lenders have consented, or (b) the Lenders' interests in collateral are adequately protected. Here, the Lenders have consented to the priming liens securing the DIP Facility, where the priming affects the Lenders' own first liens. Further, the Debtor will continue to provide adequate protection set forth in the Cash Collateral Order. Accordingly, the relief requested pursuant to section 364(d)(1) of the Bankruptcy Code is both warranted and appropriate under the circumstances.

**C.    No Comparable Alternative to the DIP Facility Is Reasonably Available**

27.    A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *Sky Valley, Inc.*, 100 B.R. at 113; *see also In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986)

(demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); *In re Ames Dep't Stores*, 115 B.R. at 37–39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

28.     Here, the Debtor has made a good faith effort to seek out optimal postpetition financing arrangements to meet its funding needs and restructuring objectives. The DIP Facility represents the best solution to the Debtor's financing needs because it represents a consensual path forward in this Chapter 11 Case that provides sufficient liquidity for the Debtor to fund payroll and maintain operations, thereby maximizing value for the Debtor's creditors. Accordingly, the DIP Facility represents the best option available to address the Debtor's immediate liquidity needs, and the Debtor respectfully submits that the terms and conditions of the DIP Facility are reasonable and appropriate under the circumstances.

   **D.      The DIP Lender Should Be Afforded Good-Faith Protection Under Section 364(e).**

29.     Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

18

11 U.S.C. § 364(e).

30.     The DIP Facility is the result of the Debtor's reasonable judgment and informed determination that the Lenders offered the most favorable terms on which to obtain vital postpetition financing, and extensive arm's-length, good-faith negotiations between the Debtor and the Lenders. The Debtor submits that the terms and conditions of the DIP Facility are reasonable and appropriate under the circumstances, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code. Accordingly, the Court should find that the obligations arising under the DIP Facility and other financial accommodations made to the Debtor have been extended by the Lenders in "good faith" within the meaning of section 364(e) of the Bankruptcy Code, and therefore the Lenders are entitled to all of the protections afforded thereby.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

31.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

32.     Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtor's or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay prepetition claims; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease

pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## NOTICE

33.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Southern District of Texas; (ii) each of the Debtor's thirty (30) largest unsecured creditors; (iii) counsel to Main Street Capital Corporation; (iv) the Internal Revenue Service; (v) the Office of the Attorney General for the State of Texas; (vi) the Office of the Attorney General for the State of Idaho; (vii) all parties that assert a lien on the Debtor's assets; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtor submits that, under the circumstances, no other or further notice is required.

## CONCLUSION

34.    The Debtor respectfully requests that the Court enter the Order substantially in the form attached hereto, granting the relief requested in this Motion, and granting such other and further relief the Court may deem proper.

[*Remainder of page intentionally left blank*]

Dated:  January 13, 2026    Respectfully submitted,

       */s/ Jeff P. Prostok*
       Jeff Prostok (State Bar No. 16352500)
       Mary Taylor Stanberry (State Bar No. 24143781)
       **VARTABEDIAN HESTER & HAYNES LLP**
       301 Commerce Street, Suite 2200
       Fort Worth, Texas 76102
       Telephone: (817) 214-4990
       Email: jeff.prostok@vhh.law
         mary.stanberry@vhh.law

       Candice Carson (State Bar No. 24074006)
       J. Blake Glatstein (State Bar No. 24123295)
       **VARTABEDIAN HESTER & HAYNES LLP**
       2200 Ross Avenue, Suite 4600E
       Dallas, Texas 75201
       Telephone: (469) 654-1340
       Email: candice.carson@vhh.law
         blake.glatstein@vhh.law

       *Proposed Counsel to Debtor and*
       *Debtor-in-Possession*