IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>TEDDER INDUSTRIES, LLC,[1]<br><br>    Debtor. | Chapter 11<br><br>Case No. 25-90805 (CML) |

**DECLARATION OF TOMMY MAGRATH IN SUPPORT OF
DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER
(I) APPROVING POSTPETITION FINANCING; AND (II) GRANTING LIENS
AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS**

I, Tommy Magrath, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I submit this declaration ("***Declaration***") in support of the *Debtor's Emergency Motion for Entry of an Order (I) Approving Postpetition Financing; and (II) Granting Liens and Providing Superpriority Administrative Expense Status* [Docket No. 75] (the "***Motion***"),[2] which seeks authorization to obtain postpetition financing ("***DIP Financing***") on a super-priority basis consisting of a senior secured, super-priority credit facility of up to [$700,000.00] (the "***DIP Facility***," and all amounts extended postpetition under the DIP Facility, the "***DIP Loans***"), under the Debtor's existing $2,300,000.00 revolving loan facility.

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents and information concerning the Debtor's operations and financial affairs, or my opinions based upon my experience and knowledge as President of the Debtor. I am over the age of 18 and authorized to submit this

---

[1] The last four digits of the Debtor's federal tax identification number are 7652. The location of the Debtor's service address is: 4411 W Riverbend Ave, Post Falls, ID 83854-8150.

[2] Capitalized terms used but not otherwise defined herein have the means ascribed to such terms in the Motion.

Declaration on behalf of the Debtor. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

## THE DEBTOR'S IMMEDIATE NEED FOR DIP FINANCING

3. As President of Tedder Industries, LLC, I have significant knowledge and familiarity with the Debtor's business, financial affairs, debt structure, operations, and related matters. I am familiar with the day-to-day operations of the Debtor, its organizational structure, and I have reviewed key financial documents of the Debtor.

4. The Debtor seeks authority to borrow under the DIP Facility on the terms described in the Motion and in the DIP Documents to administer its Chapter 11 Case and to fund the Debtor's operations.

5. After the filing of this Chapter 11 Case on December 8, 2025 (the "**Petition Date**"), several credit providers placed holds on the Debtor's credit accounts (the "**Account Holds**"). Additionally, a prejudgment writ of attachment issued by the U.S. District Court for the Central District of California in a pending litigation has resulted in the withholding by commercial customers and vendors of the Debtor's funds that are essential to the Debtor's daily operations (together with the Account Holds, the "**Withheld Funds**"). The unfortunate timing of these Withheld Funds has resulted in the Debtor's inability to meet its payroll obligations to its 110 employees (the "**Employees**") due **tomorrow, January 14, 2026** ("**Payroll**").

6. The Debtor is in active negotiations regarding the release of the Withheld Funds, but there is no guarantee that these Withheld Funds will be released in time for the Debtor to meet its Payroll. If the Debtor is unable to fund Payroll, the Debtor's reorganization efforts are at risk of significant disruption and the Debtor will experience irreparable harm. The employees are crucial to the Debtor's day-to-day operations and rely on Payroll to support themselves and their

families. Through the additional DIP Financing, the Debtor will have access to the necessary funding to pay (1) employees; (2) rent; (3) insurance; and (4) operating expenses, including utilities and supplies.

## THE PROPOSED DIP FINANCING TERMS

7.	Given the urgency and unexpected lack of liquidity, the Debtor reached out to its prepetition Lenders to secure additional financing under the existing revolving loan facility. Other potential lenders would not be able to provide emergency financing on a sufficiently short notice and on the terms as favorable as the Debtor's prepetition loan facility with the Lenders, including in terms of the amount of fees, interest rates, diligence, and other terms customary in post-petition financing, such as third-party releases. The existing Lenders were able to move quickly because of their access to updated diligence and had a higher likelihood of closing compared to potential other lenders, especially given the relatively small amount of the needed DIP.  It is unlikely that expanding the scope and length of the DIP marketing process would yield any material interest in providing DIP financing without a priming lien or on better terms.

8.	The Debtor exercised its reasonable business judgment in selecting the financing proposed by Main Street.

9.	The provisions of the DIP Order were extensively negotiated and are the most favorable terms that the Debtor was able to obtain under the circumstances. Approval of the Motion will ensure the Debtor is able to fund payroll, maintain its operations, pursue and achieve a successful restructuring transaction, and maximize the value of its estate for the benefit of its stakeholders.

10.	The Debtor has made a good faith effort to seek out optimal postpetition financing arrangements to meet its funding needs and restructuring objectives. The DIP Facility represents

the best solution to the Debtor's financing needs because it represents a consensual path forward in this Chapter 11 Case that provides sufficient liquidity for the Debtor to fund payroll and maintain operations, thereby maximizing value for the Debtor's creditors.

11. Accordingly, the DIP Facility represents the best option available to address the Debtor's immediate liquidity needs under terms and conditions that are reasonable and appropriate under the circumstances. The proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code, pursuant to the Approved Budget.

## **CONCLUSION**

12. Accordingly, I believe that the DIP Financing proposed in the Motion is a favorable financing available to the Debtor under the circumstances and is critical for the Debtor to continue operations, meet its Payroll obligations, and maximize the value of the Debtor's estate for the benefit of all parties in interest. I believe the DIP Financing to be (a) the product of an arm's-length, good-faith negotiation process, given the urgency of the Debtor's need for the DIP Financing, (b) represents a viable financing option available to the Debtor, and (c) contains reasonable terms and conditions under the circumstances.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of knowledge and belief.

Dated: January 13, 2026

*/s/ Tommy Magrath*
Tommy Magrath
President
Tedder Industries, LLC