IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>TEDDER INDUSTRIES, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 25-90805 (CML) |

**DECLARATION OF NICHOLAS FOLEY IN SUPPORT
OF THE DEBTOR'S APPLICATION FOR ENTRY OF AN
ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION
OF TRINITY RIVER ADVISORS, LLC, AS BROKERS FOR THE DEBTOR**

Nicholas Foley makes the following *Declaration* (the "***Declaration***") *in Support of the Debtor's Application for Entry of an Order Authorizing the Employment and Retention of Trinity River Advisors, LLC, as Brokers for the Debtor* (the "***Application***") filed by Tedder Industries, LLC, the debtor and debtor-in-possession (the "***Debtor***") in the above-styled bankruptcy case (the "***Chapter 11 Case***").

1.   My name is Nicholas Foley. I am a Managing Director of Trinity River Advisors, LLC ("***TRA***"). In my position, I have personal knowledge and am familiar with TRA, its qualifications to be a broker for the Debtor, and TRA's compensation. Also, in my position and for the potential engagement as broker for the Debtor, I have become familiar with the Debtor's business affairs, books and records, and financial condition. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees working under my supervision, my opinion based upon experience, knowledge, and information concerning the Debtor's operations and financial condition, my own reasonable inquiry, and/or my discussions with the Debtor's other

---

[1] The last four digits of the Debtor's federal tax identification number are 7652. The location of the Debtor's service address is: 4411 W Riverbend Ave, Post Falls, ID 83854-8150.

1

officers, directors, and advisors. I am over the age of 18, and I am authorized to submit this Declaration on behalf of TRA. If called to testify, I would testify competently to the facts set forth in this Declaration.

2. On December 12, 2025, the Debtor agreed to the terms of the Engagement Agreement between the Debtor and TRA (the "***Engagement Agreement***"),[2] a true and correct copy of which is attached as **Exhibit C** to the Application.

3. The Debtor has determined that the retention of a broker is necessary to the successful administration of this Bankruptcy Case and the implementation of its sale process and that TRA's employment would be in the best interest of the Debtor's estate and all parties in interest. TRA has extensive experience in and knowledge of debtors' protections, creditors' rights, and complex proceedings under chapter 11 of the Bankruptcy Code. TRA professionals have regularly represented, worked on behalf of, and acted as chapter 11 fiduciaries, such as debtors or trustees in possession, throughout the state of Texas. are experienced TRA is well qualified by its expertise and experience to serve as a broker for the Debtor in these proceedings.

4. In preparing for its representation of the Debtor in this Bankruptcy Case, TRA has become familiar with the Debtor's bankruptcy proceedings and many of the potential issues that may arise in the context of this Chapter 11 case. TRA is well qualified to provide its services in a cost-effective, efficient, and timely manner. Retaining TRA will enable the Debtor to carry out its duties in this Chapter 11 Case and to implement the Debtor's sale process.

5. The Debtor requires knowledgeable brokers to assist them in this Bankruptcy Case for the purposes set forth in the Engagement Letter. TRA is well-qualified to provide these essential services and is familiar with the Debtor's business operations.

---

[2] Capitalized terms not otherwise defined herein are given the same meanings as found in the Engagement Agreement.

6. In this Bankruptcy Case, pursuant to the Engagement Agreement, TRA will provide the following services (the "***Services***"):[3]

   a. assisting the Debtor in a review, analysis, and evaluation of its financial and operating performance, balance sheet, liabilities, and value of its assets and liabilities;

   b. assisting the Debtor in the development and distribution of select information, documents and other materials, including assisting the Debtor in preparing confidential information memorandum, management presentation, and other relevant marketing documents;

   c. assisting the Debtor in evaluating indications of interests and proposals of any sale transactions from current and/or financial sponsors, equity investors, competitors, strategic buyers, and/or other partners;

   d. assisting the Debtor with the negotiations of any sale transaction, including participating in the selection of a "stalking horse" bidder (if any) and the successful bidder and working with counsel to negotiate the terms and conditions of an initial asset purchase agreement;

   e. attending meetings of the Debtor's board, creditor groups, or other interested parties and the Debtor and TRA mutually agree;

   f. proving expert advice and testimony regarding financial matters related to any sale transaction, as needed; and

   g. providing other financial advisory and brokerage services as mutually agreed upon by the Debtor and TRA.

7. Subject to the Court's approval, the Debtor and TRA have agreed to the following compensation arrangement, which is more fully described in the Engagement Agreement:

- First, the Debtor shall pay a one-time, non-refundable fee of $50,000 upon approval of the Bankruptcy Court of this retention.

- Second, TRA personnel shall keep track of their time and be compensated based on hourly rates and time worked. Hourly rates of TRA personnel range from $250 to $875 per hour.

