IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TEDDER INDUSTRIES, LLC, | Case No. 25-90805 (CML) |
| Debtor. | Re: Docket Nos. 109, 118 |

**ORACLE'S LIMITED OBJECTION AND RESERVATION OF RIGHTS REGARDING DEBTOR'S NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE**

Oracle America, Inc. ("Oracle"), a creditor and contract counterparty in the above-captioned Chapter 11 case, submits this limited objection and reservation of rights ("Limited Objection") in response to the *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale* [Dkt. No. 118] ("Cure Notice") filed in connection with the *Debtor's Emergency Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Scheduling a Bid Deadline, Auction, and Sale Hearing and Approving the Form and Manner of Notice Thereof, (II) Approving Cure Procedures and the Form and Manner of Notice Thereof, and (IV) Authorizing Designation of Stalking Horse Bidders, and (V) Granting Related Relief* [Dkt. No. 99] (the "Sale Motion").

**I.      INTRODUCTION**

By the Sale Motion and Cure Notice, Tedder Industries, LLC (the "Debtor") seeks Bankruptcy Court authority to, among other things, assume and assign an executory contract between the Debtor and Oracle. Oracle Objects to the proposed assumption and assignment on multiple grounds.

First, the Cure Notice does not provide the proper proposed cure amount owed by the Debtor to Oracle.

#4928-7931-9952 v2

Second, at present there is no stalking horse bidder and Oracle is therefore unable to determine whether the ultimate purchaser/assignee can perform the terms of the contract the Debtor seeks to assume and assign.

Third, Oracle's agreement with the Debtor is a license of intellectual property that is not assignable absent Oracle's consent, pursuant to both the underlying license agreement and applicable law.

Finally, to the extent any purchase agreement provides for a transition services agreement between the Debtor and the eventual purchaser(s), or another agreement which may allow for any unauthorized, shared use of Oracle's licenses, Oracle objects to such use.

Accordingly, Oracle requests that the Court deny the Debtor's request for authority to assume and assign, transfer, or share use of any NetSuite Agreement without Oracle's consent.

## II.   BACKGROUND

On December 8, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

Since before the Petition Date, Oracle has provided a cloud-based enterprise resource planning suite designed to manage core business processes (the "Services") pursuant to various service agreements and data processing agreements (collectively, the "NetSuite Agreement"). To date, the NetSuite Agreement has not been assumed or rejected by the Debtor, and Oracle continues to provide post-Petition Date Services to the Debtor.

On January 15, 2026, Oracle issued Invoice 2379742 for the Services. A true and correct copy of Invoice 2379742 is attached as **Exhibit A**.

On January 27, 2026, the Debtor filed the Sale Motion. Pursuant to the Sale Motion, the Debtor proposes to sell substantially all, or one or more subsets, of the Debtor's assets. On February 4, 2026, the Court entered an order approving certain bid procedures and procedures for the assumption and assignment of executory contracts [Dkt. 109] ("Bid Procedures Order"). Pursuant to the Assumption and Assignment Procedures[1] in the Bid Procedures Order, the Debtor

---

[1] Capitalized terms not defined herein shall have the same meaning as those set forth in the Sale

#4928-7931-9952 v2

2

is required to provide notice to each counterparty to an executory contract (the "Contracts") of the Debtor regarding potential assumption and assignment of such Contracts and the Debtor's calculations of the amount necessary to cure any monetary defaults under such contracts (the "Cure Costs"), pursuant to the Cure Notice.

On February 11, 2026, the Debtor filed the Cure Notice. Exhibit "A" to the Cure Notice identifies the Contracts the Debtor proposes to assume and assign and the corresponding Cure Costs. The NetSuite Agreement is included as a Contract in Exhibit A, with a proposed Cure Cost of $0.00.

As of the date of this Rights Reservation, there is no Stalking Horse Bidder and no proposed form of asset purchase agreement ("APA") or transitions services agreement ("TSA") has been filed. It is unclear whether a Stalking Horse Bidder, or other Successful Bidder, may intend to take assignment of the NetSuite Agreement. As such, Oracle is unable to determine at this time how its rights may be affected by the sale or any potential APA or TSA between the Debtor and the ultimate purchaser(s).

