**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **TEDDER INDUSTRIES, LLC,**[1] | **Case No. 25-90805 (CML)** |
| **Debtor.** | **Ref. Docket No. 194** |

# MEMORANDUM OF LAW IN SUPPORT OF AN ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT AND (II) CONFIRMING THE COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION OF TEDDER INDUSTRIES LLC PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**VARTABEDIAN KATZ HESTER & HAYNES LLP**
Candice M. Carson (Texas Bar No. 24074006)
J. Blake Glatstein (State Bar No. 24123295)
2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201
Tel: (469) 654-1340
Email: candice.carson@vkhh.com
blake.glatstein@vkhh.com

**VARTABEDIAN KATZ HESTER & HAYNES LLP**
Jeff P. Prostok (Texas Bar No. 16352500)
Mary Taylor Stanberry (State Bar No. 24143781)
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Email: jeff.prostok@vkhh.com
mary.stanberry@vkhh.com

*Counsel for Debtor and Debtor in Possession*

[1] The last four digits of the Debtor's federal tax identification number are 7652. The location of the Debtor's service address is: 4411 W Riverbend Ave, Post Falls, ID 83854-8150.

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................1

BACKGROUND ....................2

**I.** General Background of this Chapter 11 Case ....................2

**II.** Solicitation of Plan and Noticing ....................4

ARGUMENT ....................6

**I.** The Court Has Jurisdiction and Notice Has Been Properly Given. ....................6

**A.** Jurisdiction and Venue. ....................6

**B.** Adequate Notice of Confirmation Hearing. ....................7

**II.** Approval of the Disclosure Statement, Solicitation, and Solicitation Procedures ....................7

**A.** The Disclosure Statement Should Be Approved. ....................7

**B.** Solicitation of the Plan Complied with the Bankruptcy Code and Was in Good Faith. ....................10

**C.** The Vote Tabulation Satisfied Section 1126(c) and Bankruptcy Rule 3018(a). ....................11

**III.** The Plan Satisfies Each Requirement for Confirmation and Should Be Approved. ....................12

**A.** The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code. ....................12

**B.** The Debtor's Proposed Assumption or Rejection of Executory Contracts and Unexpired Leases and Cure Process Pursuant to the Plan Is an Appropriate Exercise of the Debtor's Business Judgment and Should Be Approved. ....................17

**C.** The Plan Releases and Exculpation Should Be Approved. ....................19

**D.** The Plan Satisfies Section 1129(a)(2) of the Bankruptcy Code. ....................31

**E.** The Plan Has Been Proposed in Good Faith Under Section 1129(a)(3) of the Bankruptcy Code. ....................32

**F.** The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code. ....................33

**G.** The Debtor Has Complied with Section 1129(a)(5) of the Bankruptcy Code. ....................34

**H.** The Plan Does Not Contain Any Rate Changes Subject to Section 1129(a)(6) of the Bankruptcy Code. ....................35

**I.** The Plan Is in the Best Interests of All Creditors and Equity Security Holders under Section 1129(a)(7) of the Bankruptcy Code. ....................35

**J.** The Plan Has Been Accepted by an Impaired Voting Class (Section 1129(a)(8)) of the Bankruptcy Code). ....................36

**K.** Payment in Full of All Allowed Priority Claims (Section 1129(a)(9) of the Bankruptcy Code). ....................37

**L.** The Plan Satisfies Section 1129(a)(10) of the Bankruptcy Code. ....................38

**M.** The Plan Is Feasible and Satisfies Section 1129(a)(11) of the Bankruptcy Code. ....................38

**N.** The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code. ....................43

**O.** Sections 1129(a)(13)-(16) of the Bankruptcy Code Are Not Applicable. ....................43

**P.** Section 1129(b) of the Bankruptcy Code is Inapplicable Because All Holders of Claims are Either Unimpaired or Have Voted to Accept the Plan. ....................44

**Q.** Section 1129(c): The Plan Is the Only Plan Currently on File ....................44

**R.** The Plan's Principal Purpose Is Not Avoidance of Taxes (11 U.S.C. § 1129(d)). ....................44

**S.** Section 1129(e): Does Not Apply to the Plan. ....................45

**IV.** Cause Exists to Waive the Stay of the Confirmation Order. ....................45

CONCLUSION ....................45

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
526 U.S. 434 (1999) .......... 35

*FOM Puerto Rico S.E. v. Dr. Barnes EyeCenter Inc.*,
255 F. App'x 909 (5th Cir. 2007) .......... 25

*Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.*),
994 F.2d 1160 (5th Cir. 1993) .......... 12, 40

*Hernandez* v. *Larry Miller Roofing, Inc.*,
628 F. App'x 281 (5th Cir. 2016) .......... 25

*In re 47th and Belleview Partners*,
95 B.R. 117 (Bankr. W.D. Mo. 1988) .......... 39

*In re Age Refining, Inc.*,
801 F.3d 530 (5th Cir. 2015) .......... 22

*In re Allied Props., LLC*,
No. 06-33754, 2007 WL 1849017 (Bankr. S.D. Tex. June 25, 2007) .......... 23

*In re Am. Solar King Corp.*,
90 B.R. 808 (Bankr. W.D. Tex. 1988) .......... 34

*In re Bigler LP*,
442 B.R. 537 (Bankr. S.D. Tex. 2010) .......... 21, 22, 24

*In re Block Shim Dev. Company-Irving*,
939 F.2d 289 (5th Cir. 1991) .......... 32

*In re Cajun Elec. Power Co-op., Inc.*,
119 F.3d 349 (5th Cir. 1997) .......... 22

*In re Cajun Elec. Power Co-op., Inc.*,
230 B.R. 715 (Bankr. M.D. La. 1999) .......... 40

*In re Century Glove*, *Inc.*,
Nos. 90-400-SLR, 90-401-SLR, 1993 WL 239489 (D. Del. Feb. 10, 1993) .......... 33

*In re Copy Crafters Quickprint, Inc.*,
92 B.R. 973 (Bankr. N.D.N.Y. 1988) .......... 7

*In re Cypresswood Land Partners, I*,
409 B.R. 396 (Bankr. S.D. Tex. 2009) .......... 13, 39

*In re Derosa-Grund*,
567 B.R. 773 (Bankr. S.D. Tex. 2017) .......... 22

*In re Divine Ripe, L.L.C.*,
554 B.R. 395 (Bankr. S.D. Tex. 2016) ........................................................................ 7

*In re Eagle Bus Mfg., Inc.*,
134 B.R. 584 (Bankr. S.D. Tex. 1991) ...................................................................... 14

*In re Foster Mortg. Corp.*,
68 F.3d 914 (5th Cir. 1995) ..................................................................................... 22

*In re Gen. Homes Corp.*,
134 B.R 853 (Bankr. S.D. Tex. 1991). ..................................................................... 23

*In re Heritage Org., L.L.C.*,
375 B.R. 230 (Bankr. N.D. Tex. 2007) ............................................................... 21, 39

*In re Holmes*,
301 B.R. 911 (Bankr. M.D. Ga. 2003) ...................................................................... 39

*In re Idearc Inc.*,
423 B.R. 138 (Bankr. N.D. Tex. 2009) ..................................................................... 23

*In re J T Thorpe Co.*,
308 B.R. 782 (Bankr. S.D. Tex. 2003) ...................................................................... 13

*In re Jackson Brewing Co.*,
624 F.2d 599 (5th Cir. 1980) .................................................................................... 21

*In re Lakeside Glob. II, Ltd.*,
116 B.R. 499 (Bankr. S.D. Tex. 1989) ...................................................................... 40

*In re Landing Assocs., Ltd.*,
157 B.R. 791 (Bankr. W.D. Tex. 1993)............................................................... 34, 40

*In re Metrocraft Pub. Servs., Inc.*,
39 B.R. 567 (Bankr. N.D. Ga. 1984) ........................................................................... 8

*In re Mirant Corp.*,
348 B.R. 725 (Bankr. N.D. Tex. 2006) ..................................................................... 22

*In re Mirant Corp.,*
No. 03-46590 (DML), 2005 WL 6443614 (Bankr. N.D. Tex. Dec. 9, 2005) ........................... 14

*In re Moody Nat'l SHS Hous. H, LLC*,
No. 10-30172 (MI), 2010 WL 5116872 (Bankr. S.D. Tex. June 30, 2010) ............................. 25

*In re Moore*,
608 F.3d 253 (5th Cir. 2010) .................................................................................... 22

*In re Northbelt, LLC*,
630 B.R. 228 (Bankr. S.D. Tex. 2020) ...................................................................... 40

*In re Pero Bros. Farms, Inc.*,
90 B.R. 562 (Bankr. S.D. Fla. 1988) .......... 39

*In re Phoenix Petroleum Co.*,
278 B.R. 385 (Bankr. E.D. Pa. 2001) .......... 8

*In re Pisces Energy LLC*,
No. 09-36591-H5-11, 2009 WL 7227880 (Bankr. S.D. Tex. Dec. 21, 2009) .......... 14

*In re PWS Holding Corp.*,
228 F.3d 224 (3d Cir. 2000) .......... 28

*In re Roqumore*,
393 B.R. 474 (Bankr. S.D. Tex. 2008) .......... 22, 23

*In re Save Our Springs (S.O.S.) All., Inc.*,
632 F.3d 168 (5th Cir. 2011) .......... 39

*In re Scioto Valley Mortg. Co.*,
88 B.R. 168 (Bankr. S.D. Ohio 1988) .......... 8

*In re Sentry Operating Co. of Tex., Inc.*,
264 B.R. 850 (Bankr. S.D. Tex. 2001) .......... 14

*In re Sun Country Dev., Inc.*,
764 F.2d 406 (5th Cir. 1985) .......... 32, 33

*In re Texas Extrusion Corp.*,
844 F.2d 1142 (5th Cir. 1988) .......... 7

*In re T-H New Orleans Ltd. P'ship*,
116 F.3d 790 (5th Cir. 1997) .......... 33, 40

*In re Treyson Dev., Inc.*,
No. 14-70256, 2016 WL 1604347 (Bankr. S.D. Tex. Apr. 19, 2016) .......... 25

*In re Two Sts., Inc.*,
597 B.R. 309 (Bankr. S.D. Miss. 2019) .......... 39

*In re U.S. Brass Corp.*,
194 B.R. 420 (Bankr. E.D. Tex. 1996) .......... 8

*In re Vitro Asset Corp.*,
No. 11-32600-HDH, 2013 WL 6044453 (Bankr. N.D. Tex. Nov. 14, 2013) .......... 14