---

[3] The summaries provided in this Application are provided for convenience only. In the event of any inconsistencies between the descriptions of Services contained herein and in the Engagement Agreement, the terms of the Engagement Agreement shall control.

3

- Upon completion of the sale process, TRA shall be paid the additional amount set forth below depending on the circumstances set forth—
    - If the existing secured lender of the Debtor credit bids and is the successful buyer of the Debtor's assets, TRA shall be paid based on its hourly rates for all time expensed, with credit for the initial $50,000 payment; or
    - If a party other than the existing secured creditor buys the Debtor or its assets or otherwise obtains control of the Debtor through a plan, purchase, or any other event, TRA shall be paid an additional $100,000 as a success fee.
- In addition to the foregoing TRA shall be reimbursed for its actual and reasonable expenses.

8. The Debtor has agreed to the Engagement Agreement, which is typically used by TRA in cases like this, and contains a broad indemnification provision (the "***Indemnity***") to indemnify and hold harmless TRA and its members, agents, employees, independent contractors and controlling persons (each such person, including TRA, an "***Indemnified Party***") to the fullest extent permitted by law from and against any losses, claims, damages and liabilities, joint or several (individually and collectively, the "***Damages***"), to which such Indemnified Party may become subject in connection with or otherwise relating to or arising from (i) the performance of Services by an Indemnified Party as contemplated in the Engagement Agreement or (ii) an untrue statement or an alleged untrue statement of a material fact by the Debtor or the omission or alleged omission to state a material fact necessary in order to make a statement not misleading in light of the circumstances under which it was made by the Debtor, and will reimburse each Indemnified Party for all fees and expenses (including the reasonable fees and expenses of legal counsel) (individually "***Expenses***") plus for time at the rates set forth above as incurred in connection with investigating, preparing, pursuing, or defending any threatened or pending claim, action, proceeding, or investigation (individually and collectively, the "***Proceedings***") arising therefrom; provided, that the Debtor will not be liable to any such Indemnified Party to the extent that any Expenses or Damages are found in a final non-appealable judgment by a court of competent

4

jurisdiction to have resulted from the negligence or misconduct of the Indemnified Party seeking indemnification under the Engagement Agreement.

9. Additionally, in the event that, at any time whether before or after termination of the engagement, as a result of or in connection with the Engagement Agreement or TRA's and its personnel's role under the Engagement Agreement, TRA or an Indemnified Party is required to produce any of its personnel (including former employees or independent contractors) for examination, deposition, or other written recorded or oral presentation, or TRA or any of its personnel (including former employees or independent contractors) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize, or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal process, the Debtor will reimburse the Indemnified Party for its out-of-pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel at a mutually agreed billing rate appropriate under the Engagement Agreement.

10. The indemnity, reimbursement, and contribution obligations of the Debtor under the Engagement Agreement will be in addition to any liability which the Debtor may otherwise have to any Indemnified Party and will be binding upon and inure to the benefit of any successors, assigns, heirs, and representatives of the Debtor or Indemnified Party.

11. The Parties further agree that no Party shall be liable to the other party or their successors, affiliates, or assigns, for damages in excess of the total fees paid by the Debtor in connection with this Engagement Agreement (the "*Liability Cap*"). The Liability Cap, except for breach of confidentiality obligations or infringement of intellectual property, is the total limit of each Party's aggregate liability for any and all claims or demands by anyone pursuant to the

Engagement Agreement including liability to the other Party, to any other parties and to any others making claims relating to the work performed by TRA pursuant to the Engagement Agreement. In no event shall any Party be liable for consequential, indirect, or punitive damages, damages for lost profits or opportunities, or other like damages or claims of any kind.

12. Notwithstanding anything to the contrary contained within the Indemnity, TRA agreed to seek approval from the Bankruptcy Court prior to submitting any indemnification claims under the indemnification provisions of the Engagement Agreement.

13. TRA has no connection with the Debtor, its creditors, or any other parties-in-interest in this Bankruptcy Case or their respective attorneys or accountants.

14. TRA represents no interests adverse to the Debtor or its estate in the matters for which TRA is proposed to be retained and is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

15. TRA has not shared or agreed to share any of its compensation from the Debtor with any other person, other than as permitted by section 504 of the Bankruptcy Code. If TRA enters into such agreement, TRA will amend or supplement the information contained in this Application and the Declaration to disclose the terms of any such agreement.

16. No promises have been received by TRA for compensation in connection with this case other than as provided in the Bankruptcy Code.

17. TRA will review its files periodically during the pendency of the Chapter 11 Case to ensure no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, TRA will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

18. No previous application for the relief requested herein has been made in this Bankruptcy Case.

19. Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED January 14, 2026.

*/s/ Nicholas Foley*
Nicholas Foley
Managing Director
Trinity Rivers Advisors, LLC