### III.  ARGUMENT

#### A.  The Debtor Has Not Provided the Correct Cure Amount.

Section 365(b)(1)(A) of the Bankruptcy Code requires that the Debtor cure or promptly cure outstanding balances due under the NetSuite Agreement upon assumption or assumption and assignment. The Debtor has identified a $0.00 cure for the NetSuite Agreement listed in the Cure Notice. However, the Debtor has not paid Invoice 2379742 for $41,039.81. The Debtor must pay this Invoice, and any subsequently issued and unpaid invoice or amounts otherwise owing, if the NetSuite Agreement is to be assumed or assumed and assigned.

#### B.  The Debtor Has Not Provided Adequate Assurance of Future Performance by the Assignee.

Before assuming and assigning any executory contract, the Debtor must provide adequate assurance of future performance. 11 U.S.C § 365(b)(1). No Stalking Horse Bidder or Successful

---

Motion.

#4928-7931-9952 v2

Bidder have been identified.[2] Accordingly, Oracle reserves its right to object to any Stalking Horse Bidder or Successful Bidder.

To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtor provide the following information about the purchaser(s) to which Debtor proposes to assume and assign the NetSuite Agreement: (1) financial bona fides; (2) confirmation that the purchaser is not an Oracle competitor; and (3) confirmation that the purchaser(s) will (a) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the NetSuite Agreement to be assigned; and, if appropriate (b) enter into an Oracle Master License Agreement. Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the NetSuite Agreement.

Until the information described above is provided, the Debtor has not complied with the requirements of section 365(b)(1)(C).

### C. The Debtor May Not Assume and Assign the NetSuite Agreement Absent Oracle's Consent Because the Agreement Pertains to One or More Licenses of Intellectual Property.

Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

Federal law makes non-exclusive copyright licenses non-assignable absent consent of the licensor. *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-

---

[2] Oracle understands that the last day to object to adequate assurance is the earlier of (i) 14 days after service of the Notice of Stalking Horse Bidder, or (ii) the Successful Bidder Adequate Assurance Objection Deadline (March 30). However, in order to avoid submitting duplicative filings, Oracle incorporates its objection to adequate assurance here and reserves its right to be heard on this point if and when the ultimate purchaser is identified.

assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *see also In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

The NetSuite Agreement is, or pertains to, a non-exclusive license of copyrighted software. Therefore, pursuant to Bankruptcy Code section 365, the Debtor may not assume and assign the NetSuite Agreement without Oracle's consent. For the reasons discussed herein, Oracle does not consent to the Debtor's proposed assumption and assignment at this time.

**D.     Oracle's Agreement Does Not Authorize Simultaneous Use By the Debtor and the Purchaser.**

Oracle reserves all rights to object to the final APA between the Debtor and the ultimate purchaser(s), including to the extent the APA or any accompanying TSA includes any broad provisions regarding transitional use or shared use of the NetSuite Agreement or Oracle-licensed software.

Simultaneous use of, and access to, Oracle's licensed software exceeds the scope of the permitted uses under the NetSuite Agreement and would potentially result in an unauthorized "splitting" of the licenses between the Debtor and the purchaser. Oracle objects to the extent that any transitional use or shared use arrangement purports to grant to both the Debtor and purchaser(s) the right to shared use of the Oracle licenses beyond the license terms.

Oracle reserves all rights regarding any transitional use, including under any TSA, until after Oracle's review of the final TSA proposed, and an opportunity to assess how that TSA may impact Oracle, including whether the use contemplated thereunder constitutes non-compliance under the terms of the NetSuite Agreement.

## IV. <u>RESERVATION OF RIGHTS</u>

Oracle reserves its rights to (i) raise further or other objections as may be necessary; (ii) require payment of any existing or future amounts owing under the NetSuite Agreement; and (iii) withhold consent to any proposed assumption or assumption and assignment of the NetSuite Agreement.

## V. <u>CONCLUSION</u>

For the foregoing reasons and any additional reasons stated at a hearing on this matter, Oracle respectfully requests that the Debtor's request for approval of the assumption and assignment of the NetSuite Agreement be denied, unless and until Oracle consents to such assumption and assignment.

Dated: February 23, 2026

By:  */s/ Michael S. Myers*
Michael S. Myers
myersm@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595

Attorneys for Oracle America, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2026 a true and correct copy of the foregoing *Oracle's Limited Objection And Reservation Of Rights Regarding Debtor's Notice Of Cure Costs And Potential Assumption And Assignment Of Executory Contracts And Unexpired Leases In Connection With Sale* was filed and served electronically via the Court's CM/ECF System upon those who are registered to receive electronic notice.

/s/ Britney Tomko