*In re W.R. Grace & Co.*,
475 B.R. 34 (D. Del. 2012) .......... 33

*In re Wool Growers Cent. Storage Co.*,
371 B.R. 768 (Bankr. N.D. Tex. 2007) .......... 25

*In re Zale Corp.*,
62 F.3d 746 (5th Cir. 1995) .......... 25

*Pizza of Haw., Inc. v. Shakey's, Inc.* (*In re Pizza of Haw., Inc.*),
761 F.2d 1374 (9th Cir. 1985) .......... 40

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*,
390 U.S. 414 (1968) .......... 22

*Republic Supply Co. v. Shoaf*,
815 F.2d 1046 (5th Cir. 1987) .......... 24, 25, 26

**Statutes**

11 U.S.C. § 105 .......... 29

11 U.S.C. § 328 .......... 33

11 U.S.C. § 330 .......... 33

11 U.S.C. § 331 .......... 33

11 U.S.C. § 350 .......... 43

11 U.S.C. § 363 .......... 9, 36

11 U.S.C. § 365 .......... 17, 18

11 U.S.C. § 503 .......... 33, 37

11 U.S.C. § 507 .......... 43

11 U.S.C. § 1103 .......... 33

11 U.S.C. § 1107 .......... 2

11 U.S.C. § 1108 .......... 2

11 U.S.C. § 1122 .......... 13, 14

11 U.S.C. § 1123 .......... Passim

11 U.S.C. § 1125 .......... Passim

11 U.S.C. § 1126 .......... 10, 11, 31, 32, 37

11 U.S.C. § 1129 .......... Passim

28 U.S.C. § 157 .......... 6

28 U.S.C. § 1334 .......... 6

28 U.S.C. § 1408 .......... 6

28 U.S.C. § 1409 .......... 6

28 U.S.C. § 1930 ... 43

**Other Authorities**

Fed. R. Bankr. P. 3020 ... 45

H.R. Rep. No. 95-595 (1977) ... 13, 31

S. Rep. No. 95-989 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787 ... 13

Tedder Industries, LLC, as debtor and debtor in possession (collectively the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), submits this memorandum of law (this "**Memorandum**") in support of its request for confirmation on a final basis and entry of an order (the "**Confirmation Order**") approving the *Combined Disclosure Statement and Plan of Liquidation of Tedder Industries, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 194] (as supplemented by the Plan Supplement (defined below) and as the same may be amended, modified and supplemented from time to time, the "**Plan,**" "**Disclosure Statement**," or "**Plan and Disclosure Statement**").[2]

## PRELIMINARY STATEMENT

1. The Debtor is pleased to be before the Court seeking confirmation of a chapter 11 plan of liquidation supported by all of its Voting Creditors (defined below) that provides for an orderly wind-down of the Debtor's Estate and distributions to all of the Debtor's creditors.

2. The Debtor commenced this Chapter 11 Case with a promising product hampered by an unsustainable debt load. With the support of its Secured Lenders and majority equity holder, the Debtor implemented a section 363 sale process seeking to maximize the value of its IP and assets, including its trade name Alien Gear. Following a robust marketing process, the Debtor sold substantially all of its assets to Safariland pursuant to the Sale Order. The Sale Order approved the $10.3 million purchase price as the highest and best offer available to the Debtor and approved Safariland as a good-faith purchaser of the Debtor's assets. Unfortunately, the proceeds of the sale did not come close to satisfying the Debtor's approximately $20.55 million Secured Lender Claim, much less the claims of any other holders of Claims against or Interests in the Debtor.

[2] Capitalized terms used and not otherwise defined herein shall have the meanings given to such terms in the Plan.

3. After entry of the Sale Order, the Debtor entered into negotiations with its Secured Lenders to determine if there was a path for recovery for the Debtor's unsecured creditors. Those discussions culminated in the Plan, which provides for payment in full to the Debtor's administrative and priority creditors, a $100,000 GUC Pool to be shared ratably among the Debtor's remaining unsecured creditors, and sufficient funding to administer the Estate and ensure a tax-efficient wind-down of the Estate. The Plan is supported by all of the Debtor's Voting Creditors, and no party in interest has objected to Confirmation

4. The Debtor submits that the Plan is in the best interests of all of the Debtor's stakeholders and is the result of arm's-length, good-faith negotiations between the Debtor, the Secured Lenders, and certain of the Debtor's unsecured creditors. Entry of the Confirmation Order will allow the Debtor to implement the proposed wind-down of its Estate and conclude this Chapter 11 Case. For the reasons stated herein and in the supporting declaration filed contemporaneously herewith, the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. Accordingly, the Debtor respectfully requests that the Court confirm the Plan.

## BACKGROUND

### I. General Background of this Chapter 11 Case

5. On December 8, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor is authorized to operate its business and manage its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. For an overview of the Debtor's business and other facts relevant to the relief discussed herein, the Debtor respectfully refers the Court to the record of this Chapter 11 Case, including:

(a) the Plan and Disclosure Statement, filed on July 27, 2026 [Docket No. 194];

(b) the *Debtor's Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statements, (II) Approving the Solicitation Procedures and Solicitation Packages, (III) Scheduling a Combined Hearing, (IV) Establishing Procedures for Objecting to the Plan and Final Approval of the Disclosure Statement, (V) Approving the Form, Manner, and Sufficiency of Notice of the Combined Hearing, and (VI) Granting Related Relief*, filed July 21, 2026 [Docket No. 186] (the "**Solicitation Motion**");

(c) the *Declaration of Tommy Magrath in Support of Chapter 11 Petition and First Day Pleadings*, filed on December 12, 2025 [Docket No. 16] (the "**First Day Declaration**");

(d) the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Approving the Forms of Ballots and Notices in Connection Therewith, (V) Scheduling Certain Dates with Respect Thereto, and (VI) Granting Related Relief*, entered on July 29, 2026 [Docket No. 197] (the "**Solicitation Order**");

(e) (i) the *Notice of Filing of Plan Supplement to the Combined Disclosure Statement and Plan of Liquidation of Tedder Industries, LLC Pursuant to Chapter 11 of the Bankruptcy Code*, filed on August 14, 2026 [Docket No. 204] and (ii) the *Notice of Filing of Amended Plan Supplement to the Combined Disclosure Statement and Plan of Liquidation of Tedder Industries, LLC Pursuant to Chapter 11 of the Bankruptcy Code*, filed contemporaneously herewith (the document contained therein, as may be amended, modified, restated, or supplemented, the "**Plan Supplement**");

(h) the *Notice of (A) Hearing to Consider Final Approval of Proposed Disclosure Statement and Confirmation of the Debtor's Chapter 11 Plan, (B) Deadline for Submitting Ballots to Accept or Reject the Plan, (C) Deadline for Filing and Service of Objections to the Plan, and (D) Related Matters*, filed on July 30, 2026 [Docket No. 198] (the "**Confirmation Hearing Notice**");

(i) the *Certificate of Service* for the Confirmation Hearing Notice, filed on August 5, 2026 [Docket No. 200];

(j) the *Certificate of Service* for the Solicitation Package (as defined in the Solicitation Motion), filed on July 30, 2026 [Docket No. 198] (the "**Solicitation Certification**");

(k) *Tabulation and Certification of Ballots in Connection with the Confirmation of the Debtor's Combined Disclosure Statement and Plan of Liquidation of Tedder*

*Industries, LLC Pursuant to Chapter 11 of the Bankruptcy Code*, filed on August 31, 2026 [Docket. No. 206] (the "**Voting Certification**");

(l) the *Declaration of Kevin Dooley in Support of the Debtor's Request for an Order (I) Approving the Adequacy of the Disclosure Statement and the Prepetition Solicitation Procedures and (II) Confirming the Combined Disclosure Statement and Plan of Liquidation of Tedder Industries, LLC Pursuant to Chapter 11 of the Bankruptcy Code*, filed substantially contemporaneously herewith (the "**Dooley Confirmation Declaration**"); and

(n) the various affidavits and declarations of service and publication relating to the foregoing.

The Debtor incorporates herein by reference, the foregoing documents and any testimony and other declarations that may be adduced or submitted at or in connection with the Confirmation Hearing (defined below).

## II. Solicitation of Plan and Noticing

7. On July 30, 2026, the Debtor solicited votes on the Plan (the "**Solicitation**") from Holders of record as of July 27, 2026 (the "**Voting Record Date**") of Claims in Class 2 (Secured Lender Claim), Class 3 (General Unsecured Claims), and Class 4 (Watts Claim) (together, the "**Voting Classes**")[3] in accordance with the Solicitation Order, the Bankruptcy Code, and the Bankruptcy Rules by causing Kristina Hartogh of Vartabedian Katz Hester & Haynes LLP (in such capacity, the "**Solicitation Agent**" or the "**Voting Agent**") to distribute the following materials to each Holder of a Claim in the Voting Classes (the "**Voting Creditors**") by mail: (a) the Disclosure Statement and Plan; (b) the applicable Confirmation Hearing Notice; (c) the Solicitation Order; (d) the Solicitation Procedures (as defined in the Solicitation Motion); and (e) an appropriate form of ballot and a pre-addressed postage-prepaid return envelope (collectively, the "**Solicitation Materials**").

[3] Solicitation Certification ¶¶ 2-5.

8. Voting Creditors were required to submit their completed Ballots to the Voting Agent on or prior to 4:00 p.m. (prevailing Central Time) on August 27, 2026 (the "**Voting Deadline**"). The Debtor submits that the 31-day solicitation period provided to Voting Creditors was more than sufficient time to make an informed decision as to how to vote on the Plan.

9. In accordance with the Solicitation Order, the Debtor did not solicit votes from the Holders of Other Priority Claims (Class 1) or Existing Interests (Class 5) that were deemed to have accepted the Plan (collectively, the "**Non-Voting Holders**") and did not cause the Voting Agent to serve the Solicitation Materials on such Holders. Rather, on July 30, 2026[4] (i.e., 43 days before the date scheduled for the hearing on the adequacy of the Disclosure Statement and Confirmation of the Plan) (the "**Combined Hearing**" or "**Confirmation Hearing**"), the Debtor, in accordance with the Solicitation Order, caused the Voting Agent to mail (first-class postage prepaid), in lieu of Solicitation Materials, the Confirmation Hearing Notice for Non-Voting Holders, which included a notice of non-voting status and a form by which the Non-Voting Holders could elect to opt out of the Third-Party Releases included in the Plan.

10. The Debtor was not required to mail Solicitation Packages, other Solicitation Materials, or a Confirmation Hearing Notice to: (a) Holders of Claims that have already been paid in full during the Chapter 11 Case or (b) any party to whom the notice of the Solicitation Motion was sent but was subsequently returned as undeliverable without a forwarding address by the Voting Record Date.

11. The Confirmation Hearing Notice included, among other things, (a) notice of the commencement of the Chapter 11 Case; (b) notice of the date, time, and place of the Confirmation

[4] *Id.* ¶ 5.

Hearing; (c) procedures for the Debtor's assumption of Executory Contracts and Unexpired Leases; (d) a summary of the Plan, including a summary of the treatment of each Class and descriptions of the release, exculpation, and injunctive provisions; (e) the deadlines and procedures for filing objections or responses to the adequacy of the Disclosure Statement, Confirmation of the Plan, and the assumption of Executory Contracts or Unexpired Leases (the "**Objection Deadline**"); and (f) with respect to the Non-Voting Holders, a notice of non-voting status and an opt-out election form to Holders of Claims and Interests to opt out of certain releases contained in the Plan (the "**Opt-Out Form**").

12. On August 14, 2026, and September 3, 2026, the Debtor filed the Plan Supplement. The Plan Supplement consists of the Revised Schedule of Assumed Executory Contracts and Unexpired Leases, the Disclosure of Wind Down Officer, and the Wind Down Budget. The Debtor reserves the right to further amend the Plan Supplement in accordance with the terms of the Plan and the Confirmation Order.

## ARGUMENT

### I. The Court Has Jurisdiction and Notice Has Been Properly Given.

#### A. Jurisdiction and Venue.

13. The Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, as applicable.

**B. Adequate Notice of Confirmation Hearing.**

14. In accordance with Bankruptcy Rules 2002, 6006, 9006, 9007, and 9014, the Solicitation Order, the Confirmation Hearing Notice, and the Solicitation Procedures set forth therein, adequate notice of (a) the time for filing objections to confirmation and approval of the Disclosure Statement and Plan, (b) the transactions, settlements and compromises contemplated thereby, and (c) the Confirmation Hearing was provided to all holders of Claims and Interests and other parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules. The Confirmation Hearing Notice was approved in the Solicitation Order, which the Debtor complied with, and the Debtor respectfully submits that no other or further notice of the Confirmation Hearing is necessary or required.

## II. Approval of the Disclosure Statement, Solicitation, and Solicitation Procedures

**A. The Disclosure Statement Should Be Approved.**

15. The Disclosure Statement contains the "adequate information" regarding the Plan required by section 1125 of the Bankruptcy Code, and there have been no formal objections to its approval. The primary purpose of a disclosure statement is to provide stakeholders entitled to vote on a proposed plan with sufficient information to make an informed decision regarding whether or not to vote for the plan. *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988). "Adequate information" is a flexible standard, based on the facts and circumstances of each case. *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 400-01 (Bankr. S.D. Tex. 2016) (citing *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988)). Courts within the Fifth Circuit and elsewhere acknowledge that bankruptcy courts have broad discretion in determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy

Code. *See*, *e.g.*, *In re Tex. Extrusion*, 844 F.2d at 1157. For the reasons set forth below, the Debtor respectfully requests that the Disclosure Statement be approved on a final basis.

16. Courts generally look for certain information when evaluating the adequacy of the disclosures in a proposed disclosure statement, including:

- the events that led to the filing of a bankruptcy petition;
- a description of the available assets and their value;
- the anticipated future of the company;
- the source of information stated in the disclosure statement;
- the present condition of the debtor while in chapter 11;
- claims asserted against the debtor;
- the estimated return to creditors under a chapter 7 liquidation;
- the chapter 11 plan or a summary thereof;
- financial information, valuations, and projections relevant to the creditors' decision to accept or reject the chapter 11 plan;
- information relevant to risks posed to creditors under the plan;
- the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;
- litigation likely to arise in a non-bankruptcy context; and
- tax attributes of the debtor.[5]

[5] *See In re U.S. Brass Corp.,* 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996) (citing *In re Metrocraft Pub. Servs., Inc.,* 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) ); *see also In re Phoenix Petroleum Co.,* 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (citing factors that courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortg. Co.,* 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (setting forth a non-exhaustive list of 19 categories of information that may be included in a disclosure statement). Disclosure regarding all of the aforementioned topics is not necessary in every case. *See In re U.S. Brass,* 194 B.R. at 425; *see*

17. The Disclosure Statement, supplemented by the Plan Supplement, contains adequate information and was previously approved on a conditional basis on February 2, 2026. The Disclosure Statement is detailed and comprehensive, includes the elements required by section 1125, and provides more than sufficient information to permit the Voting Creditors to make "an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). It contains descriptions of, among other things: (a) the Plan; (b) the Debtor's business, including disclosures regarding its operations; (c) the sale of substantially all of the Debtor's assets pursuant to section 363 of the Bankruptcy Code; (d) the proposed wind down of the Debtor; (e) the Debtor's prepetition indebtedness and pending litigation; (f) financial information relevant to creditors' determinations of whether to accept or reject the Plan; (g) a liquidation analysis setting forth the estimated return that Holders would receive in a hypothetical Chapter 7 liquidation; (h) risk factors regarding the Debtor and the Plan; and (i) federal tax law consequences of the Plan. Accordingly, the Debtor submits that the Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and should be approved.

18. In addition to conditionally approving the adequacy of the Disclosure Statement, the Solicitation Order granted final relief regarding solicitation and noticing procedures and materials including, among other things: (a) approving the Solicitation Procedures; (b) approving the form and manner of the notice of the hearing to conditionally consider the Disclosure Statement, the Ballots, and the Solicitation Packages; and (c) approving certain dates and deadlines with respect to the Confirmation of the Plan and final approval of the Disclosure Statement

---

*also In re Phoenix Petroleum*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

(the "**Confirmation Schedule**"). The Debtor complied with the procedures and timeline approved by the Solicitation Order.

19. Accordingly, the Debtor submits that the Disclosure Statement, served in accordance with the Solicitation Order, contains sufficient information necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations. Moreover, the Disclosure Statement contains "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the distributions and transactions contemplated by the Plan, and should be approved.

### B. Solicitation of the Plan Complied with the Bankruptcy Code and Was in Good Faith.

20. Section 1125(e) of the Bankruptcy Code provides that "a person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title . . . is not liable" on account of such solicitation for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan. 11 U.S.C. § 1125(e). As set forth in the Disclosure Statement, and as demonstrated by the Debtor's compliance with the Solicitation Procedures and Solicitation Order, and as set forth in the Solicitation Certification, the Debtor at all times engaged in arm's-length, good-faith negotiations and took appropriate actions in connection with the solicitation of the Plan in compliance with section 1125 of the Bankruptcy Code. Therefore, the Debtor requests that the Court grant the parties the protections provided under section 1125(e) of the Bankruptcy Code.

21. In light of the arguments set forth in this Part II, and the fact that no formal objections have been received to the Disclosure Statement and the Solicitation Order, the Debtor

respectfully submits that the Disclosure Statement and the Solicitation satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, and should be approved.

**C. The Vote Tabulation Satisfied Section 1126(c) and Bankruptcy Rule 3018(a).**

22. The Debtor submits that the voting and tabulation procedures followed by the Voting Agent are in accordance with the Solicitation Order, section 1126(c) of the Bankruptcy Code, and Bankruptcy Rule 3018(a).

23. Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Section 1126 of the Bankruptcy Code provides in part that only holders of allowed claims and interests in impaired classes that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject a plan. 11 U.S.C. §§ 1126 (f)–(g). Class 1 and Class 5 are Unimpaired under the Plan and deemed to have accepted the Plan and are not entitled to vote on the Plan. Based on the foregoing, pursuant to section 1126 of the Bankruptcy Code, the Holders of Claims in Classes 2 (Secured Lender Claim) and 3 (General Unsecured Claims), and 4 (Watts Claim) are the only parties entitled to vote on the Plan. As set forth in the Voting Certification in accordance with section 1126 of the Bankruptcy Code and the Solicitation Procedures Order, the Debtor solicited acceptances and rejections of the Plan from the Holders of Claims in Classes 2, 3, and 4. Every Ballot was counted and considered when tabulating votes for the acceptance or rejection of the Plan.[6]

[6] *See* Voting Certification ¶ 2 and exhibits thereto.

24. As set forth in greater detail in the Voting Certification (defined below), the percentages of Holders of Claims in Classes 2, 3, and 4 entitled to vote on the Plan that voted to accept or reject the Plan are as follows:

| **Class** | **Amount Accepting Plan** (% of Amount Voted) | **Amount Rejecting Plan** (% of Amount Voted) | **Number Accepting Plan** (% of Number Voted) | **Number Rejecting Plan** (% of Number Voted) |
|---|---|---|---|---|
| **Class 2 (Secured Lender Claims)** | 100% | 0% | 1/100% | $0.00/0% |
| **Class 3 (General Unsecured Claims)** | 100% | 0% | 4/100% | 0% |
| **Class 4 (Watts Claim)** | 100% | 0% | 1/100% | 0% |

25. Based on the facts and arguments set forth above, the Debtor submits that tits solicitation of the Plan satisfied the requirements of Bankruptcy Code sections 1125 and 1126 and Bankruptcy Rules 3017(d), 3018(c), and 3018(e).

## III. The Plan Satisfies Each Requirement for Confirmation and Should Be Approved.

26. The Debtor respectfully submits that the Plan should be confirmed because it satisfies each of the applicable provisions of section 1129 of the Bankruptcy Code.

### A. The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code.

27. The Debtor must show by a preponderance of the evidence that the Plan satisfies section 1129 of the Bankruptcy Code to achieve Confirmation. *See*, *e.g.*, *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.*), 994 F.2d 1160, 1165 (5th Cir. 1993) ("The . . . preponderance of the evidence is the debtor's appropriate standard of proof both under

§ 1129(a) and in a cramdown."); *see also In re Cypresswood Land Partners, I*, 409 B.R. 396 (Bankr. S.D. Tex. 2009); *In re J T Thorpe Co.*, 308 B.R. 782, 785 (Bankr. S.D. Tex. 2003). The Debtor submits that the Plan satisfies the requirements of section 1129 of the Bankruptcy Code and complies with all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas and should be confirmed.[7]

28. Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan must comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) indicates that this provision encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code governing classification of claims and equity interests and contents of the Plan, respectively. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989 at 126 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787. As explained below, the Plan complies with sections 1122 and 1123 of the Bankruptcy Code.

**1. The Plan's Classification of Claims and Existing Interests Complies with Section 1122 of the Bankruptcy Code.**

29. Section 1122(a) of the Bankruptcy Code provides that, "[e]xcept as otherwise provided in [section 1122(b) of the Bankruptcy Code], a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). The Debtor is entitled to significant flexibility in classifying claims and interests into different classes as long as a rational legal or factual basis for separate

[7] Sections 1129(a)(14) through 1129(a)(16) of the Bankruptcy Code do not apply to the Debtor. Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations to which the Debtor is not subject. *See* 11 U.S.C. § 1129(a)(14). Similarly, section 1129(a)(15) of the Bankruptcy Code applies only to "individuals" as that term is defined in the Bankruptcy Code, and not to companies such as the Debtor. Finally, section 1129(a)(16) of the Bankruptcy Code governs property transfers by entities that, unlike the Debtor, are something other than a "moneyed, business, or commercial corporation or trust."

classification exists and all claims or equity interests within a particular class are substantially similar. *See In re Sentry Operating Co. of Tex., Inc.*, 264 B.R. 850, 860 (Bankr. S.D. Tex. 2001) (recognizing that "[section] 1122 is permissive of any classification scheme that is not proscribed, and that substantially similar claims may be *separately* classified"); *see also In re Vitro Asset Corp.*, 2013 WL 6044453, at *5 (Bankr. N.D. Tex. Nov. 14, 2013) ("[A] plan may provide for multiple classes of claims or interests so long as each claim or interest within a class is substantially similar to other claims or interests in that class."). The classifications, however, cannot be "arbitrarily designed" to secure the approval of an impaired class when "the proposed reorganization of the debtor would not serve any legitimate purpose." Courts afford a plan proponent with "significant flexibility" in classifying claims and interests under section 1122(a), provided that there is a reasonable basis for the classification scheme and all claims or interests within a particular class are substantially similar. *See In re Pisces Energy LLC*, 2009 WL 7227880, at *8 (Bankr. S.D. Tex. Dec. 21, 2009) ("Significantly, a plan proponent is afforded significant flexibility in classifying claims under section 1122(a) of the Bankruptcy Code provided there is a reasonable basis for the classification scheme and all claims within a particular class are substantially similar."); *see also In re Mirant Corp., 2005 WL 6443614*, at *19 (Bankr. N.D. Tex. Dec. 9, 2005); *In re Eagle Bus Mfg., Inc.*, 134 B.R. 584, 596 (Bankr. S.D. Tex. 1991) ("A classification scheme satisfies section 1122(a) of the Bankruptcy Code when a reasonable basis exists for the choices made and all claims within a particular class are substantially similar."). Here, the Plan appropriately classifies Claims and Interests as follows:

| Class | Designation | Impairment | Voting Status |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Secured Lender Claim | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Watts Claim | Impaired | Entitled to Vote |
| 5 | Existing Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

30. The Plan's classification of Claims and Interests is reasonable and complies with the Bankruptcy Code. All Claims and Interests within each Class have the same or similar rights against the Debtor. The Plan provides for the separate classification of Claims against and Interests in the Debtor based upon the differences in such Claims' and Interests' legal nature or priority. The Plan thus complies with section 1122 of the Bankruptcy Code.

**2. The Plan Complies with the Requirements of Section 1123(a) of the Bankruptcy Code.**

31. Section 1123(a) of the Bankruptcy Code lists seven applicable requirements that a chapter 11 plan proponent must satisfy when seeking plan confirmation. 11 U.S.C. § 1123(a). The Plan fully complies with each such requirement:

(a) The Plan designates Classes of Claims and Existing Interests as required under section 1123(a)(1) of the Bankruptcy Code. *See* Plan Art. III.[8]

(b) The Plan identifies each Class of Claims and Existing Interests that is not Impaired under the Plan and sets forth the treatment of Impaired Claims and Existing Interests, pursuant to sections 1123(a)(2) and (3) of the Bankruptcy Code. *See* Plan Art. III.[9]

(c) The Plan provides for the same treatment of each Claim or Existing Interest in each respective Class (unless otherwise agreed to by a Holder of a particular Claim or

[8] Dooley Confirmation Declaration ¶14.

[9] *Id.*

Existing Interest) as required under section 1123(a)(4) of the Bankruptcy Code. *See* Plan Art. III.[10]

(d) The Plan provides adequate means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including (i) the identification of sources of consideration to be distributed under the Plan (*see* Plan Art. V.C.), (ii) all actions set forth in Article IV of the Plan to facilitate the wind down of the Debtor's Estate, including the transfer of Remaining Assets to the Liquidating Debtor and the appointment of the Wind Down Officer, (iii) rejection or assumption of Executory Contracts and Unexpired Leases, (iv) the establishment of the GUC Pool to fund distributions under the Plan, and (v) taking of all necessary and appropriate actions by the Debtor or Liquidating Debtor, as applicable, to effectuate the transactions under and in connection with the Plan. *See* Plan Arts. IV, V, and VII.[11]

(e) Section 1123(a)(6) does not apply to the Plan because the Plan provides for the dissolution of the Debtor. Pursuant to the Plan, the Existing Interests shall remain outstanding solely to the extent necessary to accomplish the Wind Down.[12]

(f) The Plan satisfies section 1123(a)(7) by specifying that Kevin Dooley shall be appointed as Wind Down Officer, whose appointment and designation are consistent with the interests of creditors and equity security holders and with public policy.[13]

(g) Section 1123(a)(8) does not apply to the Plan because the Debtor is not an individual.[14]

Accordingly, the Debtor respectfully submits that the requirements of section 1123(a) of the Bankruptcy Code have been satisfied.

### 3. The Plan Complies with Section 1123(b) of the Bankruptcy Code.

32. Section 1123(b) of the Bankruptcy Code sets forth permissive provisions that may be incorporated into a chapter 11 plan. Each provision of the Plan is consistent with section 1123(b):

---

[10] *Id.* ¶

[11] *Id.* ¶15.

[12] *Id.* ¶16.

[13] *Id.* ¶17.

[14] *Id.* ¶18

(a) As permitted by section 1123(b)(1) of the Bankruptcy Code, the Plan leaves Classes 1 and 5 Unimpaired and Classes 2, 3, and 4 Impaired.

(b) As permitted by section 1123(b)(2) of the Bankruptcy Code, the Plan provides for the rejection of all Executory Contracts and Unexpired Leases not otherwise assumed.

(c) As permitted by section 1123(b)(3)(A) of the Bankruptcy Code, Articles IX.D of the Plan provides for a release of Claims and Causes of Action owned by the Debtor and by third parties in connection with the Debtor's restructuring efforts and the Chapter 11 Case. Additionally, as permitted by section 1123(b)(3)(B) of the Bankruptcy Code, Article IV. of the Plan preserves for the Liquidating Debtor any rights, Claims, Causes of Action, rights of setoff or recoupment or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date, except as otherwise provided in the Plan.

(d) As permitted by section 1123(b)(5) of the Bankruptcy Code, the Plan modifies the rights of Holders of Claims in the Impaired Classes and leaves unaffected the rights of Holders of Claims or Existing Interests in the Unimpaired Classes.

(e) As permitted under section 1123(b)(6) of the Bankruptcy Code, a plan may include other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code. In accordance with section 1123(b)(6) of the Bankruptcy Code, Article IX of the Plan contains release, exculpation, and injunctive provisions that are not inconsistent with the applicable provisions of the Bankruptcy Code and are essential to the liquidation.

33. Each of the foregoing permissive provisions is consistent with section 1123(b) of the Bankruptcy Code and should be approved.

**B. The Debtor's Proposed Assumption or Rejection of Executory Contracts and Unexpired Leases and Cure Process Pursuant to the Plan Is an Appropriate Exercise of the Debtor's Business Judgment and Should Be Approved.**

34. Pursuant to section 1123(b)(2) of the Bankruptcy Code, a plan may, subject to section 365, provide for the assumption, rejection, or assignment of an executory contract or unexpired lease. 11 U.S.C. § 1123(b)(2). Section 365(a) of the Bankruptcy Code provides that a debtor, subject to the court's approval, may assume or reject any executory contract or unexpired lease upon a showing that such action will benefit the debtor's estate and is an exercise of sound business judgment.

35. Article VII.A of the Plan provides that, pursuant to, and subject to the requirements of, sections 365 and 1123 of the Bankruptcy Code, as of the Effective Date, all Executory Contracts and Unexpired Leases of the Debtor shall be deemed to have been rejected by the Debtor, unless such Executory Contract or Unexpired Lease: (a) was previously assumed or rejected by the Debtor, pursuant to the Sale Order or other Final Order of the Bankruptcy Court, (b) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (c) is the subject of a motion to assume filed by the Debtor on or before the Confirmation Date, or (d) is specifically designated by the Debtor as a contract or lease to be assumed on the Schedule of Assumed Executory Contracts and Unexpired Leases. Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of such Executory Contracts and Unexpired Leases as set forth in the Plan, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

36. Article VII.B of the Plan provides that any monetary defaults under each Assumed Contract shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount on the Effective Date or on such other terms as the parties to such Assumed Contracts may otherwise agree. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults under provisions restricting a change in control or ownership interest composition of other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. The Debtor filed its Schedule of Assumed Executory Contracts and Unexpired Leases, listing its current insurance policies that have been put in place postpetition to facilitate

the Wind Down of the Liquidating Debtor.[15] The Debtor believes that continuing its insurance policies is consistent with its goal of expeditiously winding down the Liquidating Debtor, pursuant to the terms of the Plan. As such, the assumption of Executory Contracts is in the best interests of the Debtor's Estate and complies with applicable bankruptcy law.[16]

37. The Debtor is current on payments under all Executory Contracts. To the extent there are any unknown defaults or disputes under an Executory Contract and any such objection relate solely to the Cure Amount, the Debtor may assume the applicable contract or lease, provided that the Debtor or the Liquidating Debtor, as applicable, reserves Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the non-Debtor party, unless a smaller amount is fixed by the Bankruptcy Court or otherwise agreed by the contract parties.

38. In accordance with the above, the Debtor maintains that the Plan satisfies the provisions of sections 1123(b)(2) and 365(a) of the Bankruptcy Code.

### C. The Plan Releases and Exculpation Should Be Approved.

39. The Plan provides that the Released Parties[17] will receive releases of certain claims by the Debtor and the Debtor's Estate (the "**Debtor's Releases**") and certain consensual releases

---

[15] The Debtor included its insurance policies on the Schedule of Assumed Executory Contracts and Unexpired Leases in an abundance of caution. Article VII.E of the Plan expressly provides for the assumption of the Debtor's insurance policies, and Article VII.D. provides that postpetition contracts are unaffected by the entry of the Confirmation Order. Other than its insurance policies that are deemed executory pursuant to Articles VII.D and VII.E of the Plan, the Debtor does not have any other Executory Contracts to be assumed.

[16] The Debtor is aware that service of the Schedule of Assumed Executory Contracts and Unexpired Leases on the contract counterparties was inadvertently delayed. [*See* Docket No. 207] The Debtor filed a Revised Schedule of Executory Contracts and Unexpired Leases on September 3, 2026. The Debtor submits that the delay in notice does not prejudice entry of the Confirmation Order because the only affected contract is a postpetition agreement that, pursuant to the Plan and applicable law, shall be dealt with by the Debtor in the ordinary course of business and is unaffected by the Confirmation Order. *See* Plan Art. VII.D. Additionally, the Court expressly retains jurisdiction to resolve disputes related thereto. *See* Plan Art. IX.E.

[17] Plan Art. I.A.

by the Releasing Parties[18] (the "**Third-Party Releases**").[19] Further, the Plan includes an exculpation for the benefit of the Exculpated Party (the "**Exculpation**").[20]

40. The release and exculpation provisions in the Plan comply with the Bankruptcy Code and applicable nonbankruptcy law and are necessary and integral components of the Plan. The releases in the Plan are consensual and in exchange for, and are supported by, fair, sufficient, and adequate consideration provided by the parties receiving such releases. Furthermore, the release and exculpation provisions in the Plan are the product of arm's-length negotiations, were a critical inducement for parties to support the Plan, and constitute a good-faith settlement and compromise of the Claims released.[21] Notably, the Plan does not contain any non-consensual third-party releases. The Third-Party Releases do not apply to creditors that have opted out of the Third-Party Releases on the Ballot or who have objected to the Third-Party Releases.[22] The Third-Party Releases are limited in scope and only affect the stakeholders that have consented to such treatment by failing to opt out or object to such releases. The releases are also narrow in that they do not extend to Claims arising out of or relating to any act or omission of a Released Party that is determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. More generally, the release and exculpation provisions in the Plan are substantially similar to analogous provisions in plans confirmed by courts in this District.

[18] *Id.*

[19] Plan Art. IX.D.

[20] Plan Arts. I.A and IX.C.

[21] Dooley Confirmation Declaration ¶ 23.

[22] Notably, as set forth in the Voting Certification, certain of the Debtor's creditors exercised their option to opt out of the Third-Party Releases.

41. The Exculpation protects the Debtor from having to defend costly and time-consuming litigation related to the solicitation, administration, and consummation of the Plan. The Exculpation is appropriately limited to the Debtor and does not extend to claims determined by final order to result from fraud, willful misconduct, or gross negligence. Accordingly, the Exculpation is wholly appropriate given the facts and circumstances of this Chapter 11 Case.

42. The releases and Exculpation contained in Articles IX.C and IX.D of the Plan were conspicuously disclosed and explained in the Disclosure Statement and the Plan, on the Ballots, and reproduced in the Confirmation Hearing Notice served on all parties in interest. Such notice was timely, sufficient, appropriate, and reasonably calculated under the circumstances to reach all affected parties. The Debtor has received no objections to the release and Exculpation provisions. Accordingly, the releases in Article IX.D and the Exculpation in Article IX.C of the Plan should be approved.

**1. Debtor's Releases.**

43. Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, a plan may "provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estate." 11 U.S.C. § 1123(b)(3)(A). Accordingly, pursuant to section 1123(b)(3)(A), the Debtor may release Estate Causes of Action as consideration for concessions made by various stakeholders pursuant to the Plan. *See, e.g., In re Bigler LP*, 442 B.R. 537, 547 (Bankr. S.D. Tex. 2010) (finding that a plan release provision "constitutes an acceptable settlement under § 1123(b)(3) because the Debtor and the Estate are releasing claims that are property of the Estate in consideration for funding of the Plan"); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 259 (Bankr. N.D. Tex. 2007). In considering the appropriateness of such settlements, courts in the Fifth Circuit generally examine whether the release is "'fair and equitable' and 'in the best interests of the estate.'" *In re Jackson Brewing*

*Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424-25 (1968)); *In re Bigler*, 442 B.R. at 543 n.6; *In re Derosa-Grund*, 567 B.R. 773, 784-85 (Bankr. S.D. Tex. 2017). The "fair and equitable standard" incorporates the absolute priority rule. *See In re Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 355-56 (5th Cir. 1997) ("'The words 'fair and equitable' are terms of art—they mean that senior interests are entitled to full priority over junior ones.'") (citation omitted); *see also In re Mirant Corp.*, 348 B.R. 725, 738 (Bankr. N.D. Tex. 2006) ("'fair and equitable' translates to the absolute priority rule").

44. Courts in the Fifth Circuit generally weigh the following factors in determining whether a settlement is in the best interests of the estate: (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay, including the difficulties, if any, to be encountered in the matter of collection; (c) the paramount interest of the creditors and a proper deference to their respective views; (d) the extent to which the settlement is truly the product of arm's-length bargaining and not fraud or collusion; and (e) all other factors bearing on the wisdom of the compromise. *See In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010); *In re Foster Mortg. Corp.*, 68 F.3d 914, 917-18 (5th Cir. 1995); *In re Roqumore*, 393 B.R. 474, 479-80 (Bankr. S.D. Tex. 2008).

45. In determining whether a settlement is appropriate and should be approved, "a bankruptcy court need not 'conduct a mini-trial' . . . [but] [r]ather . . . must 'apprise [itself] of the relevant facts and law so that [it] can make an informed and intelligent decision.'" *In re Age Refining, Inc.*, 801 F.3d 530, 541 (5th Cir. 2015) (citations omitted). Although the debtor bears the burden of establishing that a settlement is fair and equitable based on a balance of the above

factors, "the [debtor's] burden is not high." *See In re Roqumore*, 393 B.R. at 480. *In re Idearc Inc.*, 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009), *aff'd In re Idearc, Inc.*, 662 F.3d 315 (5th Cir. 2011). Indeed, the court need only determine that the settlement does not "'fall beneath the lowest point in the range of reasonableness.'" *Id.*; *see also In re Allied Props., LLC*, 2007 WL 1849017, at *4-5 (Bankr. S.D. Tex. June 25, 2007) ("[t]he Trustee need only show that his decision falls within the 'range of reasonable litigation alternatives.'"). Ultimately, courts afford debtors discretion to determine for themselves whether to release estate causes of action through a plan. *See* Gen. Homes Corp., 134 B.R. at 861 ("The court concludes that such a release is within the discretion of the Debtor.").

46. The Debtor's Releases satisfy the applicable legal standard. As an initial matter, the terms of the Debtor's Releases are "fair and equitable" and comply with the Bankruptcy Code's absolute priority rule. As discussed above, no Classes have rejected the Plan or are deemed to have rejected the Plan. Thus, the Debtor's Releases and settlements embodied therein do not result in any Classes junior to any rejecting Classes receiving or retaining any property on account of junior Claims or Interests. Thus, the Debtor's Releases are fair and equitable in line with Fifth Circuit precedent.

47. In addition to being fair and equitable, the Debtor's Releases are in the best interests of the Estates because: (a) the Debtor is not aware of the existence of any Claims or Causes of Action of material value being released by the Debtor, and is expressly preserving certain Causes of Action; (b) the Plan, including the Debtor's Releases, was negotiated in good faith and at arm's length by sophisticated entities that were represented by able advisors and that conditioned their support for and acceptance of the Plan, among other things, on the grant of the Debtor's Releases; (c) no party has objected to the Debtor's Releases; and (d) most importantly, the Debtor's Releases

have provided a material benefit to the Estates as they were an important component of the Plan and provided for (i) the funding of the GUC Pool for the Debtor's general unsecured creditors and (ii) the provision of the Watts Assets to Watts. The resulting compromise reflects a true arm's-length negotiation process. Accordingly, the Debtor's Releases are fair, equitable, and in the best interests of its Estate and should therefore be approved.

**2. Consensual Third-Party Releases.**

48. In addition to the Debtor's Releases, Article IX.D.2 of the Plan provides for a consensual release of any and all Claims and Causes of Action, including derivative claims, by certain non-Debtor Releasing Parties[23] against the Released Parties[24] in connection with, among other things and in whole or in part, the Debtor, the Plan, the Debtor's restructuring efforts, the Wind Down, or the Chapter 11 Case. Section 1123(b)(6) of the Bankruptcy Code provides that a chapter 11 plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1123(b)(6). Under Fifth Circuit law, a plan may include releases of third parties if such releases are provided by parties that consented to such releases and received consideration in exchange therefor. *See Bigler*, 442 B.R. at 549; s*ee Republic*

[23] Pursuant to Article I.A.84 of the Plan, the term "**Releasing Parties**" means collectively: ((a) each Released Party; (b) each holder of a Claim that is given the opportunity to, but does not, opt out of the Release provisions herein in accordance with this Plan; and (c) to the extent the Entities in clauses (a) and (b) of this definition may legally bind them to the releases herein, the Related Parties of such Entities in clauses (a) and (b)).

[24] Pursuant to Article I.A.83 of the Plan, the term "**Released Parties**" means collectively: (a) the Debtor and its Estate; (b) the Liquidating Debtor and its Estate; (c) the DIP Lenders; (d) any Professional; (e) the Secured Lenders; and (f) with respect to (a) through (e), such Entities' Related Parties.

Additionally, pursuant to Article I.A.82 of the Plan, the term "**Related Parties**" means collectively, with respect to any Entity or Person, including each Released Party and Exculpated Party, such Entity's or Person's current, former and future Affiliates, member firms and associated entities, and with respect to each of the foregoing, their Affiliates, current directors, current managers, current officers and current equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, Affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, employees, agents, trustees, advisory board members, investment fund advisors or managers, investment managers, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

*Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987) (acknowledging that the Bankruptcy Code does not prohibit a non-debtor release "when it has been accepted and confirmed as an integral part of a plan of reorganization"); *In re Wool Growers Cent. Storage Co*., 371 B.R. 768, 775 (Bankr. N.D. Tex. 2007) ("Most courts allow consensual nondebtor releases to be included in a plan." (citations omitted)). If these requirements are satisfied, a release should be approved when it is "an essential means of implementing [a] [p]lan pursuant to Section 1123(a)(5) of the Bankruptcy Code[.]" *In re Moody Nat'l SHS Hous. H, LLC*, No. 10-30172 (MI), 2010 WL 5116872, at *5 (Bankr. S.D. Tex. June 30, 2010) (approving consensual nondebtor release).

49. Third-party releases that are, as here, (a) consensual, (b) specific in language, (c) integral to the Plan, (d) a condition of the settlement, and (e) given for consideration do not violate the Bankruptcy Code and should be allowed and included in the Plan. *See FOM Puerto Rico S.E. v. Dr. Barnes EyeCenter Inc.,* 255 F. App'x 909, 911-913 (5th Cir. 2007) (discussing Fifth Circuit standard under *Republic Supply Co.* v. *Shoaf*, 815 F.2d 1046, 1050, 1053 (5th Cir. 1987)); *In re Treyson Dev., Inc.*, 2016 WL 1604347, at *15-17 (Bankr. S.D. Tex. Apr. 19, 2016) (citing *Hernandez* v. *Larry Miller Roofing, Inc.*, 628 F. App'x 281, 287-89 (5th Cir. 2016)). The critical factor in determining whether a release is consensual is whether—after the Debtor's due process obligations of providing appropriate notice—"the affected creditor *timely objects* to the provision." *See In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 776 (Bankr. N.D. Tex. 2007) (citing *In re Zale Corp.*, 62 F.3d 746, 760-61 (5th Cir. 1995)) (emphasis added). Furthermore, Paragraph 40 of the Procedures for Complex Cases in the Southern District of Texas (the "**Complex Case Procedures**") provides:

> If a proposed plan seeks consensual pre- or post-petition releases with respect to claims that creditors may hold against non-debtor parties, then a ballot must be sent to creditors entitled to vote on the

> proposed plan and notices must be sent to non-voting creditors and parties-in-interest. The ballot and the notice must inform the creditors of such releases and provide a box to check to indicate assent or opposition to such consensual releases together with a method for returning the ballot or notice.

50. The Third-Party Releases satisfy the Fifth Circuit's standard set forth in *Shoaf* and its progeny and satisfy the Complex Case Procedures. First, the Third-Party Releases are consensual, as parties had to affirmatively opt out of such releases. As set forth above, parties in interest were provided extensive notice of the Chapter 11 Case, the Plan, and the objection deadline for Confirmation of the Plan. The Confirmation Hearing Notice and Solicitation Materials expressly included the terms of the Third-Party Releases, as set forth in Article IX.D.2 of the Plan and advised careful review and consideration of the terms of the Third-Party Releases. The release, exculpation, and injunction provisions, including the Third-Party Releases, were also emphasized in bold font in the Plan and the Disclosure Statement. Of the six (6) Ballots received, three (3) Holders of Claims and Interests completed and returned valid elections to opt out of the Third-Party Releases.[25]

51. Second, the Third-Party Releases are sufficiently specific to put the Releasing Parties on notice of the claims being released. The Third-Party Releases describe the nature and type of claims being released, including with respect to the restructuring of any Claim or Interest before or during the Chapter 11 Case, the Plan and the negotiation thereof, the Chapter 11 Case generally, the solicitation of votes with respect to the Plan, or any other act or omission relating to the foregoing taking place on or before the Effective Date.

---

[25] Voting Certification Ex. 1.

52. Third, the Third-Party Releases are an integral part of the Plan and a condition of the settlement set forth therein. As mentioned above, the Third-Party Releases facilitated the agreement by the Secured Lenders to fund recovery for the Debtor's general unsecured creditors. Participation by the Released Parties in both the Plan and the Chapter 11 Case and was critical in reaching consensus to support the Plan. As such, the Third-Party Releases were a core negotiation point and appropriately offer certain protections to parties that constructively participated in formulating the Plan.

53. Fourth, the Third-Party Releases are given for consideration. The Released Parties have made and will continue to make substantial contributions to the Debtor's restructuring efforts leading up to and including the commencement of this Chapter 11 Case through the Effective Date and will be instrumental to the Debtor's Wind Down. Among other things, the Released Parties who are/were directors, officers, and employees have (a) operated the Debtor's business during the Chapter 11 Case and (b) helped to facilitate and consummate the sale of substantially all of the Debtor's Assets to Safariland. Similarly, the Debtor's Secured Lenders (a) allowed for consensual use of their cash collateral to fund the Chapter 11 Case and agreed to fund an emergency debtor-ion possession financing to the extent needed to help with the Debtor's liquidity constraints, (b) supported the Debtor's sale process, and (c) facilitated formulating and negotiating the Plan, including funding the consideration provided to the Debtor's general unsecured creditors from their collateral.[26]

54. These substantial concessions and contributions by all of the Released Parties have enabled the Debtor to work toward formulating and confirming the Plan on a consensual basis and

[26] Dooley Confirmation Declaration ¶ 36.

pursue an orderly and expeditious Wind Down following the Effective Date. The Third-Party Releases, which are commonplace in complex cases, were a necessary component of the Plan. The Debtor's Releases were a material inducement to, and condition of, the concessions and substantial contributions received from the Released Parties under the Plan.[27] As such, the Debtor's Releases are worthwhile and beneficial to all of the Debtor's stakeholders.

89. Based on the foregoing, the Third-Party Releases comply with the controlling Fifth Circuit standards, are appropriate and justified under the circumstances, and should therefore be approved.

**3. The Plan's Exculpation Should Be Approved.**

55. Like the releases discussed above, the Exculpation contained in Article IX.C of the Plan should be approved. Article IX.C of the Plan provides exculpation for the Exculpated Party, who is appropriately limited to the Debtor. The Exculpation expressly does not release or exculpate the Exculpated Party from any acts or omissions that constitute actual fraud, willful misconduct, or gross negligence. The Exculpation is intended to prevent collateral attacks against estate fiduciaries that have acted in good faith to help facilitate the Debtor's Chapter 11 Case. *See*, *e.g.*, *In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) (holding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code."). A bankruptcy court has the power to approve an exculpation provision in a chapter 11 plan, as a chapter 11 plan cannot be confirmed unless the bankruptcy court finds that the plan has been proposed in good faith. *See* 11 U.S.C. § 1129(a)(3).

[27] *Id.* ¶23.

56. Once the court makes a good faith finding, it is appropriate to set the standard of care of the parties involved in the formulation of that chapter 11 plan. Exculpation provisions, therefore, properly prevent future collateral attacks against estate fiduciaries and others that participate actively in the Debtor's restructuring. Moreover, the scope of the Exculpation is appropriately limited to actions taken or not taken that arise out of and relate to this Chapter 11 Case.

57. Here, the Exculpation is appropriate as it provides protection to estate fiduciaries. It represents an integral component of the Plan, is the product of good-faith, arm's-length negotiations, is appropriately and narrowly tailored in time and scope, and is authorized pursuant to the Court's authority under sections 105, 1123(b), 1125, and 1129(a)(1) of the Bankruptcy Code. The Exculpated is similarly narrowly tailored to include only the Debtor. As described below, the Debtor and its representatives have made a significant contribution towards the consummation of the Chapter 11 Case and acted in good faith throughout the process that has culminated in a fully consensual Plan.

58. The Debtor and its officers, directors, and professionals actively negotiated with the Secured Lenders prior to and during the Chapter 11 Case and in connection with the sale transaction provided for in the Sale Order and the Plan. The Exculpated Party played a critical role in negotiating, formulating, soliciting support for, and implementing the Disclosure Statement and the Plan.

59. The Debtor received no objections to the Exculpation from any party-in-interest despite providing ample notice of its terms to all parties in interest, including by disclosing the Exculpation in the Ballots, the Confirmation Hearing Notice, and the Notice of Non-Voting Status.

60. For the foregoing reasons, the Exculpation is fair and appropriate under both applicable law and the facts and circumstances of the Chapter 11 Case and should be approved.

**4. The Plan's Injunction Provision Should Be Approved.**

61. Article IX.B. of the Plan contains an injunction provision that permanently enjoins all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that arose prior to the Effective Date, are subject to exculpation pursuant to this Plan, or otherwise discharged, satisfied, stayed, or terminated pursuant to the terms of this Plan, and parties-in-interest seeking to enforce such Claims, Interests, or Causes of Action, from, among other things, commencing or continuing any action against the Debtor or the Liquidating Debtor and their respective properties and interests in properties, on account of such Claims or Interests (the "**Injunction**"). The Injunction is necessary to ensure that parties do not interfere with the consummation and implementation of the Plan and all the transactions contemplated thereby. The Injunction implements, preserves, and enforces the Plan's release and exculpation provisions, which are integral to the Plan.

62. The Injunction Provision is also necessary to the distribution scheme in the Plan. This is not a case where the Debtor will immediately become a shell corporation after transferring all assets to a liquidating trust. Here, the Debtor will continue to hold the Wind Down Amount as well as any portion of the GUC Pool attributable to disputed claims, for the benefit of creditors, after the Effective Date. Accordingly, in order for assets to be distributed pursuant to the Plan, the assets of the Debtor's Estate must be protected against any attempt by a creditor to obtain more than its entitlement under the Plan. Such prohibited actions would, obviously, disrupt the proposed distribution structure incorporated in the Plan. The Court should, therefore, approve the Injunction

in connection with approving the discharge, release, and exculpation provisions included in the Plan.

**D. The Plan Satisfies Section 1129(a)(2) of the Bankruptcy Code.**

63. As indicated by its legislative history, section 1129(a)(2) of the Bankruptcy Code requires compliance with the disclosure, solicitation, and voting requirements set forth in sections 1125 and 1126 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2). This provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code, as well as Bankruptcy Rules 3017 and 3018, as described above. *See* H.R. Rep. No. 95-595, at 412 (1977) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of Chapter 11, such as section 1125 regarding disclosure.").

**1. Section 1125: Post-Petition Disclosure Statement and Solicitation**

64. Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). As described above, the Solicitation Agent solicited votes on the Plan consistent with the Court-approved Solicitation Procedures. The Debtor did not solicit acceptances of the Plan from any holder of a Claim before entry of the Solicitation Order, thus complying with section 1125(b) of the Bankruptcy Code.

**2. Section 1126: Acceptance of the Plan**

65. Section 1126 of the Bankruptcy Code sets forth the procedures for soliciting votes on a plan and determining acceptance thereof. Pursuant to section 1126, only holders of allowed claims or equity interests in impaired classes of claims or equity interests that will receive or retain

property under a plan on account of such claims or equity interests may vote to accept or reject such plan. *See* 11 U.S.C. §§ 1126(a), (f), and (g). The Debtor solicited acceptances of the Plan only from the Holders of Claims in the Voting Classes, which are the only Classes that are Impaired and entitled to vote. The Debtor did not solicit votes to accept or reject the Plan from the Holders of Claims and Interests in Classes 1 and 5, both of which are Unimpaired and, therefore, deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

66. Sections 1126(c) and (d) of the Bankruptcy Code specify that holders of an impaired class of claims or interests must vote in favor of a plan by at least two-thirds in amount and more than one-half in number of the allowed claims, or interests, of such class to accept the plan. *See* 11 U.S.C. §§ 1126(c), (d). All Holders of Claims in the Voting Classes who voted did so to accept the Plan. Based on the foregoing, the requirements of sections 1125 and 1126 of the Bankruptcy Code have been satisfied, and thus the Debtor has satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

### E. The Plan Has Been Proposed in Good Faith Under Section 1129(a)(3) of the Bankruptcy Code.

67. Section 1129(a)(3) of the Bankruptcy Code requires that "[t]he plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). In assessing good faith, courts in the Fifth Circuit consider whether the plan was proposed with "the legitimate and honest purpose to reorganize and has a reasonable hope of success." *See In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985). A plan must also "achieve a result consistent with the [Bankruptcy] Code." *See In re Block Shim Dev. Company-Irving*, 939 F.2d 289, 292 (5th Cir. 1991) (citation omitted). To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the circumstances surrounding the development

of the plan. *See*, *e.g.*, *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 802 (5th Cir. 1997) (citing *In re Sun Country Dev., Inc.*, 764 F.2d at 408); *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012); *In re Century Glove, Inc.*, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993).

68. Here, the Plan has been proposed in good faith and for the legitimate purpose of winding down and liquidating the Estate and distributing any remaining proceeds in accordance with the Plan. The Debtor engaged in arm's-length negotiations over the Plan with the Secured Lenders. The Plan provides for payment on the Debtor's secured debt, payment of all administrative expense claims and priority claims, and recoveries to unsecured creditors who were otherwise out of the money. The Plan received broad support from the Voting Classes, evidencing the Plan's fairness and the good-faith efforts that drove its formulation. Finally, there are no unresolved objections to confirmation of the Plan and none of the transactions contemplated by the Plan are forbidden by law.

69. Accordingly, the Plan has been proposed in good faith and satisfies section 1129(a)(3).

**F. The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code.**

70. Under section 1129(a)(4) of the Bankruptcy Code, the Court must find that "[a]ny payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case" be approved by the Court or subject to the Court's approval, as reasonable. *See* 11 U.S.C. § 1129(a)(4). Article III.A of the Plan provides that all professionals requesting compensation pursuant to sections 328, 330, 331, 363, 503, or 1103 of the Bankruptcy Code for services rendered or reimbursement of costs, expenses, or other charges incurred before the Effective Date must be approved by the Court

pursuant to final fee applications filed after the Effective Date.[28] Accordingly, the Debtor submits that the Plan satisfies the requirements of section 1129(a)(4).

**G. The Debtor Has Complied with Section 1129(a)(5) of the Bankruptcy Code.**

71. Section 1129(a)(5) of the Bankruptcy Code requires (a) the plan proponent disclose the identity and affiliations of the proposed officers and directors of the debtor post-confirmation, (b) the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy, and, (c) to the extent that there are any insiders that will be retained or employed by the debtor post-confirmation, that there be disclosure of the identity and nature of any compensation of any such insiders. 11 U.S.C. § 1129(a)(5).

72. Courts have held that these provisions are meant to ensure that the post-confirmation governance of a reorganized debtor is in good hands. *See In re Landing Assocs., Ltd.*, 157 B.R. 791, 817 (Bankr. W.D. Tex. 1993) ("[T]o lodge a valid objection under § 1129(a)(5), a creditor must show that a debtor's management is unfit or that the continuance of this management post-confirmation will prejudice the creditors."); *In re Am. Solar King Corp.*, 90 B.R. 808, 815 (Bankr. W.D. Tex. 1988) ("The subsection does not (and cannot) compel the debtor to do the impossible, however. If there is no proposed slate of directors as yet, there is simply nothing further for the debtor to disclose under subsection (a)(5)(A)(i).").

73. The Debtor has satisfied the requirements under section 1129(a)(5) of the Bankruptcy Code through its disclosure that Kevin Dooley will serve as the Wind Down Officer.[29]

---

[28] Plan Art. III.A.4.
[29] Plan Art. I.A. 112; Art. IV. B.

Kevin Dooley (a) has served as the Debtor's Chief Administrative Officer since the Sale Closing Date, reporting directly to the Debtor's board of managers, (b) is familiar with the Debtor, its Estate, and its creditors, and (c) is well- equipped to facilitate the Wind Down of the Debtor's Estate. As part of the Plan Supplement, filed substantially contemporaneously herewith, the Debtor disclosed the nature of the compensation to be provided to the Wind Down Officer. Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

### H. The Plan Does Not Contain Any Rate Changes Subject to Section 1129(a)(6) of the Bankruptcy Code.

74. Section 1129(a)(6) of the Bankruptcy Code provides that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." 11 U.S.C. § 1129(a)(6). The Debtor is not subject to any regulatory approval over rate changes, and the Plan does not provide for any rate changes by the Liquidating Debtor; therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.[30]

### I. The Plan Is in the Best Interests of All Creditors and Equity Security Holders under Section 1129(a)(7) of the Bankruptcy Code.

75. Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors and equity security holders of the Debtor. This "best interests" test, focusing on potential individual dissenting creditors, requires that each holder of a claim or equity interest either accept the plan or receive or retain property under the plan that is not less than the amount such a holder would receive or retain in a chapter 7 liquidation. *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) (noting that "the 'best interests'

[30] Dooley Confirmation Declaration ¶ 34.

test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan”).

76. As described in the liquidation analysis included in the Disclosure Statement, the Plan satisfies the best interests test.[31] As an initial matter, each of the Voting Creditors has accepted the Plan and no party-in-interest has objected to Confirmation. Additionally, each Holder of an Impaired Claim will receive or retain property under the Plan on the Effective Date that is not less than the amount such Holder would receive if the Debtor liquidated under chapter 7 of the Bankruptcy Code. In particular, the liquidation analysis included in the Disclosure Statement demonstrates that the values that could be realized by Holders of Impaired Claims upon disposition of the Debtor’s Assets pursuant to a chapter 7 liquidation would be less than the value of the recoveries available to such Holders under the Plan. *See* Plan Art. XI.B.1. (discussing the (a) section 363 sale process of the Debtor and the resulting sale proceeds that are less than the secured debt, (b) the Secured Lender’s agreement to the settlement of the Watts Claim and provision of the GUC Pool, (c) the limited value of any Remaining Assets, and (d) the increased expenses that would be borne in a chapter 7 liquidation resulting in a reduced recovery for Secured Lenders and no recovery for unsecured creditors). The Debtor submits that the best interests test established pursuant to section 1129(a)(7) of the Bankruptcy Code is satisfied.

### J. The Plan Has Been Accepted by an Impaired Voting Class (Section 1129(a)(8)) of the Bankruptcy Code).

77. Section 1129(a)(8) of the Bankruptcy Code requires that, “[w]ith respect to each class of claims or interests” either “such class has accepted the plan” or “such class is not impaired under the plan.” 11 U.S.C. § 1129(a)(8). Section 1126(c) of the Bankruptcy Code provides that a

[31] Dooley Confirmation Declaration ¶¶ 35-37.

plan is accepted by an impaired class of claims if the accepting class members hold at least two-thirds in amount and more than one-half in number of the voting claims in their respective class. 11 U.S.C. § 1126(c). As set forth above and in the Voting Certification, voting Holders in Class 2 (Secured Lender Claim) (100%), Class 3 (General Unsecured Claims), and Class 4 (Watts Claim) (100%) voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.[32] Additionally, Holders of Claims in Unimpaired Classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Accordingly, section 1129(a)(8) of the Bankruptcy Code is satisfied and there is no need to analyze the Plan pursuant to the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

### K. Payment in Full of All Allowed Priority Claims (Section 1129(a)(9) of the Bankruptcy Code).

78. Section 1129(a)(9) of the Bankruptcy Code requires that holders of allowed claims entitled to priority under sections 503(b) and 507(a) receive payment in cash under the plan, unless the holder of a particular claim agrees to a different treatment with respect to such claim. 11 U.S.C. § 1129(a)(9). The Plan complies with section 1129(a)(9) of the Bankruptcy Code.

79. Articles III.A and III.B of the Plan provide that, except to the extent that the Holder of a particular Allowed Claim has agreed to a different treatment of such Claim, Allowed Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims against the Debtor will be treated in accordance with section 1129(a)(9) of the Bankruptcy Code.

80. Specifically, with respect to Allowed Administrative Claims, including Professional Fee Claims filed according to procedures set forth in Article III.A of the Plan, Holders

[32] Voting Certification Exs. B-D.

shall receive Cash in an amount equal to such Allowed Administrative Claim on the later of (a) the Effective Date, or as soon thereafter as is reasonably practicable, and (b) as soon as practicable after such Allowed Administrative Claim becomes due and payable. The treatment of Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims, therefore, satisfies section 1129(a)(9)(A) of the Bankruptcy Code.

### L. The Plan Satisfies Section 1129(a)(10) of the Bankruptcy Code.

81. Section 1129(a)(10) of the Bankruptcy Code requires at least one class of impaired claims to affirmatively accept a plan "without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10). Section 1129(a)(10) was promulgated to conform to "the original intention of Congress to reverse pre-[Bankruptcy] Code Chapter XII cases, which permitted the use of cramdown powers without the consent of any class of creditors." 7 COLLIER ON BANKRUPTCY ¶ 1129.02 (16th ed. 2024).

82. Here, both Class 3 (General Unsecured Claims) and Class 4 (Watts Claim) voted to accept the Plan.[33] The Plan therefore complies with section 1129(a)(10) of the Bankruptcy Code.

### M. The Plan Is Feasible and Satisfies Section 1129(a)(11) of the Bankruptcy Code.

83. Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible prior to confirmation. Specifically, it requires that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, ***unless such liquidation or reorganization is proposed in the plan***." 11 U.S.C. § 1129(a)(11) (emphasis added).

[33] Voting Certification Ex. A.

84. In the context of a liquidating plan, some courts have interpreted section 1129(a)(11) of the Bankruptcy Code to mean that a plan that provides for liquidation automatically satisfies section 1129(a)(11). *See e.g.*, *In re Cypresswood Land Partners, I*, 409 B.R. 396, 432 (Bankr. S.D. Tex. 2009) ("Some courts interpret [1129(a)(11)] to mean that a plan that provides for liquidation automatically satisfies section 1129(a)(11)"); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 311 (Bankr. N.D. Tex. 2007) ("Several courts take a narrow approach and interpret the plain language of § 1129(a)(11) to say that feasibility need not be established when liquidation is proposed in the plan."); *In re 47th and Belleview Partners*, 95 B.R. 117, 120 (Bankr. W.D. Mo. 1988) (stating that "feasibility, under the literal wording of § 1129(a)(11) of the Bankruptcy Code, is unnecessary to be shown when 'liquidation . . . . is proposed in the plan.'"); *In re Pero Bros. Farms, Inc.*, 90 B.R. 562, 563 (Bankr. S.D. Fla. 1988) ("The feasibility test has no application to a liquidation plan.").

85. Other courts hold that a liquidation plan does not automatically satisfy section 1129(a)(11). *See In re Holmes*, 301 B.R. 911, 914 (Bankr. M.D. Ga. 2003) (indicating that "a planned liquidation does not create an exception to the feasibility requirement"). However, courts recognize that the feasibility analysis differs when assessing a liquidating plan and inquire whether the liquidation proposed in the plan is itself feasible. *See In re Two Sts., Inc.*, 597 B.R. 309, 317 (Bankr. S.D. Miss. 2019) (stating that "[t]he focus of the analysis is whether the liquidation itself, as proposed in the plan, is feasible").

86. To the extent applicable to liquidating plans, the feasibility test generally requires the Court to determine whether the Plan can be implemented and has a reasonable likelihood of success. A debtor does not have to guarantee the success of a plan to demonstrate its feasibility under section 1129(a)(11) of the Bankruptcy Code. *See In re Save Our Springs (S.O.S.) All.,*

*Inc.*, 632 F.3d 168, 172 (5th Cir. 2011) ("To obtain confirmation of its reorganization plan, a debtor must show by a preponderance of the evidence that its plan is feasible, which means that it is 'not likely to be followed by . . . liquidation, or the need for further financial reorganization.'") (citation omitted); *Briscoe*, 994 F.2d at 1166 ("Only a reasonable assurance of commercial viability is required.") (citation omitted); *In re Landing Assocs.*, 157 B.R. at 820 (stating that section 1129(a)(11) only requires a finding that a plan offers "a reasonable probability of success"); *In re Lakeside Glob. II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989) (finding that feasibility "contemplates whether the debtor can realistically carry out its plan and whether the plan offers a reasonable prospect of success and is workable") (citations omitted); *In re Cajun Elec. Power Co-op., Inc.*, 230 B.R. 715, 745 (Bankr. M.D. La. 1999) ("The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds . . . ."). Instead, courts will find that a plan is feasible if a debtor demonstrates a reasonable assurance that consummation of the plan will not likely be followed by a further need for financial reorganization. "'The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.'" *Pizza of Haw., Inc. v. Shakey's, Inc.* (*In re Pizza of Haw., Inc.*), 761 F.2d 1374, 1382 (9th Cir. 1985) (citations omitted).

87. The determination of whether a liquidation plan is feasible requires a showing that the plan has a "reasonable assurance of commercial viability." *See In re T-H New Orleans Ltd. P'ship*., 116 F.3d 790 (5th Cir. 1997) ("In determining whether a debtor's Chapter 11 plan of reorganization is feasible. . . .'the [bankruptcy] court need not require a guarantee of success. . . . [o]nly a reasonable assurance of commercial viability is required.'") (quoting *In re Briscoe Enter., Ltd., II*, 994 F.2d at 1165-66); *In re Northbelt, LLC*, 630 B.R. 228, 279 (Bankr. S.D. Tex. 2020)

("The court need not require a guarantee of success. Essentially, Debtor must be able to show that it can accomplish what it proposes to do, in the time period allowed, and on the terms set forth in the plan.").

88. As an initial matter, the Plan is a liquidating chapter 11 plan and, thus, satisfies the plain text of section 1129(a)(11) under the "automatic" feasibility approach.

89. Additionally, the Plan is feasible because it provides for the funding of a Wind Down Amount before distributions are made to the Debtor's Secured Lenders, which will allow the Debtor to meet its post-Effective Date obligations to pay for the ongoing costs of administering and consummating the Plan and ultimately closing the Chapter 11 Case.

90. The Debtor filed a Wind Down Budget as Exhibit C to the Plan Supplement. The Debtor worked with its Secured Lenders to prepare the Wind Down Budget for the Plan.[34] As detailed in the Dooley Confirmation Declaration, the Debtor expects to have sufficient funds to administer and consummate the Plan, including funding all payments required under the Plan, and proceed with an orderly wind down of the Chapter 11 Case.[35] As of the date hereof, the Debtor estimates that the value of its remaining cash sources is approximately $12,487,360 (inclusive of true-up amounts owed to Safariland pursuant of the Sale Order).[36]

91. The Debtor projects wind down expenses of approximately $1,303,000, including remaining operating expenses, professional fees, other non-operating expenses (including true-

[34] Dooley Confirmation Declaration ¶42.

[35] *Id*. ¶¶40-44.

[36] *Id*. ¶41.

ups, taxes, insurance, U.S. Trustee fees, and Wind Down Officer-related costs), and a wind down contingency reserve.[37]

| Estimated Use of Funds | Amount |
|---|---|
| Operating Expenses | $50,000 |
| Professional Fee Reserve Amount | $553,000 |
| Non-Operating Expenses | $625,000 |
| Wind Down Reserves | $50,000 |
| Litigation Reserves | $25,000 |

92. The Debtor estimates that the total amount that needs to be reserved for outstanding claims that need to be paid on the Effective Date will be approximately $11,184,360, consisting of the following:[38]

| Claims | Estimated Payments |
|---|---|
| Other Priority Claims | $12,231 |
| General Unsecured Claims | $100,000 |
| Secured Claims | $11,072,129 |

93. As with any projections, there is a possibility that there may be some variance in the Wind Down Budget and expenses. To account for the potential variance, the budget includes a contingency reserve amount of $50,000.00.[39]

[37] *Id*. ¶43.

[38] *Id*. ¶42.

[39] *Id*. ¶42.

94. Based upon the reasons described herein, the Debtor believes it will have sufficient resources to make all payments required pursuant to the Plan. Accordingly, the Plan satisfies the feasibility requirements of section 1129(a)(11) and should be confirmed.

**N. The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code.**

95. Section 1129(a)(12) of the Bankruptcy Code requires that all fees currently payable under 28 U.S.C. § 1930 "have been paid or the plan provides for the payment of all such fees on the effective date." 11 U.S.C. § 1129(a)(12). Section 507 of the Bankruptcy Code provides that any such fees are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(2). Article X.A of the Plan provides that such fees payable to the U.S. Trustee after the Effective Date shall be paid by the Liquidating Debtor until the closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code. The Liquidating Debtor shall file and serve on the U.S. Trustee quarterly reports of the disbursements made, within 15 days after the conclusion of each such period, until the Chapter 11 Case is converted, dismissed, or closed by entry of a final decree. Accordingly, the Plan complies with section 1129(a)(12) of the Bankruptcy Code.

**O. Sections 1129(a)(13)-(16) of the Bankruptcy Code Are Not Applicable.**

96. Section 1129(a)(13) of the Bankruptcy Code requires that:

> The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

11 U.S.C. § 1129(a)(13). The Debtor does not have any obligations relating to retiree benefits, and therefore, section 1129(a)(13) of the Bankruptcy Code is not applicable to the Debtor. In addition, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code are not

applicable here, because the Debtor has no domestic support obligations, is not an individual, and is a moneyed, business, or commercial corporation.[40]

**P. Section 1129(b) of the Bankruptcy Code is Inapplicable Because All Holders of Claims are Either Unimpaired or Have Voted to Accept the Plan.**

97. Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied. All Holders of Claims under the Plan are either Unimpaired or have accepted the Plan, thus satisfying the requirements of section 1129(a)(8) of the Bankruptcy Code and rendering section 1129(b) of the Bankruptcy Code inapplicable.

**Q. Section 1129(c): The Plan Is the Only Plan Currently on File**

98. The Plan is the only plan filed in the Chapter 11 Case and, accordingly, section 1129(c) of the Bankruptcy Code does not apply.

**R. The Plan's Principal Purpose Is Not Avoidance of Taxes (11 U.S.C. § 1129(d)).**

99. Section 1129(d) of the Bankruptcy Code states that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933." 11 U.S.C. § 1129(d). The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.[41]

---

[40] Dooley Confirmation Declaration ¶ 47.

[41] Dooley Confirmation Declaration ¶30.

### S. Section 1129(e): Does Not Apply to the Plan

100. The provisions of section 1129(e) of the Bankruptcy Code apply only to a "small business case." The Chapter 11 Case is not a "small business case" and, accordingly, section 1129(e) of the Bankruptcy Code has no application to the Plan.

## IV. Cause Exists to Waive the Stay of the Confirmation Order.

101. Bankruptcy Rule 3020(e) provides that a confirmation order "is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 3020(e). The Debtor respectfully submits that cause exists to waive and eliminate the stay of the Confirmation Order so that such order may be effective immediately upon its entry. A stay of the Confirmation Order will delay the Debtor's implementation of the Plan, extending the time that the Debtor must remain in chapter 11. Further, the Plan has the support of the Voting Classes and is the product of extensive, good-faith negotiations among the Debtor and its key stakeholders. Extending the length of time the Debtor remains in chapter 11 would only serve to increase the administrative and professional costs incurred by the Debtor's Estate. For all of these reasons, the Debtor requests a waiver of the stay imposed by the Bankruptcy Rules so that the Court's order confirming the Plan may be effective immediately upon its entry.

## CONCLUSION

102. For all of the foregoing reasons, the Debtor submits that (a) the Disclosure Statement, the Solicitation, and the Solicitation Procedures satisfy the requirements of sections 1125 and 1126(b) of the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Solicitation Order, and any applicable rules, laws and regulations and are appropriate and satisfactory and should be approved in all respects, and (b) the Plan complies with

all of the requirements of section 1129 of the Bankruptcy Code and should be confirmed in all respects.

Dallas, Texas
September 3, 2026

Respectfully Submitted,

*/s/ Candice M. Carson*
Candice M. Carson (Texas Bar No. 24074006)
J. Blake Glatstein (State Bar No. 24123295)
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
2200 Ross Avenue, Suite 5000
Dallas, Texas 75201
Tel: (469) 654-1340
Email: candice.carson@vkhh.com
blake.glatstein@vkhh.com

Jeff P. Prostok (Texas Bar No. 16352500)
Mary Taylor Stanberry (State Bar No. 24143781)
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Email: jeff.prostok@vkhh.com
mary.stanberry@vkhh.com

*Counsel for Debtor and Debtor in Possession*