**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **TEDDER INDUSTRIES, LLC,**[1] | **Case No. 25-90805 (CML)** |
| **Debtor.** | **Ref. Docket No. 194** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING THE ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT AND (II) CONFIRMING THE COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION OF TEDDER INDUSTRIES, LLC PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Upon the filing by Tedder Industries, LLC, as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Debtor**"), of the *Combined Disclosure Statement and Plan of Liquidation of Tedder Industries, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 194] (as may be amended, supplemented, or otherwise modified from time to time, the "**Plan and Disclosure Statement**," the "**Plan**," or the "**Disclosure Statement**," as applicable),[2] which is attached hereto as **Exhibit A**; and the Court having entered on July 29, 2026 the *Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Approving the Forms of Ballots and Notices in Connection Therewith, (V) Scheduling Certain Dates With Respect Thereto, and (VI) Granting Related Relief* [Dkt. No. 197] (the "**Solicitation Order**"), which, among other things, (i) conditionally approved the Disclosure Statement,

[1] The last four digits of the Debtor's federal tax identification number are 7652. The location of the Debtor's service address is: 4411 W Riverbend Ave, Post Falls, ID 83854-8150.

[2] Capitalized terms used herein but undefined have the meaning provided for in the Plan, Solicitation Order, or Confirmation Order, as applicable.

(ii) approved the solicitation procedures related to the Disclosure Statement (the "**Solicitation Procedures**"), and (iii) scheduled the hearing to consider confirmation of the Plan and final approval of the Disclosure Statement for September 8, 2026, at 1:00 p.m. (prevailing Central Time) (the "**Combined Hearing**" or "**Confirmation Hearing**"); and the Debtor having filed the *Notice of Filing of Plan Supplement to the Combined Disclosure Statement and Plan of Liquidation of Tedder Industries, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 204] on August 14, 2026, as amended by the Debtor's *Notice of Filing of Amended Plan Supplement to the Combined Disclosure Statement and Plan of Liquidation of Tedder Industries, LLC Pursuant to Chapter 11 of the Bankruptcy Code* (the document contained therein, as may be amended, modified, restated, or supplemented, the "**Plan Supplement**"), which included the Schedule of Assumed Executory Contracts and Unexpired Leases; and the Debtor having filed the Certificate of Service regarding the Plan Supplement [Dkt. No. 207], the Certificate of Service regarding the Solicitation Package[3] [Dkt. No. 201] and the Certificate of Service regarding the notice of Confirmation Hearing [Dkt. No. 200]; and the following having been filed: (a) the *Declaration of Kevin Dooley in Support of Confirmation of the Combined Disclosure Statement and Plan of Liquidation of Tedder Industries, LLC* [Dkt. No. 209] (the "**Dooley Declaration**"); (b) the Debtor's *Tabulation and Certification of Ballots in Connection with Confirmation of the Debtor's Combined Disclosure Statement and Plan of Liquidation of Tedder Industries, LLC*

---

[3] The "**Solicitation Package**" included (i) the Plan and Disclosure Statement, (ii) the Solicitation Order, (iii) the Solicitation Procedures, the *Notice of (A) Hearing to Consider Final Approval of Proposed Disclosure Statement and Confirmation of the Debtor's Chapter 11 Plan, (B) Deadline for Submitting Ballots to Accept or Reject the Plan, (C) Deadline for Filing and Service of Objections to the Plan, and (D) Related Matters* for Impaired Classes; (iv) the Solicitation Procedures, the *Notice of (A) Hearing to Consider Final Approval of Proposed Disclosure Statement and Confirmation of the Debtor's Chapter 11 Plan, (B) Deadline for Submitting Ballots to Accept or Reject the Plan, (C) Deadline for Filing and Service of Objections to the Plan, and (D) Related Matters* for Unimpaired Classes; (v) Approved form of Ballot for Class 2 (as defined in the Plan); Approved form of Ballot for Class 3 (as defined in the Plan); and (vi) the Approved form of Ballot for Class 4.

*Pursuant* to *Chapter 11 of the Bankruptcy Code* [Dkt. No. 206] (the "**Voting Certification**"); and (c) the Debtor's *Memorandum of Law in Support of Confirmation of the Plan and Final Approval of the Disclosure Statement* [Dkt. No. 208] (the "**Confirmation Brief**" and, collectively with the Dooley Declaration and the Voting Certification, the "**Confirmation Documents**"); and this Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to final approval of the Disclosure Statement and confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan; and this Court having held the Confirmation Hearing; and no objections to confirmation of the Plan and/or adequacy of the Disclosure Statement having been filed; and upon the Confirmation Documents and the evidence adduced at, and the record of, the Confirmation Hearing; and upon the record of this Chapter 11 Case; and after due deliberation:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A. Findings and Conclusions. The determinations, findings, judgments, decrees, and orders set forth and incorporated in (i) this order (this "**Confirmation Order**"), and (ii) the record of the Combined Hearing constitute this Court's findings of fact and conclusions of law pursuant to rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

B. Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)). The Court has jurisdiction over the Chapter 11 Case (defined below) pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. § 1408. The Court has jurisdiction to determine whether the

Plan and Disclosure Statement comply with the applicable provisions of the Bankruptcy Code and should be confirmed and approved. Final approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.

C. Chapter 11 Petition. On December 8, 2025 (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**"). The Debtor is authorized to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

D. Judicial Notice. The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and orders entered thereon. The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of the Chapter 11 Case, including, without limitation, the Combined Hearing.

E. Eligibility for Relief. The Debtor is a Texas limited liability company with its principal place of business in Idaho. The Debtor is eligible to be a debtor under section 109 of the Bankruptcy Code and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

F. Solicitation and Notice. On July 29, 2026, the Court entered the Solicitation Order, which, among other things, established August 27, 2026, at 4:00 p.m. (prevailing Central Time) as the deadline for voting to accept or reject the Plan (the "**Voting Deadline**") and the deadline for objecting to confirmation of the Plan and final approval of the Disclosure Statement (the "**Objection Deadline**"). The solicitation of votes on the Plan complied with the Solicitation

Procedures in the Solicitation Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. As evidenced by the *Certificate of Service* regarding Plan Solicitation Package [Dkt. No. 201] and the *Certificate of Service* regarding Notice of Confirmation Hearing [Dkt. No. 200], all parties required to be given notice of the Combined Hearing, including the deadlines for voting and objecting to confirmation of the Plan and final approval of the Disclosure Statement, were provided due, proper, timely, and adequate notice and had an opportunity to appear and be heard. No other or further notice is required.

G. Adequate Information. The Disclosure Statement provides Holders of Claims (as defined in the Plan) entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125 of the Bankruptcy Code. The Disclosure Statement also provides Holders of Claims and other entities with sufficient notice of the injunction, exculpation, and release provisions contained in Article IX of the Plan, in satisfaction of Bankruptcy Rule 3016(c).

H. Voting. The Debtor filed the Voting Certification [Dkt. No. 206] with the Court, certifying the methods and results of the Ballots tabulated for Class 2 (Secured Lender Claim), Class 3 (General Unsecured Claims), and Class 4 (Watts Claim) (together, the "**Voting Classes**"). The procedures used to tabulate Ballots were fair and conducted in accordance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules for the Southern District of Texas (the "**Local Rules**"), and all other applicable rules, laws, and regulations. As set forth in the Plan and the Disclosure Statement, only Holders of Claims in the Voting Classes were eligible to vote on the Plan. Holders of Class 2 Claims are insiders of the Debtor, and their votes

may not be counted for purposes of determining whether an Impaired Class has accepted the Plan under section 1129(a)(10). Classes 2, 3, and 4 voted to accept the Plan.

I. Plan Supplement Documents. The Plan Supplement, filed on August 14, 2026, [Dkt. No. 204] and served on August 31, 2026 [Dkt. No. 207], as amended on September 3, 2026 (including any subsequent modification, supplement, or amendment), complies with and is consistent with the terms of the Plan and the Bankruptcy Code, and the Debtor provided good and proper notice of its filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Order, and all other applicable laws, rules, and regulations. The Plan Supplement is integral to, part of, and incorporated by reference into the Plan. The Plan Supplement included the Schedule of Assumed Executory Contracts and Unexpired Leases. All Holders of Claims who voted to accept the Plan and who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified and supplemented by the Plan Supplement. The filing and notice of the Plan Supplement were appropriate and satisfactory based upon the circumstances of the Chapter 11 Case. Subject to the terms of the Plan and compliance with the Bankruptcy Code and the Bankruptcy Rules, the Debtor reserves the right to alter, amend, update, or modify the Plan Supplement before the Effective Date; provided that no such alteration, amendment, update, or modification shall be inconsistent with this Confirmation Order or the Plan. No other or further notice with respect to the Plan Supplement is necessary or required.

J. Objections. To the extent that any informal objections, reservations of rights, statements, or joinders with respect to final approval of the Disclosure Statement and Confirmation of the Plan have not been adjourned, resolved, withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved herein, they are hereby overruled on the merits based on the record before the Court.

K. Burden of Proof. The Debtor, as proponent of the Plan, has met its burden of proving the applicable elements of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard. Each witness who testified or submitted a declaration on behalf of the Debtor or any other party in support of the Plan and Confirmation in connection with the Combined Hearing was credible, reliable, and qualified to testify as to the topics addressed in that witness's testimony.

L. Bankruptcy Rule 3016. The Plan is dated and identifies its proponent, namely the Debtor, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement and the Plan on the docket of the Chapter 11 Case satisfies Bankruptcy Rule 3016(b).

M. Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The evidentiary record at the Combined Hearing, the declarations filed in connection therewith, the contents of the Plan and the Disclosure Statement, the Confirmation Brief, and the Court's judicial notice of the complete record of the Chapter 11 Case support the findings of fact and conclusions of law set forth herein.

N. Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). Article III of the Plan designates five separate Classes of Claims and Interests, based on differences in the legal nature or priority of such Claims and Interests. Administrative Expense Claims, DIP Claims, Priority Tax Claims, and Professional Fee Claims are addressed in Article III of the Plan and, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated as Classes. The five Classes are Class 1 (Other Priority Claims), Class 2 (Secured Lender Claim), Class 3 (General Unsecured Claims), Class 4 (Watts Claim), and Class 5 (Existing Interests). As required by section 1122(a) of the Bankruptcy Code, each Class contains only Claims or Interests that are substantially similar

to the other Claims or Interests within that Class. Valid business, factual, and legal reasons exist for separately classifying the Claims and Interests under the Plan. The classifications were not implemented for improper purposes, and the Classes do not unfairly discriminate between or among Holders of Claims or Interests. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

O. Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)). Article III of the Plan specifies that Class 1 (Other Priority Claims) and Class 5 (Existing Interests) are Unimpaired. Article III also specifies the treatment of each Impaired Class, namely Class 2 (Secured Lender Claim), Class 3 (General Unsecured Claims), and Class 4 (Watts Claim). Therefore, the Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.

P. No Discrimination (11 U.S.C. § 1123(a)(4)). Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to less favorable treatment with respect to that Claim or Interest. The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

Q. Implementation of the Plan (11 U.S.C. § 1123(a)(5)). Article IV of the Plan and the other provisions of the Plan and Plan Supplement provide adequate and proper means for implementing the liquidation and wind down contemplated by the Plan. These provisions include, without limitation: (i) vesting the Remaining Assets and Estate Causes of Action in the Liquidating Debtor; (ii) appointing Kevin Dooley as the Wind Down Officer; (iii) conducting the Wind Down; (iv) cancelling existing securities agreements, except that the Prepetition Loan Agreement remains in full force and effect; (v) continuing the Debtor's corporate existence as the Liquidating Debtor; (vi) releasing Liens; (vii) exempting Plan transfers from any applicable transfer taxes and recording fees; (viii) funding and distributing the GUC Pool to Holders of Allowed General

Unsecured Claims; and (ix) transferring the Watts Assets to Randy Watts in full and final satisfaction of the Allowed Watts Claim pursuant to the Watts Stipulation [Dkt. No. 179]. Article V (Distributions), Article VI (Procedures for Disputed Claims), Article VII (Treatment of Executory Contracts and Unexpired Leases), and Article VIII (Conditions Precedent to Consummation of the Plan), among other provisions, further set forth the means for implementation. The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

R. Directors and Officers; Wind Down Officer (11 U.S.C. § 1123(a)(7)). On the Effective Date, the existing managers of the Debtor shall resign and be relieved of their duties, and Kevin Dooley shall become the Wind Down Officer and the sole officer, member, and manager of the Liquidating Debtor. The Wind Down Officer's retention and authority are provided for in Article IV of the Plan. The terms for Kevin Dooley's compensation are included in the Plan Supplement. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

S. Discretionary Contents of the Plan (11 U.S.C. § 1123(b)). The Plan contains provisions that may be construed as discretionary and are not required for confirmation under the Bankruptcy Code, including provisions concerning the Wind Down, the appointment and authority of the Wind Down Officer, the GUC Pool, the transfer of the Watts Assets, the assumption and rejection of Executory Contracts and Unexpired Leases, settlements and compromises, distributions, releases, exculpation, injunctions, and retention of jurisdiction. As set forth below, those provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with applicable provisions of the Bankruptcy Code. The Plan therefore satisfies the requirements of section 1123(b) of the Bankruptcy Code.

T. Impairment/Unimpairment of Any Class of Claims or Interest (11 U.S.C. § 1123(b)(1)). The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan impairs or leaves unimpaired each Class of Claims and Interests as specified therein: Classes 1 and 5 are Unimpaired, and Classes 2, 3, and 4 are Impaired.

U. Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). Consistent with section 1123(b)(2) of the Bankruptcy Code, Article VII of the Plan provides for the rejection of each of the Debtor's Executory Contracts and Unexpired Leases unless such Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtor pursuant to the Sale Order or another Final Order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its terms or by agreement of the parties; (iii) is the subject of a motion to reject filed by the Debtor on or before the Confirmation Date; or (iv) is specifically designated by the Debtor as a contract or lease to be assumed on the Schedule of Assumed Executory Contracts and Unexpired Leases. The Plan and this Confirmation Order approve the applicable assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

V. The Debtor's Curing of Defaults for Assumed Contracts (11 U.S.C. § 1123(d)). The Debtor exercised reasonable business judgment in determining to assume each Executory Contract and Unexpired Lease Each assumption in accordance with Article VII of the Planthis Confirmation Order, or another order of the Bankruptcy Court is legal, valid, and binding upon the Debtor and the applicable non-Debtor counterparties to the same extent as if authorized by a separate order under section 365 of the Bankruptcy Code. Any outstanding dispute regarding assumption, adequate assurance, or a Cure Amount shall be resolved in accordance with the Plan, the Solicitation Order, and applicable law.

W. The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor has complied with the applicable provisions of the Bankruptcy Code. Specifically: (i) the Debtor is a proper debtor under section 109 of the Bankruptcy Code; (ii) the Debtor has complied with all applicable provisions of the Bankruptcy Code, including section 1125, except as otherwise provided or permitted by order of the Court; and (iii) the Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the Solicitation Materials and tabulating the votes with respect to the Plan. In compliance with the Solicitation Order, the Debtor caused the Solicitation Materials, including the Plan and Disclosure Statement, the Confirmation Hearing Notice, the Solicitation Order, and the applicable form of Ballot, to be transmitted to known Holders of Claims in the Voting Classes, namely Classes 2, 3, and 4. As evidenced by the *Certificate of Service* regarding Plan Solicitation Package [Dkt. No. 201] and the *Certificate of Service* regarding Notice of Confirmation Hearing [Dkt. No. 200], the required notices were served in compliance with the Solicitation Order. The Confirmation Hearing Notice provided due and proper notice of the Combined Hearing and all relevant dates, deadlines, procedures, and information relating to the Plan, including the Voting Deadline, the Objection Deadline, and the Plan's release, exculpation, and injunction provisions. The Debtor also provided the Court-approved notice of nonvoting status to Holders of Claims and Interests in Classes 1 and 5, consistent with the Solicitation Order. All Persons and Entities entitled to receive notice have received proper, timely, and adequate notice and have had an opportunity to appear and be heard. The Debtor is therefore in compliance with section 1128 of the Bankruptcy Code and Bankruptcy Rules 2002(b) and 3017(d)-(f). No other or further notice is required.

X. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Plan has been proposed by the Debtor in good faith and not by any means forbidden by applicable law. The Plan serves

the legitimate purpose of maximizing value for the Debtor's creditors through the already-completed sale of substantially all of the Debtor's assets to Safariland, LLC and an orderly Wind Down of the Debtor's Remaining Assets. The Plan provides for distributions to Holders of Allowed Claims in accordance with the priorities established by the Bankruptcy Code and for compromises with the Secured Lenders that make the GUC Pool and the Watts Assets available to junior constituents. The Debtor, the Released Parties, and the Exculpated Party have acted diligently and in good faith in connection with the filing and prosecution of the Chapter 11 Case, as demonstrated by the Plan, the Disclosure Statement, the Solicitation Materials, the Confirmation Documents, the record of the Combined Hearing, and the other proceedings in the Chapter 11 Case. In so finding, the Court has considered the totality of the circumstances. The Plan's indemnification, exculpation, release, and injunction provisions are warranted, necessary, and appropriate and are supported by sufficient consent and consideration under the circumstances of the Chapter 11 Case. The Debtor, the Released Parties, and the Exculpated Party will be acting in good faith if they proceed to consummate the Plan and the agreements, settlements, distributions, transfers, and other actions contemplated therein and in this Confirmation Order.

Y. Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). No payment for services or costs and expenses in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been or will be made by the Debtor other than payments authorized by an order of the Court, including the Confirmation of the Plan by this Confirmation Order. Pursuant to Article III of the Plan, final applications for allowance of Professional Fee Claims for services rendered and expenses incurred before the Effective Date must be filed no later than forty-five (45) days after the Effective Date. Those applications will be subject to review and approval by the Court.

Z. Proper Disclosure of Officers (11 U.S.C. § 1129(a)(5)). Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtor has disclosed the identity and material terms of engagement of Kevin Dooley as the Wind Down Officer. On the Effective Date, the existing managers of the Debtor will be deemed to have resigned, and Kevin Dooley will serve as the sole officer, member, and manager of the Liquidating Debtor in accordance with the Plan and the applicable organizational documents. The terms for Kevin Dooley's compensation are included in the Plan Supplement. The Plan therefore satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

AA. No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not contain any rate changes subject to the jurisdiction of a governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

BB. "Best Interest Test" 11 U.S.C. § 1129(a)(7). Each Holder of an Impaired Claim has either accepted the Plan or will receive under the Plan, on account of such Claim, property of a value as of the Effective Date that is not less than the amount that such Holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. The liquidation analysis contained within the Plan and Disclosure Statement, together with the other evidence presented in support of Confirmation, is reasonable, persuasive, and credible, uses reasonable and appropriate methodologies and assumptions, has not been controverted by other evidence, and establishes compliance with section 1129(a)(7). Substantially all of the Debtor's assets were sold to Safariland, LLC for approximately $10.3 million, and the proceeds did not cover the $25.05 million Secured Lender Claim. The GUC Pool of $100,000.00 and the Watts Assets are provided to junior constituents as part of a compromise with the Secured Lenders. The Court therefore finds

that each Holder of an Impaired Claim will receive or retain under the Plan property of a value that is not less than the value such Holder would receive in a chapter 7 liquidation, and the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

CC. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Section 1129(a)(8) of the Bankruptcy Code requires that each Class of Claims or Interests accept the Plan or be Unimpaired. Class 1 (Other Priority Claims) and Class 5 (Existing Interests) are Unimpaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 2 (Secured Lender Claim), 3 (General Unsecured Claims), and 4 (Watts Claim) are Impaired and entitled to vote on the Plan. Classes 2, 3, and 4 voted to accept the Plan. Class 5 is Unimpaired and presumed to accept the Plan, and no distribution is made on account of Existing Interests. The Plan therefore satisfies section 1129(a)(8) of the Bankruptcy Code.

DD. Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims, DIP Claims, Priority Tax Claims, Professional Fee Claims, and Other Priority Claims set forth in Article III. of the Plan is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code. The Plan therefore satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

EE. Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)). Classes 2, 3, and 4 are Impaired Classes of Claims entitled to vote under the Plan. Holders of Class 2 Claims are insiders of the Debtor, so their votes may not be counted for purposes of section 1129(a)(10). Both Class 3 and Class 4 accepted the Plan without including any acceptance by an insider. Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

FF. Feasibility (11 U.S.C. § 1129(a)(11)). The Plan provides for the liquidation and Wind Down of the Debtor after the Effective Date. Substantially all of the Debtor's assets have already been sold to Safariland, LLC, and the Liquidating Debtor has sufficient Remaining Assets, funded by the Wind Down Amount, to complete the Wind Down, reconcile and administer Claims, make the distributions required by the Plan, and close the Chapter 11 Case. Confirmation therefore is not likely to be followed by further liquidation or financial reorganization other than as expressly contemplated by the Plan, and the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

GG. Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)). The Plan provides for payment by the Liquidating Debtor of all fees payable pursuant to 28 U.S.C. § 1930(a) on and after the Effective Date until entry of a final decree in the Chapter 11 Case or until the Chapter 11 Case is converted or dismissed. The Plan therefore satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

HH. Non-applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16)). The Debtor does not owe retiree benefits or domestic support obligations, is not an individual, and is not a nonprofit corporation. Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Case.

II. No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). No Class of Claims has voted to reject the Plan or is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, section 1129(b) of the Bankruptcy Code is inapplicable in this Chapter 11 Case

JJ. Only One Plan (11 U.S.C. § 1129(c)). There is only one Plan being filed. The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

KK. Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e. No Governmental Unit has requested that the Court refuse to confirm the Plan on similar grounds. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

LL. Good Faith Solicitation (11 U.S.C. § 1125(e)). The Debtor's good faith is evident from the facts and record of the Chapter 11 Case, the Disclosure Statement, the Plan, the Solicitation Materials, the Confirmation Documents, the Combined Hearing, and the other proceedings held before this Court. The Debtor proposed the Plan with the legitimate and honest purpose of maximizing the value of the Debtor's Estate for the benefit of its stakeholders through the completed sale transaction and an orderly Wind Down. Accordingly, the Debtor has been, is, and will continue to act in good faith if it proceeds to consummate the Plan and the agreements, settlements, distributions, transfers, and other actions contemplated thereby and to take the actions authorized by this Confirmation Order. The Plan was proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code, and the Debtor has acted in good faith within the meaning of sections 1125(e) and 1126(e) of the Bankruptcy Code.

MM. Implementation. The means for implementing the Plan, as set forth in Article IV and the other provisions of the Plan (collectively, the "**Implementation Activities**"), have been designed and proposed in good faith. The Implementation Activities include the Wind Down, the appointment and authorization of the Wind Down Officer, the funding and distribution of the GUC Pool, the transfer of the Watts Assets, and the administration and distribution of the Remaining Assets. The Implementation Activities are adequate and will promote the maximization of recoveries under the Plan in a fair and equitable manner consistent with the priorities established

by the Bankruptcy Code. The Implementation Activities are not intended to hinder, delay, or defraud any entity to which the Debtor is indebted on the Effective Date.

NN. Exculpation. The exculpation provision contained in Article IX.C of the Plan is appropriately tailored in scope given the circumstances of the Chapter 11 Case and is consistent with applicable law, including both of the Fifth Circuit's *Highland* opinions.[4] The Debtor is the sole Exculpated Party. The exculpation is supported by the record, was proposed in good faith, and protects the Debtor for acts or omissions occurring between the Petition Date and the Effective Date in connection with the Chapter 11 Case, the Plan, the Disclosure Statement, the Plan Supplement, and the transactions contemplated thereby, subject to the Plan's carveouts for fraud, willful misconduct, gross negligence, and professional liability under Texas Disciplinary Rules of Professional Conduct Rule 1.08(g). The record supports the exculpation as appropriately tailored to protect the Debtor from unnecessary litigation arising from its participation in the Chapter 11 Case and the formulation and implementation of the Plan.

OO. Injunction. The injunction provision provided in Article IX.B of the Plan is necessary to implement, preserve, and enforce the Plan, including the releases, distributions, and Wind Down.

PP. Debtor's Releases. The release of Claims and Causes of Action by the Debtor and its Estate described in Article IX.D.1 of the Plan (the "**Debtor's Releases**") is an essential and critical provision of the Plan and an integral part of the compromises embodied in the Plan. The Debtor's Releases, which incorporate the related provisions and definitions contained in the Plan, are: (i) within the jurisdiction of the Court pursuant to 28 U.S.C. § 1334; (ii) given in exchange for

---

[4] *NexPoint Advisors, L.P., et al. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419, 437–38 (5th Cir. 2022); *Highland Capital Mgmt. Fund Advisors, L.P. v. Highland Capital Mgmt., L.P.*, 132 F.4th 353 (5th Cir. 2025).

good and valuable consideration provided by the Released Parties; (iii) a good-faith settlement and compromise of the released Claims and Causes of Action; (iv) in the best interests of the Debtor, its Estate, and Holders of Claims; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; (vii) appropriately tailored in scope, including carveouts for acts determined by Final Order to constitute actual fraud, willful misconduct, or gross negligence; and (viii) a bar to the Debtor or its Estate asserting any released Claim or Cause of Action. The Debtor's Releases do not release post-Effective Date obligations or Claims or Causes of Action based on conduct determined by Final Order to constitute actual fraud, willful misconduct, or gross negligence.

QQ. Releasing Parties Releases. The releases contained in Article IX.D.2 of the Plan (the "**Releasing Parties Releases**") are appropriate and consensual to the extent provided in the Plan. The Releasing Parties Releases were conspicuously disclosed in the Confirmation Hearing Notice, the Ballots, the notice of nonvoting status, and the Plan. Each Holder of a Claim or Interest was given due and adequate notice of the releases and an opportunity to opt out in accordance with the Plan and the Solicitation Order. The Releasing Parties Releases are essential to Confirmation, are given in exchange for good and valuable consideration, constitute a good-faith settlement and compromise, are in the best interests of the Debtor and its Estate, are fair, equitable, and reasonable, and were given after due notice and opportunity for hearing. The Releasing Parties Releases are appropriately tailored under the facts and circumstances of the Chapter 11 Case and do not apply to any Entity that validly opts out as provided in the Plan.

RR. Satisfaction of Confirmation Requirements. Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

SS. Likelihood of Satisfaction of Conditions Precedent to Effective Date. Each of the conditions precedent to the Effective Date, as set forth in Article VIII of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with the Plan.

**BASED ON THE FOREGOING FINDINGS OF FACT, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1. Findings of Fact and Conclusions of Law. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by this Court on the record at the Combined Hearing in relation to Confirmation of the Plan and/or final approval of the Disclosure Statement are hereby incorporated into this Confirmation Order. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2. Notice of the Combined Hearing, Solicitation, and Tabulation. Notice of the Combined Hearing, the Solicitation Materials, and the tabulation of submitted Ballots complied with the Solicitation Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and were in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

3. Confirmation. The Plan and Disclosure Statement, attached hereto as **Exhibit A**, are **APPROVED** on a final basis, and the Plan is **CONFIRMED** pursuant to sections 1125 and 1129 of the Bankruptcy Code. The terms of the Plan, the Plan Supplement and each document comprising the Plan Supplement, and all documents and agreements executed in connection with the Plan are incorporated by reference into and are an integral part of the Plan, and their terms and implementation are approved and authorized. The Debtor, the Liquidating Debtor, the Wind Down

Officer, and their respective successors are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements and documents created in connection with the Plan.

4. Final Approval of Disclosure Statement. The Disclosure Statement is hereby **APPROVED** on a final basis pursuant to section 1125 of the Bankruptcy Code.

5. Objections. To the extent that any objections have not been withdrawn or resolved prior to entry of this Confirmation Order, all objections are overruled in all respects for the reasons set forth in the record of the Combined Hearing, which record is incorporated herein, and all withdrawn informal comments, if any, are deemed withdrawn with prejudice.

6. Omission of Reference to Particular Plan Provisions. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

7. Implementation. The Debtor, the Liquidating Debtor, and the Wind Down Officer are authorized to take all actions necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, releases, agreements, and other documents created or executed in connection with the Plan. Without further order or authorization of this Court, the Debtor, the Liquidating Debtor, the Wind Down Officer, and their successors are authorized and empowered to make modifications to Plan documents that are consistent with the Plan. Execution versions of the Plan and all related documents, where applicable, shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

8. Classifications. The classification of Claims and Interests for purposes of voting and distributions made under the Plan shall be governed solely by the terms of the Plan and the Solicitation Order.

9. Effective Date. The Effective Date of the Plan shall occur on the date determined by the Debtor when the conditions set forth in Article VIII of the Plan have been satisfied or, if applicable, waived in accordance with the Plan.

10. DIP Claims. On the Effective Date, all DIP Claims, if any, shall be deemed satisfied based on the treatment of the Allowed Secured Lender Claim under the Plan.

11. Appointment of Wind Down Officer. Kevin Dooley is hereby appointed as the Wind Down Officer effective as of the Effective Date. The Wind Down Officer shall serve until the earliest of: (i) entry of an order closing the Chapter 11 Case, unless otherwise provided in that order; (ii) removal for cause by the Bankruptcy Court; or (iii) voluntary resignation after notice filed with the Bankruptcy Court and appointment of a successor in accordance with the Plan. The Wind Down Officer shall be the sole officer, member, and manager of the Liquidating Debtor.

12. Wind Down Officer Authority. The Wind Down Officer is authorized, without further Bankruptcy Court approval unless otherwise required by the Plan or this Confirmation Order, to carry out and implement all provisions of the Plan, including: (i) controlling and effectuating the Claims reconciliation process, including objecting to, subordinating, compromising, or settling Claims; (ii) making distributions to Holders of Allowed Claims; (iii) directing and controlling the Wind Down in the exercise of reasonable business judgment; (iv) preparing, filing, and prosecuting pleadings and other filings; (v) prosecuting, abandoning, compromising, settling, or otherwise disposing of Causes of Action not released under the Plan; (vi) retaining professionals; (vii) maintaining the Debtor's books, records, and accounts; (viii) incurring and paying reasonable

and necessary expenses, including professional fees; (ix) administering the Debtor's tax obligations and representing the Debtor before taxing authorities; (x) preparing and filing required informational returns and reports; (xi) paying statutory fees; (xii) performing all other duties consistent with implementation of the Plan; and (xiii) closing the Chapter 11 Case.

13. Wind Down Officer Indemnification. The Liquidating Debtor and its Estate shall indemnify and hold harmless the Wind Down Officer solely in his capacity as Wind Down Officer for losses incurred in that capacity, except to the extent such losses result from his bad faith, gross negligence, willful misconduct, or criminal conduct.

14. Vesting of Assets in the Liquidating Debtor. Except as otherwise provided in this Confirmation Order, the Plan, or any agreement, instrument, or other document incorporated in or entered into in connection with the Plan, on the Effective Date all Remaining Assets of the Debtor's Estate, including Estate Causes of Action, shall vest in the Liquidating Debtor free and clear of all Claims, interests, charges, Liens, and other encumbrances, subject to the treatment of the Secured Lender Claim under the Plan. On and after the Effective Date, the Liquidating Debtor may use, acquire, sell, lease, or dispose of property and may prosecute, abandon, compromise, or settle Claims, Interests, and Causes of Action without supervision or approval by the Bankruptcy Court and free of restrictions of the Bankruptcy Code or Bankruptcy Rules, except as expressly provided in the Plan or this Confirmation Order.

15. Funding and Distribution of GUC Pool. On the Effective Date, the GUC Pool in the aggregate amount of $100,000.00 shall be funded from the Secured Lenders' plan consideration and distributed by the Disbursing Agent to Holders of Allowed General Unsecured Claims on a Pro Rata basis in accordance with the Plan. The Secured Lenders waive any right to receive a recovery from the GUC Pool.

16. Transfer of Watts Assets. On the Effective Date or as soon as practicable thereafter, the Watts Assets, including the Watts Patents and Watts IP, shall be transferred to Randy Watts in full and final satisfaction of the Allowed Watts Claim, pursuant to the Watts Stipulation [Dkt. No. 179].

17. Objections to Claims. Notwithstanding anything to the contrary in the Plan, the initial Claims Objection Deadline shall be the date that is one hundred eighty (180) days after the Effective Date, subject to extension by the Bankruptcy Court.

18. Settlement of Claims. In consideration of the classification, distributions, releases, and other benefits provided under the Plan, the Plan constitutes a good-faith compromise and settlement of the Claims, Interests, and controversies resolved pursuant to the Plan, including the compromises with the Secured Lenders providing the GUC Pool and the Watts Assets. Entry of this Confirmation Order constitutes approval of those compromises and settlements and a finding that they are in the best interests of the Debtor, its Estate, and Holders of Claims and Interests, and are fair, equitable, and reasonable. The compromises, settlements, and releases described in the Plan are integral to and nonseverable from the other terms of the Plan.

19. Corporate Action. On and after the Effective Date, by virtue of entry of this Confirmation Order, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken before the Effective Date, ratified without any further action by Holders of Claims or Interests, the Debtor, the Liquidating Debtor, or any other Person or Entity. All matters provided for in the Plan involving corporate action required by the Debtor in connection with the Wind Down shall be deemed to have occurred and be in effect without further action by the Debtor's members, managers, creditors, or Estate. The Wind Down Officer is authorized to

execute and deliver agreements, documents, and instruments contemplated by the Plan in the name of and on behalf of the Debtor and the Liquidating Debtor.

20. Release of Liens. Except for Liens held by the Secured Lenders or as otherwise specifically provided in the Plan or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date all mortgages, deeds of trust, Liens, pledges, and other security interests against any property of the Estate shall be fully released, settled, and compromised, and all right, title, and interest of any holder of such mortgage, deed of trust, Lien, pledge, or security interest shall revert to the Liquidating Debtor, without further approval or order of the Bankruptcy Court and without any action or filing by the Debtor, the Liquidating Debtor, or any Holder of a Claim secured thereby.

21. Exemption from Certain Transfer Taxes and Recording Fees. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor, and any making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer relating to the Watts Assets or any other Remaining Assets, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. The appropriate governmental officials shall forego collection of any such tax or assessment and accept such instruments for filing and recordation without payment thereof.

22. Cancellation of Existing Securities and Agreements. Except for the Prepetition Loan Agreement, which shall remain in full force and effect, and except to the extent necessary to

evidence a Holder's right to receive payment under the Plan, all existing security interests, Liens, side letters, fee letters, credit documents, agreements, and other documents evidencing or giving rise to Claims against or Interests in the Debtor shall be automatically released, discharged, terminated, and of no further force or effect as of the Effective Date, and all obligations of the Debtor thereunder or related thereto shall be released, terminated, extinguished, and discharged. The parties to such instruments and agreements shall retain their rights against one another but shall have no rights against the Debtor or Liquidating Debtor arising from or relating to such instruments or their cancellation, except the rights provided under the Plan or this Confirmation Order.

23. Continuation of Corporate Existence. Except as otherwise provided in the Plan, the Debtor shall continue to exist on and after the Effective Date as a separate legal entity, the Liquidating Debtor, with all powers available under applicable law and its organizational documents. The Liquidating Debtor shall be authorized to operate as necessary to complete the Wind Down, maintain copies of the Debtor's books and records for so long as required by applicable law, maintain its good standing until dissolution if required, and dissolve under applicable state law without further supervision or approval by the Bankruptcy Court.

24. Rejection of Executory Contracts and Unexpired Leases. Pursuant to Article VII of the Plan, as of and subject to the occurrence of the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected in accordance with sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtor pursuant to the Sale Order or another Final Order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its terms or by agreement of the parties; (iii) is the subject of a motion to reject filed by the Debtor on or before the Confirmation Date; (iv)

is specifically designated by the Debtor as a contract or lease to be assumed on the Schedule of Assumed Executory Contracts and Unexpired Leases; (v) is an insurance policy of the Debtor to which the Debtor or its members, managers, and officers are beneficiaries or an insured. Entry of this Confirmation Order approves the applicable assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. For the avoidance of doubt, the Debtor may seek to assume, assume and assign, or reject an Executory Contract and Unexpired Lease at any time prior to the Effective Date, whether or not such Executory Contract or Unexpired Lease is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases.

25. Claims Based on Rejection of Executory Contracts or Unexpired Leases. As provided in Article VII.C of the Plan, any Proof of Claim asserting a Claim arising from rejection of the Debtor's Executory Contracts or Unexpired Leases pursuant to the Plan must be filed no later than **5:00 p.m. (prevailing Central Time) on the date that is thirty (30) days after the Effective Date**. Any such Proof of Claim not timely filed shall be automatically Disallowed, forever barred from assertion, and unenforceable against the Debtor or Liquidating Debtor without further notice, objection, or action. All Allowed Claims arising from rejection shall be classified as General Unsecured Claims and treated in accordance with the Plan.

26. Approval of Assumed Executory Contracts and Unexpired Leases. Subject to Article VII. B. of the Plan or the resolution of any dispute with respect to the contracts or leases subject to such disputes and (ii) the occurrence of the Effective Date The assumptions or rejections, as applicable, provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code approved. Any unpaid postpetition obligations under an assumed contract that are not included in the Schedule of Assumed Executory Contracts and Unexpired Leases shall be treated as Administrative Expense Claims in accordance with the Plan.

27. Reservations Regarding Assumed Contracts. If the Debtor supplements the Schedule of Assumed Executory Contracts and Unexpired Leases before the Effective Date, the rights of counterparties to object to assumption or to the applicable Cure Amount, and the Debtor's right to reject any such contract or lease, shall be preserved subject to the procedures and deadlines set forth in the Plan, the Solicitation Order, and applicable law. Any unresolved dispute concerning assumption, Cure Amounts, or adequate assurance of future performance shall be resolved by agreement or further order of the Bankruptcy Court, as appropriate.

28. Reservation of Rights. Nothing contained in the Plan or this Confirmation Order shall constitute an admission by the Debtor or the Liquidating Debtor that any particular contract is an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder.

29. Distributions Under the Plan. On and after the Effective Date, the Disbursing Agent shall make all distributions on behalf of the Debtor in accordance with Article V and the other governing terms of the Plan. Unless otherwise provided in the Plan, Class 1 Other Priority Claims shall be paid in Cash in the Allowed amount, Class 2 Secured Lender Claim shall receive all Cash remaining after payment of Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, funding of the GUC Pool, and funding of the Wind Down Amount, and shall thereafter receive Remaining Assets after completion of the Wind Down, Class 3 General Unsecured Claims shall receive their Pro Rata Shares of the GUC Pool, and the Holder of the Class 4 Watts Claim shall receive the Watts Assets. Class 5 Existing Interests shall receive no distribution on account of such interests, which remain outstanding for administrative convenience only. The Disbursing Agent shall not be required to give a bond or other security for performance of its duties.

30. Plan Releases. The Debtor's Releases under Article IX.D.1 and the Releasing Parties Releases under Article IX.D.2 of the Plan are approved and incorporated herein in all respects and shall be effective on the Effective Date without further order or action by the Bankruptcy Court. Each Holder of a Claim or Interest that was given an opportunity to opt out of the third-party releases and did not timely do so shall be bound by the releases to the extent provided in the Plan.

31. Injunction. The injunction provision contained in Article IX.B of the Plan is approved and incorporated herein in all respects. Except as otherwise expressly provided in the Plan or this Confirmation Order, and subject to section 524(a) of the Bankruptcy Code, all Persons or Entities who have held, hold, or may hold Claims or Interests that arose before the Effective Date, Causes of Action subject to exculpation to the extent of the exculpation provided in Article IX.C, or Claims, Interests, or Causes of Action otherwise discharged, satisfied, stayed, or terminated under the Plan, and all parties in interest seeking to enforce them, are permanently enjoined from and after the Effective Date from: (i) commencing or continuing any action or proceeding with respect to any such Claim or Interest against the Debtor or Liquidating Debtor other than to enforce a right to a distribution under the Plan; (ii) enforcing, attaching, collecting, or recovering any judgment, award, decree, or order against the Debtor or Liquidating Debtor with respect to any such Claim or Interest other than to enforce a right to a distribution under the Plan; (iii) creating, perfecting, or enforcing any Lien or encumbrance against the Debtor, Liquidating Debtor, or their property on account of any such Claim or Interest; or (iv) asserting any right of setoff, other than a setoff validly exercised before the Petition Date, or subrogation against any obligation due from the Debtor or Liquidating Debtor on account of any such Claim or Interest. The injunction extends to successors and assigns and their respective property and interests. Unless

otherwise provided in the Plan or by Final Order, injunctions and the automatic stay in existence on the Confirmation Date shall remain in effect until entry of a Final Decree in the Chapter 11 Case.

32. Exculpation. The exculpation provision contained in Article IX.C of the Plan is approved and incorporated herein in all respects. The Debtor is the sole Exculpated Party. Effective as of the Effective Date, the Debtor shall not have or incur liability for, and is exculpated from, any Cause of Action arising from acts or omissions occurring between the Petition Date and the Effective Date in connection with or relating to the Chapter 11 Case, the Plan, the Disclosure Statement, the Plan Supplement, or any transaction approved by the Bankruptcy Court, except for Causes of Action based on conduct determined by Final Order to constitute fraud, willful misconduct, or gross negligence, or liability of professionals to their clients under Texas Disciplinary Rules of Professional Conduct Rule 1.08(g).

33. Administrative Expense Claims Bar Date Provisions. Except for Professional Fee Claims, Claims asserted under section 503(b)(9) of the Bankruptcy Code, U.S. Trustee Fees, Administrative Expense Claims Allowed on or before the Effective Date, and Administrative Expense Claims timely asserted in accordance with the applicable Bar Date Order, all requests for allowance and payment of Administrative Expense Claims must be filed and served on the Debtor or Liquidating Debtor, as applicable, and its counsel so as to be actually received on or before the Administrative Expense Claims Bar Date, which shall be the date that is thirty (30) days after the Effective Date. The notice of the occurrence of the Effective Date shall set forth the Administrative Expense Claims Bar Date and constitute notice thereof. Any request not timely filed and served shall be forever barred and the related Administrative Expense Claim shall be deemed Disallowed.

34. Professional Fee Claims Bar Date Provisions. Unless otherwise provided in the Bankruptcy Code, previously filed, or governed by a Bar Date Order or other order of the Court, all applications for allowance and payment of Professional Fee Claims for services rendered and expenses incurred before the Effective Date must be filed on or before the Professional Fee Claims Bar Date, which shall be the date that is forty-five (45) days after the Effective Date. Any Professional Fee Claim not timely filed shall be deemed waived and the Holder shall be forever barred from receiving payment on account thereof.

35. Notice of Entry of Confirmation Order and Effective Date. The Debtor shall serve notice of entry of this Confirmation Order and notice of the Effective Date, which notices may be combined, via email where possible and in accordance with Bankruptcy Rules 2002 and 3020(c) on all creditors, equity holders, and parties that requested notice in the Chapter 11 Case. The notice or notices shall include the Administrative Expense Claims Bar Date, the Professional Fee Claims Bar Date, and the occurrence of the Effective Date, if applicable. No notice of Confirmation or the Effective Date or service of any kind shall be required on a party whose notice of the Combined Hearing was returned as undeliverable without a new address known to the Debtor. These notices are adequate under the circumstances of the Chapter 11 Case, and no other or further notice is necessary.

36. Payment of Statutory Fees. All U.S. Trustee Fees payable after the Effective Date, if any, shall be paid by the Liquidating Debtor until the closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code. The Liquidating Debtor shall file and serve on the U.S. Trustee quarterly reports of disbursements made within fifteen (15) days after the conclusion of each reporting period until the Chapter 11 Case is converted, dismissed, or closed by entry of a

final decree. The reports shall be prepared consistently with applicable Bankruptcy Court and U.S. Trustee guidelines.

37. Setoff, Offset, and Recoupment. The Liquidating Debtor or its designee may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, offset or recoup against any Allowed Claim and the distribution to be made on account of that Claim any claims, rights, and Causes of Action that the Liquidating Debtor or its successors may hold against the Holder of the Allowed Claim after the Effective Date, to the extent the setoff or recoupment is either agreed in amount by the Liquidating Debtor and the Holder or adjudicated by the Bankruptcy Court or another court of competent jurisdiction. The failure to effect a setoff or recoupment shall not constitute a waiver or release of any such claim, right, or Cause of Action.

38. Successors and Assigns. Except as expressly provided otherwise in the Plan, the Plan shall be binding upon and inure to the benefit of the Debtor, the Liquidating Debtor, and their respective successors and assigns. The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of that Entity.

39. Plan Supplement. The documents contained in the Plan Supplement and any amendments, modifications, or supplements thereto, are authorized and approved consistent with the Plan when finalized, executed, and delivered. Without further order or authorization of this Court, the Debtor, the Liquidating Debtor, the Wind Down Officer, and their successors are authorized and empowered to make modifications to documents included in the Plan Supplement that are consistent with the Plan and this Confirmation Order.

40. Binding Effect of Prior Orders and Agreements. Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date but subject to the occurrence of the

Effective Date and the terms of the Plan and this Confirmation Order, all prior orders entered in the Chapter 11 Case, all documents and agreements executed by the Debtor as authorized or directed under those orders, and all motions or requests for relief by the Debtor pending as of the Effective Date shall be binding upon and inure to the benefit of the Debtor, its Estate, the Liquidating Debtor, all present and former Holders of Claims and Interests, whether or not they voted in favor of the Plan, and their respective successors and assigns. The failure to specifically reference any provision of the Plan in this Confirmation Order shall not diminish or impair its efficacy, it being the intent of the Court that the Plan and each provision, term, and condition thereof be approved in its entirety.

41. Governmental Approvals Not Required. Except as otherwise specifically provided in the Plan or this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, under the laws, rules, or regulations of any state or other governmental authority with respect to implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan and Disclosure Statement.

42. Effectiveness of All Actions. All actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date as provided in the Plan or this Confirmation Order, without further application to or order of the Court or further action by the Debtor, Liquidating Debtor, Wind Down Officer, or any other officer, member, manager, or employee, with the same effect as if taken by unanimous action of the applicable governing persons.

43. Plan and Confirmation Order Mutually Dependent. This Confirmation Order constitutes a judicial determination that each term and provision of the Plan is valid and enforceable pursuant to its terms, integral to the Plan, and nonseverable and mutually dependent

with the other terms and provisions of the Plan, subject to the Bankruptcy Code and applicable law.

44. Reversal. If any provision of this Confirmation Order is later reversed, modified, or vacated by a subsequent order of this Court or any other court, that reversal, modification, or vacatur shall not affect the validity of acts or obligations incurred or undertaken under or in connection with the Plan before receipt of written notice of that order by the Debtor, the Liquidating Debtor, or the Wind Down Officer. Any such act or obligation undertaken in reliance on this Confirmation Order before the effective date of the reversal, modification, or vacatur shall be governed by this Confirmation Order, the Plan, and the documents relating to the Plan.

45. No Stay/Immediate Binding Effect. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon entry of this Confirmation Order and, to the extent applicable, the occurrence of the Effective Date, the terms of the Plan, the documents contained in the Plan Supplement, and this Confirmation Order shall not be stayed and shall be immediately effective, enforceable, and binding upon the Debtor, the Liquidating Debtor, the Wind Down Officer, all Holders of Claims and Interests, all Entities subject to the settlements, compromises, releases, and injunctions described in the Plan or this Confirmation Order, governmental officials subject to section 1146(a) of the Bankruptcy Code, non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor, and the respective successors and assigns of each of the foregoing.

46. Substantial Consummation. On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

47. Authorization to Consummate. The Debtor, the Liquidating Debtor, and the Wind Down Officer are authorized to consummate the Plan and the contracts, instruments, releases, agreements, transfers, distributions, and other actions contemplated by the Plan at any time after

entry of this Confirmation Order, subject to satisfaction or waiver, to the extent permitted, of the conditions precedent to consummation set forth in Article VIII of the Plan. The Plan shall not become effective unless and until those conditions have been satisfied or waived in accordance with the Plan.

48. Plan and Confirmation Order Govern. Without intending to modify any prior order of this Court or any agreement, instrument, or document addressed by a prior order, in the event of an inconsistency between the Plan and a document or agreement filed in the Plan Supplement, the relevant Plan Supplement document shall control unless otherwise provided in that document or this Confirmation Order. In the event of an inconsistency between this Confirmation Order and the Plan or the Plan Supplement, this Confirmation Order shall control.

49. Final Order. This Confirmation Order is a Final Order, and the period in which an appeal must be filed shall commence immediately upon entry hereof.

50. Good Faith. The Debtor has proposed the Plan Documents in good faith and not by any means forbidden by applicable law. In so finding, the Court has considered the totality of the circumstances of the Chapter 11 Case and the formulation and negotiation of the Plan Documents. The Debtor, the Liquidating Debtor, the Released Parties, the Exculpated Party, and each of their applicable Related Parties have been and will be acting in good faith if they proceed to: (i) consummate the Plan and the agreements, settlements, distributions, transfers, and other actions contemplated therein and in this Confirmation Order; (ii) make distributions pursuant to the Plan and this Confirmation Order; (iii) carry out the Wind Down; and (iv) take any actions authorized by the Plan and this Confirmation Order.

51. Governmental Agencies. Except as expressly provided in the Plan, nothing in the Plan, this Confirmation Order, or any related document shall affect a release or limit any claim

arising from the exercise of police powers or regulatory activities of governmental units, including the United States Government or any of its agencies or any state or local authority.

*[Remainder of page intentionally left blank*]

52. Retention of Jurisdiction. Notwithstanding entry of this Confirmation Order and occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, the matters set forth in Article IX.E of the Plan.

Dated: ____________, 2026
Houston, Texas

______________________________
HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **TEDDER INDUSTRIES, LLC.,**[1] | § | **Case No. 25-90805 (CML)** |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | |

**COMBINED DISCLOSURE STATEMENT**
**AND PLAN OF LIQUIDATION OF TEDDER**
**INDUSTRIES, LLC PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**VARTABEDIAN KATZ HESTER & HAYNES LLP**
Candice M. Carson (Texas Bar No. 24074006)
J. Blake Glatstein (State Bar No. 24123295)
2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201
Tel: (469) 654-1340
Email: candice.carson@vkhh.com
blake.glatstein@vkhh.com

**VARTABEDIAN KATZ HESTER & HAYNES LLP**
Jeff P. Prostok (Texas Bar No. 16352500)
Mary Taylor Stanberry (State Bar No. 24143781)
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Email: jeff.prostok@vkhh.com
mary.stanberry@vkhh.com

*Counsel for Debtor and Debtor in Possession*

[1] The last four digits of the Debtor's federal tax identification number are 7652. The location of the Debtor's service address is: 4411 W Riverbend Ave, Post Falls, ID 83854-8150.

**TABLE OF CONTENTS**

**Page**

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME ..... 1

A. Defined Terms ..... 1

B. Rules of Interpretation and Computation of Time ..... 11

1. Rules of Interpretation ..... 11

2. Computation of Time ..... 12

3. Exhibits ..... 12

4. Controlling Document ..... 12

ARTICLE II DEBTOR'S HISTORY AND THE BANKRUPTCY CASE ..... 12

A. Debtor's History ..... 12

1. Overview of the Debtor's Business ..... 12

2. Corporate Governance ..... 13

3. The Debtor's Prepetition Capital Structure ..... 13

4. Material Pending Litigation ..... 14

5. Events Leading to the Chapter 11 Case ..... 15

B. Main Chapter 11 Events ..... 15

1. "First Day" and Material Orders ..... 15

2. Employment Applications ..... 16

3. Schedules and Statements ..... 17

4. Cash Collateral and DIP Order ..... 17

5. Sale of Substantially All of the Debtor's Assets ..... 17

6. Watts Stipulation ..... 19

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 20

A. Unclassified Claims ..... 20

1. Administrative Expense Claims ........ 20

2. DIP Claims ........ 21

3. Priority Tax Claims ........ 21

4. Professional Fee Claims ........ 21

5. Classification General ........ 22

6. Summary of Classification and Projected Recoveries ........ 23

B. Treatment of Claims and Interests ........ 24

1. Other Priority Claims (Class 1) ........ 24

2. Secured Lender Claim (Class 2) ........ 24

3. General Unsecured Claims (Class 3) ........ 25

4. Watts Claim (Class 4) ........ 25

5. Existing Interests (Class 5) ........ 25

C. Reservation of Rights Regarding Claims ........ 26

D. Subordination of Claims ........ 26

E. Postpetition Interest on Claims ........ 26

F. Insurance ........ 26

G. Confirmation Without Acceptance by All Impaired Classes ........ 26

H. Elimination of Classes ........ 26

I. Class Without Voting Claim Holders ........ 27

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN ........ 27

A. Vesting of Assets and Causes of Action in the Liquidating Debtor; Continued Corporate Existence ........ 27

B. Wind Down Officer ........ 27

C. Wind Down ........ 29

D. Cancellation of Existing Securities Agreements ........ 30

E. Corporate and Organizational Existence ........ 30

F. Managers, Directors and Officers of Liquidating Debtor; Corporate Governance ..... 31

G. Corporate Action ..... 31

H. Release of Liens ..... 31

I. Exemption from Certain Transfer Taxes and Recording Fees ..... 31

J. Further Authorization ..... 32

ARTICLE V DISTRIBUTIONS ..... 32

A. Distributions Generally ..... 32

B. No Postpetition or Default Interest on Claims ..... 32

C. Sources of Cash for Distributions and Operations ..... 32

D. Date of Distributions ..... 32

E. Distribution Record Date ..... 32

F. Disbursing Agent ..... 33

G. Delivery of Distributions ..... 33

H. Undeliverable Distributions and Unclaimed Property ..... 33

I. Manner of Payment Under Plan ..... 33

J. Time Bar to Cash Payments ..... 33

K. Minimum Distributions ..... 34

L. No Distribution in Excess of Amount of Allowed Claim ..... 34

M. Allocation of Distributions Between Principal and Interest ..... 34

N. Setoffs and Recoupments ..... 34

O. Withholding and Reporting Requirements ..... 34

P. Claims Paid or Payable by Third Parties ..... 35

ARTICLE VI PROCEDURES FOR DISPUTED CLAIMS ..... 36

A. Allowance of Claims ..... 36

B. Objections to Claims ..... 36

C. Estimation of Claims ........ 36

D. No Distributions Pending Allowance ........ 37

E. Resolution of Claims ........ 37

F. Disallowed Claims ........ 37

G. Amendments to Claims or Interests ........ 37

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 37

A. Assumption and Rejection of Executory Contracts and Unexpired Leases ........ 37

B. Cure of Defaults Under Assumed Contracts ........ 39

C. Claims Based on Rejection of Executory Contracts and Unexpired Leases ........ 39

D. Contracts and Leases Entered Into After the Petition Date ........ 40

E. Insurance Policies ........ 40

F. Reservation of Rights ........ 40

ARTICLE VIII CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ........ 40

A. Conditions Precedent to the Effective Date ........ 40

B. Notice of Occurrence of Effective Date ........ 40

ARTICLE IX EFFECT OF PLAN CONFIRMATION ........ 41

A. Binding Effect ........ 41

B. Injunction and Continuation of the Automatic Stay ........ 41

C. Exculpation ........ 41

D. Releases ........ 42

E. Retention of Jurisdiction ........ 44

F. Jurisdiction of Certain Other Agreements. ........ 46

ARTICLE X MISCELLANEOUS PROVISIONS ........ 46

A. Payment of Statutory Fees ........ 46

B. Amendment or Modification of the Plan ........ 46

C. Substantial Consummation ........ 47

D. Reservation of Rights Regarding Certain Matters ........ 47

E. Exhibits and Schedules ........ 47

F. Severability of Plan Provisions ........ 47

G. Successors and Assigns ........ 47

H. Revocation, Withdrawal, or Non-Consummation ........ 47

I. Governing Law ........ 48

J. Immediate Binding Effect ........ 48

K. Entire Agreement ........ 48

L. Votes Solicited in Good Faith ........ 48

M. Closing of Chapter 11 Case ........ 48

N. Waiver or Estoppel ........ 48

O. Notice ........ 49

The Debtor ........ 49

ARTICLE XI CONFIRMATION OF THE PLAN ........ 49

A. VOTING PROCEDURES AND REQUIREMENTS ........ 49

B. STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN ........ 50

1. The Best Interest of Creditors Test and Liquidation Analysis ........ 51

2. Feasibility ........ 53

3. Acceptance by an Impaired Class ........ 53

4. Confirmation Without Acceptance by All Impaired Classes; "Cram Down" ........ 54

ARTICLE XII PLAN-RELATED RISK FACTORS ........ 55

A. GENERAL BANKRUPTCY LAW AND PLAN RELATED CONSIDERATIONS ........ 55

1. There May Be Objections to the Classification of Claims and Interests ........ 55

2. The Debtor May Run Out of Financing ..... 56

3. The Debtor May Not Get Enough Votes to Confirm the Plan ..... 56

4. Non-Confirmation of Plan ..... 56

5. Parties in Interest May Object to the Plan's Amount or Classification of Claims or Interests ..... 57

6. Non-Occurrence or Delayed Occurrence of the Effective Date ..... 57

7. The Releases, Injunction, or Exculpation Provisions May Not be Approved ..... 58

8. Allowed Administrative Expense Claims and Other Priority Claims May be Higher than Anticipated ..... 58

9. Allowed Claims Against the Debtor May be Greater than Anticipated ..... 58

10. The Debtor May Be Adversely Affected by Potential Litigation, Including Litigation Arising Out of the Chapter 11 Case ..... 58

B. RISKS ASSOCIATED WITH FORWARD LOOKING STATEMENTS ..... 58

C. DISCLOSURE STATEMENT DISCLAIMER ..... 59

1. Information Contained Herein Is for Soliciting Votes ..... 59

2. This Plan and Disclosure Statement May Contain Forward Looking Statements ..... 59

3. No Legal or Tax Advice Is Provided to You by this Plan and Disclosure Statement ..... 59

4. No Admissions Made ..... 59

5. No Waiver of Right to Object or Right to Recover Transfers and Assets 59

6. Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors ..... 60

7. Potential Exists for Inaccuracies, and the Debtor Has No Duty to Update ..... 60

8. No Representations Outside the Plan and Disclosure Statement are Authorized ..... 60

D. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ..... 60

1. Alternative Plan(s) .......... 60

2. Liquidation Under Chapter 7 .......... 61

3. Dismissal of the Chapter 11 Case .......... 61

ARTICLE XIII CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN.... 61

A. General Tax Considerations.......... 61

B. Certain U.S. Federal Income Tax Consequences to the Debtor .......... 62

C. Certain U.S. Federal Income Tax Consequences for Holders of Class 2, Class 3, and Class 4 Claims.......... 63

D. Information Reporting and Withholding .......... 64

E. Reservation of Rights.......... 64

ARTICLE XIV CONCLUSION, RECOMMENDATION, AND CONFIRMATION REQUEST .......... 64

# INTRODUCTION AND DISCLAIMERS

Tedder Industries, LLC (the "**Debtor**," the "**Company**" or "**Tedder**") in the above-captioned case (the "**Chapter 11 Case**") proposes the following *Combined Disclosure Statement and Plan of Liquidation of Tedder Industries, LLC Pursuant to Chapter 11 of the Bankruptcy Code* (including all exhibits and schedules hereto, and as may be amended, modified, or supplemented from time to time, this "**Disclosure Statement**," "**Plan and Disclosure Statement**," or "**Plan**") for the resolution of the outstanding Claims against and Interests in the Debtor.

This Plan and Disclosure Statement contain certain statutory provisions and describe certain events in the Chapter 11 Case and certain documents related to the Plan and Disclosure Statement that may be attached and are incorporated by reference. Although the Debtor believes that this information is fair and accurate, this information is qualified in its entirety to the extent that it does not set forth the entire text of such documents or statutory provisions or every detail of such events. The information contained herein or attached hereto is made only as of the date of this Plan and Disclosure Statement. There can be no assurances that the statements contained herein will be correct at any time after this date.

This Plan and Disclosure Statement has been prepared in accordance with sections 1123 and 1125 of the Bankruptcy Code and Bankruptcy Rule 3016 and not necessarily in accordance with federal or state securities laws or other non-bankruptcy laws. This Plan and Disclosure Statement has not been approved or disapproved by the United States Securities and Exchange Commission (the "**SEC**"), any state securities commission or any securities exchange or association, nor has the SEC, any state securities commission or any securities exchange or association passed upon the accuracy or adequacy of the statements contained herein. No other governmental or other regulatory agency approvals have been obtained as of the date of the mailing of this Plan and Disclosure Statement.

The Debtor submits the Disclosure Statement, as may be amended from time to time, under section 1125 of the Bankruptcy Code and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") to all of the Debtor's known Holders of Claims entitled to vote on the Plan.

The purpose of this Disclosure Statement is to provide adequate information to enable Holders of Claims who are entitled to vote on the Plan to arrive at a reasonably informed decision in exercising their respective right to vote on the Plan. All section references in this Plan and Disclosure Statement are to the Bankruptcy Code unless otherwise indicated.

The Disclosure Statement sections hereof are not intended to replace a careful review and analysis of the Plan terms, including the specific treatment of Claims and Interests under the Plan. They are submitted as an aid and supplement to your review of the Plan terms and to explain the terms of the Plan. Every effort has been made to fairly summarize the Plan and to inform Creditors and Interest Holders how various aspects of the Plan affect their respective positions. If any questions arise, the Debtor urges you to contact the Debtor's counsel. These attorneys will attempt to resolve your questions. You are also encouraged to consult with your own counsel. The Debtor's counsel is unable to give you legal advice about your claims or how you should vote on the Plan.

The counsel for the Debtor is available to answer any questions that your counsel may have regarding the Plan and Disclosure Statement.

In preparing this Plan and Disclosure Statement, the Debtor relied on financial data derived from its books and records or that was otherwise made available to it at the time of such preparation and on various assumptions regarding the Debtor's business. Although the Debtor believes that such financial information fairly reflects the financial condition of the Debtor as of the date hereof and that the assumptions regarding future events reflect reasonable business judgments, no representations or warranties are made as to the accuracy of the financial information contained herein or assumptions regarding the Debtor's business and their future results and operations. Except where specifically noted, the financial information contained in this Plan and Disclosure Statement and in the related exhibits has not been audited by a certified public accountant and has not been prepared in accordance with generally accepted accounting principles in the United States or any other jurisdiction.

This Plan and Disclosure Statement does not constitute, and may not be construed as, an admission of fact, liability, stipulation, or waiver. A party with standing may object to claims after the Confirmation or Effective Date of the Plan irrespective of whether this Plan and Disclosure Statement identifies any such objections to Claims.

The Debtor is making the statements and providing the financial information contained in this Plan and Disclosure Statement as of the date hereof, unless otherwise specifically noted. Although the Debtor may subsequently update the information in this Plan and Disclosure Statement, the Debtor does not have an affirmative duty to do so, and expressly disclaims any duty to publicly update any forward-looking statements, whether as a result of new information, future events or otherwise. Holders of Claims and Interests reviewing this Disclosure Statement should not infer that, at the time of their review, the facts set forth herein have not changed since this Disclosure Statement was filed. Information contained herein is subject to completion or amendment. The Debtor reserves the right to file an amended plan and disclosure statement.

Confirmation and effectiveness of the Plan are subject to certain material conditions precedent described in Article VIII of the Plan. There is no assurance that the Plan will be confirmed or, if confirmed, that such material conditions precedent will be satisfied or waived. You are encouraged to read this Plan and Disclosure Statement in its entirety, including, but not limited to Article XII of this Plan and Disclosure Statement entitled "Plan-Related Risk Factors," before submitting your ballot to vote to accept or reject the Plan.

The Debtor has not authorized any entity to give any information about or concerning the Plan and Disclosure Statement other than that which is contained in this Plan and Disclosure Statement. The Debtor has not authorized any representations concerning the Debtor or the value of its property other than as set forth in this Plan and Disclosure Statement.

If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, all Holders of Claims and Interests (including those Holders of Claims or Interests who are not entitled to vote on the Plan) will be bound by the terms of the Plan and any transactions contemplated thereby.

The contents of this Plan and Disclosure Statement should not be construed as legal, business, or tax advice. Each creditor or Holder of an Interest should consult their own legal counsel and accountant as to legal, tax, and other matters concerning their Claim or Interest. This Plan and Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

Nothing contained herein shall constitute an admission of any fact or liability by any party or be deemed evidence of the tax or other legal effects of the Plan on the Debtor or on holders of Claims or Interests.

**The Debtor supports confirmation of the Plan and recommends all Holders of Claims entitled to vote on the Plan to vote to accept the Plan.**

# ARTICLE I
# DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

## A. Defined Terms

Capitalized terms used herein shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules.

1. "**503(b)(9) Claim**" means a Claim pursuant to section 503(b)(9) of the Bankruptcy Code for the value of goods received by the Debtor in the 20 days immediately prior to the Petition Date and sold to the Debtor in the ordinary course of the Debtor's business.

2. "**Administrative Expense Claim**" means a Claim against the Debtor or its Estate for costs or expenses of administration of the Estate pursuant to sections 364(c)(1), 503(b), 503(c), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the Debtor's business; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 330(a) or 331 of the Bankruptcy Code, including Professional Fee Claims; (c) all fees and charges assessed against the Estate under Chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930; and (d) 503(b)(9) Claims.

3. "**Administrative Expense Claims Bar Date**" means the date by which a request for payment of administrative expenses must be filed and is thirty (30) days after the Effective Date.

4. "**Affiliate**" has the meaning set forth in § 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were the Debtor.

5. "**Allowed**" means with respect to Claims: (a) any Claim (i) for which a proof of Claim has been timely filed on or before the applicable Bar Date (or for which a proof of Claim is not required to be filed pursuant to the Bankruptcy Code or a Final Order); or (ii) that is identified in the Schedules as of the Effective Date as not disputed, not contingent and not unliquidated, and for which no proof of Claim has been timely Filed; provided that, in each case, any such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been filed or such an objection has been filed and the Claim thereafter has been Allowed by a Final Order; or (b) any Claim expressly deemed allowed by the Plan or allowed by a Final Order of the Bankruptcy Court (including pursuant to any stipulation or settlement agreement approved by the Bankruptcy Court). Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims.

6. "**Assumed Contracts**" means those Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant to this Plan.

7. "**Avoidance Actions**" means any and all actual or potential avoidance, recovery, subordination, Causes of Action, Claims, or other actions or remedies that may be brought by and

on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under sections 510 and 541–553 of the Bankruptcy Code, regardless of whether or not such action has been commenced prior to the Effective Date.

8. "**Ballot**" means the applicable form or forms of ballot(s) distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder indicates either acceptance or rejection of the Plan and (when applicable) any election for treatment of such Claim under the Plan.

9. "**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter amended, as applicable to the Chapter 11 Case.

10. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Southern District of Texas.

11. "**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, and the general, local, and chamber rules of the Bankruptcy Court, as now in effect or hereafter amended.

12. "**Bar Date**" means the applicable bar date by which a proof of Claim or request for payment of an administrative claim must be, or must have been, Filed, as established by an order of the Bankruptcy Court, including the Confirmation Order.

13. "**Business Day**" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

14. "**California Litigation Claim**" means the proofs of claim filed for damages related to the California Litigation on the Debtor's claims register as claim numbers 6 (amended), 7, 9 (amending 6), and 12.

15. "**Cash**" means legal tender of the United States of America and equivalents thereof.

16. "**Cause of Action**" means, without limitation, any and all claims, causes of action, proceeding, agreement, Claim, cause of action, controversy, demand, debt, right, action, Avoidance Actions, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, injury, remedy defense, offset, power, privilege, recoupment, cross-claim, counterclaim, third-party claim or action, indemnity claim, contribution claim, or any other claim, known or unknown, contingent or non- contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, accrued or to accrue, foreseen or unforeseen, whether assertable directly or derivatively, whether pending in litigation or otherwise, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

17. "**Chapter 11 Case**" means the above-captioned case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court from the Petition Date through the Effective Date.

Case 25-90805 Document 194 Filed in TXSB on 07/27/26 Page 14 of 76

18. “**Claim**” has the meaning set forth in section 101(5) of the Bankruptcy Code.

19. “**Claims Objection Deadline**” means the day that is 180 days after the Effective Date.

20. “**Class**” means a class of Claims, as described in Article III of this Plan and Disclosure Statement.

21. “**Confirmation**” means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Case.

22. “**Confirmation Date**” means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

23. “**Confirmation Hearing**” means the hearing held by the Bankruptcy Court on Confirmation of this Plan, as such hearing may be continued.

24. “**Confirmation Order**” means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code and approving the adequacy of the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

25. “**Creditor**” means a “creditor,” as defined in section 101(10) of the Bankruptcy Code.

26. “**Cure Amount**” means all costs required of the Debtor to cure any and all monetary defaults, including pecuniary losses, under an Assumed Contract pursuant to section 365 of the Bankruptcy Code, which shall be set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases or such other notice pursuant to the Solicitation Order.

27. “**Debtor**” means Tedder Industries, LLC.

28. “**DIP Claim**” means a Claim against the Debtor on account of the DIP Obligations.

29. “**DIP Loan Agreement**” means, to the extent any amounts were extended postpetition under the DIP Facility, the Prepetition Loan Agreement.

30. “**DIP Financing Documents**” means, collectively, the DIP Loan Agreement, and any and all other agreements, documents, and instruments delivered or entered into in connection therewith, including any promissory notes, pledge and collateral agreements, and other security documents evidencing the DIP Facility.

31. “**DIP Facility**” means the senior secured, super-priority debtor-in-possession credit facility of up to $700,000.00 provided to the Debtor in accordance with the terms, and subject in all respects to the terms and conditions, as set forth in the DIP Financing Documents and the DIP Order.

32. “**DIP Lenders**” mean Main Street Mezzanine Fund, LP, Main Street Capital Corporation, and MSC Income Fund, Inc., as the lenders under the DIP Loan Agreement, and their successors and permitted assigns and any subsequent lender that becomes a party thereto in accordance with the terms thereof.

33. “**DIP Motion**” means the *Debtor’s Emergency Motion for Entry of an Order (I) Approving Postpetition Financing; and (II) Granting Liens and Providing Superpriority Administrative Expense Status* (Docket No. 75).

34. “**DIP Obligations**” includes, without limitation, the aggregate principal amount of all postpetition term loan advances, interest, fees, costs, and expenses under the DIP Facility.

35. “**DIP Order**” means the Order *(I) Approving Postpetition Financing; and (II) Granting Liens and Providing Superpriority Administrative Expense Status* (Docket No. 89).

36. “**Disallowed**” means all or such part of a Claim (a) that is disallowed under this Plan, by a Final Order of the Bankruptcy Court or other court of competent jurisdiction, or pursuant to a settlement or stipulation pursuant to the authority of the Debtor; (b) is listed on the Schedules as zero or as contingent, disputed, or unliquidated and as to which no proof of Claim or request for payment of an Administrative Expense Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely Filed under applicable law or the Plan; (c) is not listed on the Schedules and as to which no proof of Claim or request for payment of an Administrative Expense Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

37. “**Disbursing Agent**” means the Wind Down Officer or an entity selected by the Wind Down Officer to make Distributions at the direction of the Wind down Officer, which may be the Liquidating Debtor.

38. “**Disclosure Statement**” has the meaning set forth in the introduction hereto.

39. “**Disputed Claim**” means (a) any Claim as to which the Debtor or other party in interest have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order; (b) any Claim scheduled by the Debtor as contingent, unliquidated, or disputed; (c) any Claim which amends a claim scheduled by the Debtor as contingent, unliquidated, or disputed; or (d) any Claim prior to it having become an Allowed Claim.

40. “**Disputed Claims Reserve**” means reserve fund(s), if any, established by the Debtor to hold assets on account of, and for the benefit of, Holders of Disputed Claims.

41. “**Distribution**” means a distribution under the Plan of property to a Holder of a Claim on account of such Claim.

42. “**Distribution Date**” means a date or dates, as determined by the Debtor, in accordance with the terms of this Plan, on which the Disbursing Agent, makes a distribution to Holders of Allowed Claims.

43. “**Distribution Record Date**” means the date for determining which Holders of Claims are eligible to receive distributions under this Plan, which date shall be the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

44. “**Effective Date**” means the date that is a Business Day, on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article VIII of the Plan have become satisfied in accordance with the Plan; and (c) the Plan is declared effective.

45. “**Entity**” has the meaning set forth in section 101(15) of the Bankruptcy Code.

46. “**Estate**” means the estate created for the Debtor in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

47. “**Exculpated Party**” means, the Debtor.

48. “**Executory Contract**” means a contract to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under sections 365 or 1123 of the Bankruptcy Code, as applicable.

49. “**Exhibit**” means an exhibit annexed to either this Plan and Disclosure Statement, as amended, modified, or supplemented from time to time.

50. “**Existing Interests**” means all Interests in the Debtor as of the Petition Date.

51. “**File**,” “**Filed**,” or “**Filing**” means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

52. “**Final Distribution Date**” means, with respect to a particular Class of Claims, the Distribution Date upon which final Distributions to claimants in the Class are to be made.

53. “**Final Order**” means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument, further review, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal, petition for certiorari, or request for re-argument, further review, or rehearing has been or can be taken or granted.

54. “**General Bar Date**” means April 13, 2026, the date by which each Holder of a Claim against the Debtor must have filed a proof of Claim.

55. "**General Unsecured Claim**" means any unsecured Claim against the Debtor that is (a) unpaid as of the Effective Date, and (b) is not an Administrative Expense Claim, DIP Claim, Claim for a Cure Amount, Priority Tax Claim, Other Priority Claim, Secured Lender Deficiency Claim, or Watts Claim.

56. "**Governmental Unit**" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

57. "**GUC Pool**" means the cash consideration provided by the Secured Lenders from their Plan consideration in an aggregate amount of $100,000.00 in Cash to be distributed by the Debtor on the Effective Date of the Plan to all Holders of Allowed General Unsecured Claims.

58. "**Holder**" means a Person or Entity holding a Claim against, or an Interest in, the Debtor, as the context requires.

59. "**Impaired**" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

60. "**Interest**" means the rights of the Holders of any equity interests in the Debtor issued and outstanding immediately prior to the Petition Date, including, but not limited to, any stock, membership interests, entitlements, options, warrants or other rights with respect thereto, or any other instruments evidencing an ownership interest in the Debtor and the rights of any Entity to purchase or demand the issuance of any of the foregoing, including: (a) redemption, conversion, exchange, voting, participation and dividend rights (including any rights in respect of accrued and unpaid dividends); (b) liquidation preferences; and (c) stock options and warrants.

61. "**IRS**" means the United States Internal Revenue Service.

62. "**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

63. "**Liquidating Debtor**" means the Debtor and Debtor in possession, or any successor thereto, on and after the Effective Date.

64. "**Notice of Occurrence of Effective Date**" means the notice filed in accordance with Section VIII.C of this Plan.

65. "**Notice Parties**" means, collectively, the parties listed in Section X.O.

66. "**Objection Deadline**" means the deadline to File objections to Confirmation of this Plan, which is August 27, 2026 at 4:00 p.m. (prevailing Central Time), as may be extended by the Debtor, or any other deadline to File objections to Confirmation of this Plan established by the Bankruptcy Court.

67. "**Organizational Documents**" means, with respect to any Person other than a natural person, the documents by which such Person was organized or formed (such as a certificate of incorporation, certificate of formation, certificate of limited partnership, or articles of organization, and including, without limitation, any certificates of designation for preferred stock or other forms of preferred equity) or which relate to the internal governance of such Person (such

as by-laws, a partnership agreement, or an operating, limited liability company, shareholders, or members agreement).

68. "**Other Priority Claim**" means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

69. "**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code, including, without limitation, any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof or other entity.

70. "**Petition Date**" means December 8, 2025, the date on which the Debtor Filed its petition for relief commencing the Chapter 11 Case.

71. "**Plan**" has the meaning set forth in the introduction hereto.

72. "**Plan Funding**" means the Debtor's Cash on hand.

73. "**Plan Supplement**" means the compilation of documents and/or forms of documents, agreements, schedules, and exhibits to the Plan, if any, that will be filed by the Debtor with the Bankruptcy Court in advance of Confirmation, and all schedules, exhibits, ballots, solicitation procedures, and other documents and instruments related thereto, as may be amended, supplemented, or modified from time to time.

74. "**Prepetition Loan Agreement**" means that certain *Loan Agreement*, dated as of August 31, 2018, by and between the Debtor, as borrower, Main Street Capital Corporation, as both the administrative agent and collateral agent, and the lenders party thereto from time to time (as amended, restated, amended and restated, supplemented or otherwise modified from time to time).

75. "**Priority Tax Claim**" means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

76. "**Pro Rata Share**" means, when used with reference to a distribution of property to Holders of Allowed Claims in a particular Class or any other specified group of Claims pursuant to this Plan, proportionately, so that with respect to a particular Allowed Claim in such Class or in such group, the ratio of the amount of property to be distributed on account of such Claim to the amount of such Claim is the same as the ratio of the amount of property to be distributed on account of all Allowed Claims in such Class or group of Claims to the amount of all Allowed Claims in such Class or group of Claims.

77. "**Professional**" means any Entity (a) employed in the Chapter 11 Case by the Debtor pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code or (b) for which compensation or reimbursement has been Allowed by the Bankruptcy Court in the Chapter 11 Case for services to the Debtor, and expenses incurred in connection with such services, pursuant to section 503(b)(4) of the Bankruptcy Code.

78. "**Professional Fee Claim**" means any Administrative Expense Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent that the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

79. "**Professional Fee Claim Bar Date**" means the date which is forty-five (45) days after the Effective Date.

80. "**Professional Fee Escrow Account**" means an interest-bearing account funded by the Debtor in Cash, consisting of the Secured Lenders' cash collateral, on the Effective Date pursuant to Section III.A.4. of the Plan, in an amount equal to the Professional Fee Reserve Amount.

81. "**Professional Fee Reserve Amount**" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate (or, if applicable, the Debtor estimates) they have incurred or will incur in rendering services to the Debtor prior to the Effective Date, which estimates Professionals shall deliver to the Debtor as set forth in Section III.A.4. of the Plan.

82. "**Related Parties**" means collectively, with respect to any Entity or Person, including each Released Party and Exculpated Party, such Entity or Person's, current, former and future Affiliates, member firms and associated entities, and with respect to each of the foregoing, their Affiliates, current directors, current managers, current officers and current equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, employees, agents, trustees, advisory board members, investment fund advisors or managers, investment managers, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

83. "**Released Parties**" means collectively: (a) the Debtor and its Estate; (b) the Liquidating Debtor and its Estate; (c) the DIP Lenders; (d) any Professional; (e) the Secured Lenders; and (f) with respect to (a) through (e), such Entities' Related Parties.

84. "**Releasing Parties**" means collectively: (a) each Released Party; (b) each holder of a Claim that is given the opportunity to, but does not, opt-out of the Release provisions herein in accordance with this Plan; and (c) to the extent the Entities in clauses (a) and (b) of this definition may legally bind them to the releases herein, the Related Parties of such Entities in clauses (a) and (b).

85. "**Remaining Assets**" means the Liquidating Debtor's Assets on the Effective Date.

86. "**Representatives**" means, with respect to any Person, any current and former Affiliates, equity holders, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants,

investment bankers, consultants, representatives, and other professionals of such Person, in each case, in such capacity.

87. "**Safariland**" means Safariland, LLC.

88. "**Sale Closing Date**" means April 7, 2026.

89. "**Schedule of Assumed Executory Contracts and Unexpired Leases**" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtor on the Effective Date.

90. "**Schedules**" means the schedules of assets and liabilities and the statement of financial affairs Filed by the Debtor, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

91. "**Secured Claim**" means a Claim against the Debtor (other than Administrative Claims, DIP Claims, Priority Tax Claims, or Other Priority Claims), that is secured by a Lien on property in which the Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or 1129(b) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

92. "**Secured Lenders**" mean Main Street Mezzanine Fund, LP, Main Street Capital Corporation, and MSC Income Fund, Inc., as the lenders under the Prepetition Loan Agreement, and their successors and permitted assigns and any subsequent lender that becomes a party thereto in accordance with the terms thereof.

93. "**Secured Lender Deficiency Claim**" means any portion of the Secured Lender Claim exceeding the value of the Secured Lender's collateral.

94. "**Secured Lender Claim**" means the Secured Claim of the Secured Lenders set forth in proof of claim number 14.

95. "**Securities Act**" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

96. "**Solicitation Agent**" means Vartabedian Katz Hester & Haynes LLP.

97. "**Solicitation Order**" means one or more orders of the Bankruptcy Court approving the Disclosure Statement on a conditional basis as providing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code and establishing certain dates, deadlines, and procedures related to Confirmation of this Plan.

98. "**Tax**" means: (a) any net income, alternative or add-on minimum, gross income, gross receipts, gross margin, sales, use, ad valorem, value added, transfer, franchise, profits, license, withholding, payroll, employment, excise, severance, stamp, occupation, premium, property, environmental, escheat, unclaimed property or windfall, profits, custom, duty or other

tax, governmental fee or like assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other Person.

99. “**Unexpired Lease**” means a lease to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code or section 1123 of the Bankruptcy Code, as applicable.

100. “**Unimpaired**” means, when used in reference to a Claim, a Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

101. “**U.S. Trustee**” means the Office of the United States Trustee for the Southern District of Texas.

102. “**Voting Classes**” means the Classes of Claims entitled to vote on the Plan.

103. “**Voting Deadline**” means August 27, 2026, at 4:00 p.m., prevailing Central Time, which is the deadline for submitting ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code.

104. “**Watts Assets**” means, collectively, the Watts Patents and the Watts IP.

105. “**Watts Claim**” means the proof of claim for rejection damages in the amount of $1,432,174.54 filed by Randy Watts on the Debtor’s claims register as claim number 18, as may be amended, modified, or revised.

106. “**Watts IP**” means (a) all trademarks, service marks, trade dress, trade names, logos, corporate names, and domain names, and other similar designations of source or origin, together with the goodwill symbolized by any of the foregoing, including, but not limited to, the “TAC-STRAP” mark; (b) all copyrights and works of authorship (whether copyrightable or not), including computer programs, and rights in data and databases; (b) all trade secrets, know-how, and other confidential information; (d) all product designs, CAD and engineering files, molds, fixtures and jigs, tooling inserts, finished goods, work-in-progress, components, and subcomponents relating to the TacStrap Patent; (e) all claims and causes of action, including all rights to enforce the Acquired Patents, and all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, misappropriation, violation, breach, or default; and (f) all other rights, privileges, and protections of any kind accruing under any of the foregoing pursuant to any applicable law, treaty, or international convention throughout the world.

107. “**Watts Patents**” means all patents and patent applications conveyed pursuant to the Watts Patent Acquisition Agreement, including, without limitation, United States Patent No. 11,291,460, entitled “Holster and Tourniquet Device and Method of Use,” issued on April 5, 2022, and United States Patent Application Publication No. 2022/0175394 A1, entitled “Holster and Tourniquet Device and Method of Use,” filed on February 25, 2022, together with all

continuations, continuations-in-part, divisionals, extensions, substitutions, reissues, re-examinations, and renewals thereof.

108. "**Watts Patent Acquisition Agreement**" means that certain *Patent Acquisition Agreement*, dated as of July 26, 2022, between Randy Watts and Tedder Industries, LLC.

109. "**Watts Stipulation**" means the *Stipulation and Agreed Order Regarding the Rejection of the Watts Patent Agreement and Reassignment of Patent* (Docket No. 179), entered by the Court on May 22, 2026.

110. "**Wind Down**" means, following the Effective Date, the process to sell, abandon, Wind Down, dissolve, liquidate or distribute any Remaining Assets of the Debtor's Estate in accordance with the Plan.

111. "**Wind Down Amount**" means the amount of Cash determined by the Wind Down Officer, in consultation with the Secured Lenders, to be sufficient to fund the final winddown of the Liquidating Debtor as set forth in Article IV herein.

112. "**Wind Down Officer**" means Kevin Dooley who, in such capacity, is charged with overseeing the t the final winddown of the Liquidating Debtor as set forth in Article IV herein.

## B. Rules of Interpretation and Computation of Time

1. Rules of Interpretation

For purposes of this Plan and Disclosure Statement, unless otherwise provided herein: (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural; (b) any reference in this Plan and Disclosure Statement to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan and Disclosure Statement to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan and Disclosure Statement, the Confirmation Order or otherwise; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors, assigns and affiliates; (e) all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan and Disclosure Statement; (f) the words "herein," "hereunder" and "hereto" refer to this Plan and Disclosure Statement in its entirety rather than to a particular portion of this Plan and Disclosure Statement; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan and Disclosure Statement; (h) subject to the provisions of any contract, instrument, release, or other agreement or document entered into or delivered in connection with this Plan and Disclosure Statement, the rights and obligations arising under this Plan and Disclosure Statement shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code (other than subsection (5) thereof) shall apply to the extent not inconsistent with any other provision of this Section I.B.l.

2. Computation of Time

In computing any period of time prescribed or allowed by this Plan and Disclosure Statement, the provisions of Bankruptcy Rule 9006(a) shall apply.

3. Exhibits

All Exhibits, if any, are incorporated into and are a part of this Plan and Disclosure Statement as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtor. Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; or (b) on the Bankruptcy Court's ECF website at https://ecf.txsb.uscourts.gov/ (registration required). The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

4. Controlling Document

In the event of any inconsistency between this Plan and Disclosure Statement and any Exhibit or schedule, the provisions of this Plan and Disclosure Statement shall govern. In the event of any inconsistency between this Plan and Disclosure Statement and any document or agreement Filed in the Plan Supplement, such document or agreement shall control. In the event of any inconsistency among this Plan and Disclosure Statement, any document or agreement Filed in the Plan Supplement, and the Confirmation Order, the Confirmation Order shall control. For the avoidance of doubt, the Confirmation Order shall control above all other related documents.

## ARTICLE II
## DEBTOR'S HISTORY AND THE BANKRUPTCY CASE

### A. Debtor's History

1. Overview of the Debtor's Business

The Debtor is a Texas limited liability company with its principal place of business in Idaho. Main Street Equity Interests and MSC Equity Holdings LLC, which together hold the majority of the Debtor's equity interest, are subsidiaries of Main Street Capital Corporation.

As of the Petition Date, the Debtor operated a consumer-brand manufacturing business within the firearms and accessories market, specializing in American-made, injection-molded gun holsters. Its products are distributed through multiple sales channels including institutional purchasers, business-to-business partners, and direct-to-consumer platforms. The Debtor operated in the marketplace as Alien Gear Holsters.

Alien Gear Holsters was founded in 2010 by Thomas Tedder. After a poor experience with a purchased holster, Tedder designed his own. Starting as a small operation in a kitchen and shed, the company rapidly grew into a prominent brand in the firearms accessories industry. Known for its innovative hybrid leather-and-polymer holsters and modular designs, Alien Gear built its reputation on comfort, quality, and affordability for concealed carry users. Over time, the company

expanded its product offerings to include various carry styles and eventually supplied holsters to U.S. military branches, international militaries, defense organizations, and law enforcement agencies.

To maintain and grow its operations over the years, the Debtor took a $23.3 million secured loan from Main Street Capital Corporation, consisting of a $21 million term loan and a $2.3 million revolving line of credit.

2. Corporate Governance

As of the Petition date, the Debtor was governed by a board of three managers and the corporate members holding all of the Debtor's voting equity interest. The three managers are Jesse E. Morris, Todd A. Leitgeb, and Thomas Tedder. The three members are Main Street Equity Interests, Inc., MSC Equity Holdings, LLC, and TI Holdings, LLC. As mentioned above, the Main Street entities hold the majority of the Debtor's equity interest and are affiliated with the Debtor's Secured Lenders. A copy of the Debtor's organizational structure is set forth below.




3. The Debtor's Prepetition Capital Structure

As of the Petition Date, the Debtor had approximately $20.55 million in aggregate principal amount of funded debt obligations outstanding, consisting of the following:

| Prepetition Indebtedness | Principal Amount Outstanding | Lien Priority and Collateral |
|---|---|---|
| **Secured Term Loan** | $19,000,000.00 | Substantially all of the Debtor's assets |
| **Revolver** | $1,553,000.00 | Substantially all of the Debtor's assets |
| **Total** | $20,553,000.00 | |

On August 31, 2018, the Debtor, as borrower, entered into Prepetition Loan Agreement with Main Street Capital Corporation, as both the administrative agent and collateral agent and the Secured Lenders, providing for a senior secured term loan in an original aggregate principal amount of $20.5 million.

On October 11, 2018, the Debtor requested a new senior secured revolving line of credit of up to $1,500,000 (the "Revolver") pursuant to the first amendment to the Prepetition Loan Agreement. On August 30, 2021, the Debtor (a) borrowed an additional $500,000.00 of term loans under the Prepetition Loan Agreement and (b) received access to an additional $500,000 in commitments under the Revolver pursuant to the third amendment to the Prepetition Loan Agreement. On October 29, 2021, the Debtor received access to an additional $300,000 in commitments under the Revolver pursuant to the fourth amendment to the Loan Agreement. As of the Petition Date, including all outstanding and accrued interest, approximately $25.05 million of obligations under the Loan Agreement are outstanding, consisting of approximately $23.08 million in term loans and $1.97 million under the Revolver.

4. Material Pending Litigation

As of the Petition Date, the Debtor was subject to a lawsuit styled *Silverman v. Tedder Industries, LLC* (C.D. Cal. Case No. 24-cv-06989), (the "**California Litigation**") pending in the U.S. District Court for the Central District of California. The California Litigation was commenced by Arden Silverman d/b/a Capital Asset Protection (the "**Plaintiff**") and concerns an alleged breach of contract by the Debtor. On September 18, 2025, the district court issued a prejudgment writ of attachment (the "**Writ**"), authorizing the Plaintiff to attach certain property of the Debtor in the amount of $1,152,116.00. Thereafter, in October of 2025, the Plaintiff began attempting to execute the Writ by improperly serving several of the Debtor's larger customers and vendors, resulting in holds on the Debtor's accounts with those entities. Following the Petition Date, the Debtor reached out to Plaintiff's counsel, John Kalajian, to inform him of the commencement of the Chapter 11 Case and the imposition of the automatic stay. The Debtor informed Mr. Kalajian that the automatic stay imposed by section 362 of the Bankruptcy Code extended to the attachment of funds under the Writ and requested that Plaintiff release the Writ. On January 12, 2026, counsel for Plaintiff wrote a letter to the U.S. Marshal Service to terminate any and all attachments under the Writ while reserving Plaintiff's rights with respect thereto. Plaintiff and (presumably) related

parties have filed proofs of claim numbers 6 (amended), 7, 9 (amending 6), and 12 related to the California Litigation (the "**California Litigation Claim**").

5. Events Leading to the Chapter 11 Case

Despite promising product lines with significant name value in its marketplace, the Debtor's debt level proved unsustainable. The Debtor attempt to softly market the Company prepetition showed that the Debtor's debt level was likely far more than the value of its business. In this environment, the California Litigation became the proverbial straw.

The Company has never operated with large margins. The commencement of the California Litigation, the issuance of the Writ, and the resulting freeze on certain of the Debtor's accounts created an immediate overhang on the Company's liquidity as well as on the business generally that could not be resolved in the near term. Accordingly, the Debtor chose to commence this Chapter 11 Case to immediately pursue a sale process in an attempt to maximize the value of its intellectual property and other assets, including its trade name Alien Gear. Importantly, the Debtor had the support of its Secured Lenders and majority equity holders to pursue a sale transaction in the Chapter 11 Case.

## B. Main Chapter 11 Events

1. "First Day" and Material Orders

The following "first day" and material orders have been entered by the Bankruptcy Court in this Chapter 11 Case:

- Taxes Order: *Order (I) Authorizing Debtor to Pay Certain Prepetition Taxes and Fees and (II) Granting Related Relief* (Docket No. 24)*;*
- Wages Order: *Order (I) Authorizing the Debtor to (A) Pay Prepetition Wages, Compensation, Employee Benefits and Other Employee Obligations and (B) Continue Paying Compensation and Benefits Programs in the Ordinary Course of Business; (II) Authorizing All Banks to Honor Reimbursement of Employee Obligations; and (*III) *Granting Related Relief* (Docket No. 28)
- Customer Programs Order: *Order (A) Authorizing the Debtor to Maintain and Administer Its Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto and (B) For Related Relief* (Docket No. 31);
- Critical Vendors Order: *Final Order (I) Authorizing the Debtor to Pay Prepetition Claims of Critical Vendors, and (II) Granting Related Relief* (Docket No. 57);
- Utility Order: *Final Order (A) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, (B) Approving the Debtor's Proposed Adequate Assurance of Payment for Future Utility Services, (C) Approving the*

*Debtor's Proposed Procedures for Resolving Adequate Assurance Requests, and (B) For Related Relief* (Docket No. 59);

- Insurance Order: *Final Order (I) Authorizing the Debtor to (A) Maintain Insurance Coverage Obtained Prepetition and Pay Prepetition Obligations Related Thereto, (B) Renew, Amend, Supplement, Modify, Extend, Purchase, Cancel, and Enter Into New Insurance Policies, and (C) Continue to Pay Brokerage Fees, and (II) Granting Related Relief* (Docket No. 60);

- Cash Collateral Order: *Final Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Providing Adequate Protection to Agent; (III) Granting Liens and Providing Superpriority Administrative Expense Claims; (IV) Scheduling a Final Hearing; and [(V]) Granting Related Relief* (Docket No. 61);

- Cash Management Order: *Final Order Authorizing (I) Continued Use of Existing Cash Management System, (II) Maintenance of Existing Bank Accounts, (III) Continued Use of Existing Business Forms, and (V) Extending Time to Comply with Section 345(b) of the Bankruptcy Code* (Docket No. 70*);* and

- DIP Financing Order: *Order (I) Approving Postpetition Financing; and (II) Granting Liens and Providing Superpriority Administrative Expense* Status (Docket No. 89), pursuant to which the Debtor received access to a $700,000.00 DIP financing facility to fund the Chapter 11 Case.

- Rejection Order: *Order Granting Debtor's Emergency Motion for Entry of an Order (I) Approving Procedures for the Rejection of Executory Contracts and (II) Granting Related Relief* (Docket No. 166); and

- Exclusivity Order: *Order Extending the Debtor's Exclusive Period to File a Chapter 11 Plan and Solicit Acceptances Thereof* (Docket No. 173), extending the Debtor's exclusive plan filing period to July 6, 2026, and solicitation period to September 4, 2026.

2. Employment Applications

On January 7, 2026, the Debtor filed an application to retain Vartabedian Hester and Haynes LLP (n/k/a Vartabedian Katz Hester & Haynes LLP) as its restructuring counsel (Docket No. 50). The Court entered an order authorizing the retention on February 2, 2026 (Docket No. 105).

On January 14, 2026, the Debtor filed an application to employ Trinity River Advisors, LLC ("**TRA**") as its business broker to conduct its sale process (Docket No. 79). The Court entered an order authorizing the employment of TRA on February 6, 2026 (Docket No. 112).

3. Schedules and Statements

On January 23, 2026, the Debtor filed its *Schedules of Assets and Liabilities* and *Statements of Financial Affairs* (Docket Nos. 95 and 96). On February 9, 2026, the Debtor filed an amended *Schedule G: Executory Contracts and Unexpired Leases* (Docket No. 116).

4. Cash Collateral and DIP Order

On January 9, 2026, the Court entered the *Final Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Providing Adequate Protection to Agent; (III) Granting Liens and Providing Superpriority Administrative Expense Claims; (IV) Scheduling a Final Hearing; and [(V) ]Granting Related Relief* (Docket No. 61), authorizing for the Debtor's use of Cash Collateral (as defined in Section 363 of the Bankruptcy Code) pursuant to a budget approved by the Secured Lenders.

Shortly after the Petition Date, the Debtor began to experience significant liquidity constraints caused by, among other things, (a) delays in payments from certain of their customers, (b) holds on the Debtor's credit accounts placed by certain credit providers in response to the Debtor's chapter 11 filing; and (c) the outstanding Writ. The unfortunate timing of the withholding resulted in the Debtor's inability to meet its payroll obligations to its employees. Accordingly, the Debtor reached out to its Secured Lenders to negotiate an agreed DIP Facility and obtain access to a postpetition credit facility that would help stabilize the Debtor's operations in the near term and help smooth any future disruptions in the Debtor's receipt of its outstanding accounts receivable. The Secured Lenders agreed to provide the DIP Facility under the terms of the Debtor's Prepetition Loan Agreement. On January 20, 2026, the Court entered the DIP Order, which provides, among other things:

- authorization for the Debtor to borrow up to $700,000.00 under the DIP Facility on a final basis pursuant to the terms of the Debtor's Prepetition Loan Agreement;
- the grant to the DIP Lenders of valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined in the DIP Order), superior to any security, mortgage, or collateral interest or Lien or claim to any of the DIP Collateral, subject only to the Carve-Out (as defined in the DIP Order), in all DIP Collateral (as defined in the DIP Order); and
- the grant and approval of superpriority administrative expense claim status, pursuant to §§ 364(c)(1), 503(b)(1), and 507(b) of the Bankruptcy Code, to the DIP Lenders in respect of all DIP Obligations, subject to the Carve-Out.

5. Sale of Substantially All of the Debtor's Assets

The Debtor filed the Chapter 11 Case with the intent to run a comprehensive marketing and sale process for its business with the support of its Secured Lenders. Accordingly, shortly after the Petition Date, the Debtor employed TRA to manage the sale process. To commence the sale process, TRA worked with the Debtor's board of members and managers, the Secured Lenders,

and the Debtor's counsel to form a virtual data room of information for potential bidders and to draft a teaser and a confidential information memorandum to circulate to interested parties.

On January 27, 2026, the Debtor filed the *Debtor's Emergency Motion for Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling a Bid Deadline, Auction, and Sale Hearing and Approving the Form and Manner of Notice Thereof, (III) Approving Cure Procedures and the Form and Manner of Notice Thereof, (IV) Authorizing Designation of Stalking Horse Bidders, and (V) Granting Related Relief* (Docket No. 99), seeking to preserve its going concern value and to implement a value-maximizing going concern transaction that would preserve the Debtor's operations for the benefit of its employees, suppliers, and customers.

On February 4, 2026, the Court entered the O*rder (I) Approving Bidding Procedures, (II) Scheduling a Bid Deadline, Auction, and Sale Hearing and Approving the Form and Manner of Notice Thereof, (III) Approving Cure Procedures and the Form and Manner of Notice Thereof, (IV) Authorizing Designation of Stalking Horse Bidders, and (V) Granting Related Relief* (Docket No. 109), authorizing the Debtor to pursue a sale of substantially all of its assets, authorizing and approving procedures for the assumption or assumption and assignment of certain executory contracts in connection with a sale transaction, and granting related relief .

Throughout February and March, TRA worked closely with the Debtor's management and advisors to respond to inquiries from potential bidders and to facilitate access to the Debtor. At the request of potential bidders, TRA held approximately one hundred (100) meetings with potential bidders to answer questions, scheduled eight (8) meetings between potential bidders and the Debtor's management, and scheduled four (4) follow-on site visits to the Alien Gear Holster facility. Eventually TRA identified two (2) potential bidders that were interested in serving as the Debtor's stalking horse purchaser.

On March 17, 2026, the Debtor filed the *Notice of Designation of Stalking Horse Bidder* (Docket Nos. 126 (restricted) and 128), naming Safariland as the stalking horse bidder for substantially all of the Debtor's assets and attaching the proposed Asset Purchase Agreement as Exhibit B thereto.

On March 25, 2026, the Debtor filed the *Notice of Occurrence of Auction, Designation of Successful Bidder, and Designation of Backup Bidder* (Docket No. 134), which notice designated Safariland as the successful bidder for the Debtor's assets and attached as Exhibit A the *First Amended Asset Purchase Agreement*, by and between Safariland, LLC and Tedder Industries, LLC.

On April 1, 2026, the Court entered its *Order (I) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances Pursuant to §§ 363(b) and (f) of the Bankruptcy Code; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to § 365 of the Bankruptcy Code; and (III) Granting Related Relief* (Docket No. 156) (the "**Sale Order**"), approving the sale of substantially all of the Debtor's assets to Safariland pursuant to the terms of the Asset Purchase Agreement (together with all amendments, schedules, and exhibits thereto, the "**APA**") attached as Exhibit 1 thereto. The closing occurred on April 7, 2026. In connection with the closing, Safariland acquired substantially all of the Debtor's assets for a total purchase price of

approximately $10,300,000.00 in Cash, the assumption of the Assumed Liabilities (as defined in the APA), and the payment of any Closing Date Accounts Receivable (as defined in the APA).

Following the sale, Safariland is continuing to operate the Debtor's assets as a going concern. Safariland has continued the employment of the Debtor's former employees, negotiated with the Debtor's former vendors and suppliers, and assumed substantially all of the Debtor's executory contracts and paid in full all outstanding claims related thereto. Accordingly, as a result of the sale, the Debtor has minimal remaining general unsecured and administrative claims that will be administered through this Plan.

Additional information about the Debtor's sale process, timeline, and sale metrics can be found in the *Supplemental Declaration of Nicholas Foley in Support of the Sale of Substantially All of the Debtor's assets Pursuant to the Order (I) Approving Bidding Procedures, (II) Scheduling a Bid Deadline, Auction, and Sale Hearing and Approving the Form and Manner of Notice Thereof, (III) Approving Cure Procedures and the Form and Manner of Notice Thereof, (IV) Authorizing Designation of Stalking Horse Bidders, and (V) Granting Related Relief* (Docket No. 146).

6. Watts Stipulation

Prepetition, the Debtor entered into the Watts Patent Agreement, pursuant to which Randy Watts sold, assigned, transferred, and conveyed to the Debtor all of his rights, title, and interest in the Watts Assets. Among other things, the Watts Patent Agreement provided Watts with a reversionary interest in the Watts Patents if Tedder failed to make timely and proper payments to Watts pursuant the terms of the agreement.

Along with the Debtor's other assets, the Watts Assets were marketed as part of the Debtor's sale process. On February 11, 2026, the Debtor filed the (a) *Notice of Sale, Bidding Procedures, Potential Auction and Sale Hearing* (Docket No. 117) and the (ii) *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale* (Docket No. 118), listing the Watts Patent Acquisition Agreement as an executory contract that may be assumed and assigned by a purchaser.

On February 18, 2026, Watts filed the *Limited Objection and Response of Randy Watts to Debtor's Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts* (Docket No. 121), which, among other things, reserved Watts' right to have the Watts Patents conveyed to him upon the rejection of the Watts Patent Acquisition Agreement.

Safariland ultimately chose not to acquire the Watts Assets as part of the sale. Accordingly, Watts and the Debtor entered into negotiations regarding the Watts Stipulation. Among other things, the Watts Stipulation provided for the reassignment of the Watts Patents to Watts pursuant to the Plan. The Debtor also agreed to transfer the related Watts IP to Watts, in full and final satisfaction of the Watts Claim, in exchange for Watts agreement to support a Plan providing him such treatment.

Prior to entering into the Watts Stipulation, the Debtor determined, in an exercise of its business judgment, that the Watts IP held no value to the Debtor's estate or any other party without the right to use the Watts Patent, which use would require additional sunk costs. Among other

things, the Watts IP includes digital media as well as physical assets such as production and prototype molds and limited premade inventory. If the Debtor chose to destroy, rather than transfer, the Watts IP, that would result in additional, unnecessary costs to the Debtor's Estate. Given that the Watts Assets can only be monetized by Watts, the Debtor submits that the Watts IP has an effective book value for the Debtor of $0.00.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

All Claims and Interests, except for those Claims set forth in Section III.A below, are classified for voting and Distribution pursuant to this Plan and Disclosure Statement as set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims (including Professional Fee Claims and U.S. Trustee Fees), DIP Claims, and Priority Tax Claims are not classified herein. A Claim or Interest is classified in a particular Class only to the extent that such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any remainder of such Claim or Interest qualifies within the description of such other Classes.

### A. Unclassified Claims

1. Administrative Expense Claims

a. Except with respect to Professional Fee Claims, and DIP Claims, unless the Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment of such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (iii) the date on which an Allowed Administrative Expense Claim becomes payable under any agreement relating thereto, each Holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Administrative Expense Claim, Cash equal to the unpaid portion of such Allowed Administrative Expense Claim.

b. To the extent not already asserted in the Chapter 11 Case pursuant to a timely filed proof of Claim in accordance with the Bar Date Order, all requests for allowance and payment of Administrative Expense Claims (other than (i) Professional Fee Claims (such claims are subject to the Professional Fee Claims Bar Date), (ii) Claims asserted under section 503(b)(9) of the Bankruptcy Code (such Claims are subject to the General Bar Date), (iii) U.S. Trustee Fees, (iv) Administrative Expense Claims that have been Allowed on or before the Effective Date, and (v) Administrative Expense Claims that were already asserted in the Chapter 11 Case pursuant to a timely proof of Claim), must be filed and served on the Debtor or Liquidating Debtor, as applicable, and its counsel, so as to actually be received on or before the Administrative Expense Claims Bar Date. The notice of the occurrence of the Effective Date shall set forth the Administrative Expense Claims Bar Date and shall constitute notice thereof. For the avoidance of doubt, Holders of Administrative Expense Claims based on liabilities incurred by the Debtor in the ordinary course of business after the Petition Date and before the Sale Closing Date must file and serve a request for payment of such Administrative Expense Claim by the applicable Administrative Expense Claims Bar Date.

c. After notice and a hearing, the Allowed amounts, if any, of Administrative Expense Claims shall be determined by, and satisfied in accordance with, a Final Order.

d. Holders of Administrative Expense Claims (other than (i) Professional Fee Claims, (ii) Claims asserted under section 503(b)(9) of the Bankruptcy Code, (iii) U.S. Trustee Fees, (iv) Administrative Expense Claims that have been Allowed on or before the Effective Date, and (v) Administrative Expense Claims that were already asserted in the Chapter 11 Case pursuant to a timely filed proof of Claim), that do not file and serve a request for allowance and payment of an Administrative Expense Claim by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Expense Claims against the Debtor or its Estate, and any Administrative Expense Claims shall be deemed Disallowed as of the Effective Date without the need for any notices, objection, or other action from the Debtor or any action or approval of the Bankruptcy Court.

2. DIP Claims

On the Effective Date, all DIP Claims, if any, shall be deemed satisfied based on the treatment of the Allowed Secured Lender Claim.

3. Priority Tax Claims

Unless the Holder of an Allowed Priority Tax Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Priority Tax Claims, either (a) payment in full in Cash, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, and (iii) the date such Allowed Priority Tax Claim becomes payable under applicable non-bankruptcy law or (b) payment upon such other terms as agreed between the Debtor and each Holder of such Allowed Priority Tax Claim.

4. Professional Fee Claims

a. All applications for allowance and payment of Professional Fee Claims by Professionals for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed on or before the Professional Fee Claims Bar Date. If an application for a Professional Fee Claim is not filed by the Professional Fee Claims Bar Date, such Professional Fee Claim shall be deemed waived, and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of the occurrence of the Effective Date shall set forth the Professional Fee Claims Bar Date and shall constitute notice thereof. Objections to any Professional Fee Claim must be Filed and served on the Liquidating Debtor and the applicable Professional within twenty-one (21) days after service of the applicable final application for allowance and payment of Professional Fee Claims.

b. No later than five (5) Business Days prior to the anticipated Effective Date Professionals asserting a Professional Fee Claim shall deliver to the Debtor their estimates for purposes of the Debtor computing the Professional Fee Reserve Amount; *provided*, *that*, for the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with

the Bankruptcy Court; *provided*, *further*, *that,* if a Professional does not provide an estimate, the Debtor shall estimate the unpaid and unbilled fees and expenses of such Professional.

c. Prior to or on the Effective Date, the Debtor shall establish the Professional Fee Escrow Account and fund such account with Cash, consisting of the Secured Lenders' cash collateral, equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust for the benefit of the Professionals to pay Allowed Professional Fee Claims. Such funds shall continue to be encumbered by the Secured Lenders' Liens until they are paid to satisfy Court-approved Professional Fee Claims; *provided*, *that* any amounts that are not used to satisfy Court-approved Professional Fee Claims shall be paid to the Secured Lenders, without any further order or action of the Bankruptcy Court, only after all Allowed Professional Fee Claims have been paid in full.

d. Unless otherwise agreed to (i) by the Debtor and the Professional prior to the Effective Date or (ii) by the Liquidating Debtor and the Professional after the Effective Date, the amount of Professional Fee Claims owing to such Professional that are Allowed by Final Order shall be paid in full in Cash by the Debtor or Liquidating Debtor, as applicable, as soon as reasonably practicable after its Professional Fee Claims are Allowed by order of the Bankruptcy Court. The Professional Fee Claims shall be paid (i) first, by application of any retainer monies held by such Professional, and (ii) second, once such retainer balance is exhausted, the Debtor or Liquidating Debtor shall pay such Professional the remaining balance of its Allowed Professional Fee Claim in Cash from the Professional Fee Escrow Account.

e. For the avoidance of doubt, no fee applications will be required in respect of services performed by Professionals on and after the Effective Date. Except as otherwise specifically provided in this Plan, from and after the Effective Date, the Liquidating Debtor shall, as part of the Wind Down of its Estate and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to this Chapter 11 Case that are incurred after the Effective Date. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention of compensation for services rendered after such date shall terminate, and the Liquidating Debtor may employ and pay any Professional to facilitate the Liquidating Transactions without any further notice to or action, order, or approval of the Bankruptcy Court.

5. Classification General

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests are classified for the purposes of voting and Distribution pursuant to this Plan, as set forth herein. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such other Class. Except as otherwise specifically provided for herein, the Confirmation Order or any other Final Order of the Bankruptcy Court, or required by applicable bankruptcy law, in no event shall the aggregate value of all property received or retained under the Plan on account of an Allowed Claim exceed 100% of the underlying Allowed Claim.

6. Summary of Classification and Projected Recoveries

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by this Plan, (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed or deemed to accept or reject this Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section III.A.6.

| Class | Designation | Impaired | Entitled to Vote | Estimated Amount of Claims[1] | Projected Recovery |
|---|---|---|---|---|---|
| Class 1 | Other Priority Claims | No | No (Presumed to Accept) | $12,231.00 | 100% |
| Class 2 | Secured Lender Claim | Yes | Yes[2] | $25.05 million | 45% |
| Class 3 | General Unsecured Claims | Yes | Yes | $407,550-$1,534,915[3] | 6.5%-24.5%[4] |
| Class 4 | Watts Claim | Yes | Yes | $1.43 million | N/A[5] |

[1] Disclosure is based upon scheduled and Filed claims, with lower end of range representing total of Claims that are not listed in the Schedules as contingent, unliquidated, or disputed and high end of range based on total of all unpaid Claims in the relevant Schedules. The Debtor reserves all objections to any Filed or scheduled Claims.

[2] Class 2 consists of claims held by the Debtor's Secured Lenders, which entities constitute "insiders" (as such term is defined in 11 U.S.C. § 101(31)) of the Debtor whose vote may not be counted for the purposes of determining whether a class of claims has accepted the Plan pursuant to section 1129(a)(10).

[3] For the avoidance of doubt, Class 3 General Unsecured Claims includes the California Litigation Claim.

[4] The ultimate recovery for General Unsecured Creditors is dependent on the Debtors ability to settle disputed and unliquidated claims accounted for in this Class. Additionally, the estimated amount of General Unsecured Claims may increase if additional rejection damages claims are filed pursuant to the Plan or another Order of the Court.

[5] As set forth more fully above, the Watts IP has no value to the Debtor without the use of the Watts Patents and only represents a continuing cost to the Estate for storage or destruction. Additionally, pursuant to the Watts Patent Acquisition Agreement, the Debtor was required to transfer the Watts Patents back to Watts. Accordingly, the Debtor has not attributed a value to the Watts Assets herein. Watts ability to monetize the Watts Assets will depend on his own ability to market the assets or will require Watts to find another commercial partner.

| Class | Designation | Impaired | Entitled to Vote | Estimated Amount of Claims[1] | Projected Recovery |
|---|---|---|---|---|---|
| Class 5 | Existing Interests | No | No (Presumed to Accept) | N/A | N/A[6] |

**B. Treatment of Claims and Interests**

1. Other Priority Claims (Class 1)

a. *Classification.* Class 1 consists of all Other Priority Claims against the Debtor.

b. *Treatment.* Unless the Holder of an Allowed Other Priority Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Other Priority Claim Cash in an amount equal to the Allowed amount of such Allowed Other Priority Claim as soon as reasonably practicable after the latest of (A) the Effective Date, (B) the date that such Claim becomes an Allowed Other Priority Claim, and (C) a date agreed to by the Holder of such Allowed Other Priority Claim.

c. *Voting*. Claims in Class 1 are Unimpaired. Each Holder of an Allowed Claim in Class 1 is conclusively presumed to have accepted this Plan and is, therefore, not entitled to vote on this Plan.

2. Secured Lender Claim (Class 2)

a. *Classification.* Class 2 consists of the Secured Lender Claim.

b. *Treatment.* The Secured Lender Claim shall be Allowed pursuant to this Plan in the total amount of $25,050,000.00. Each Holder of the Allowed Secured Lender Claim shall receive the following on account of its Allowed Secured Lender Claim:

i. On the Effective Date, all Cash remaining in the Debtor's Estate after payment of Administrative Expense Claims (including Allowed Professional Fee Claims), Allowed Priority Tax Claims, Allowed Other Priority Claims, funding the GUC Pool, and funding the Wind Down Amount; and

[6] Existing Interests are unaltered by the Plan.

ii. Thereafter, any Remaining Assets after payments made pursuant to 2.b.i above and the completion of the Wind Down pursuant to this Plan.

For the avoidance of doubt, the Secured Lenders waive the right to receive any recovery from the GUC Pool under this Plan.

c. *Voting*. Claims in Class 2 are Impaired. Each Holder of an Allowed Claim in Class 2 is entitled to vote on this Plan.

3. General Unsecured Claims (Class 3)

a. *Classification*. Class 3 consists of all General Unsecured Claims.

b. *Treatment*. On the Effective Date or as soon as practicable thereafter, except to the extent such Holder agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for such Allowed General Unsecured Claim its Pro Rata Share of the GUC Pool.

c. *Voting*. Claims in Class 3 are Impaired. Each Holder of an Allowed Claim in Class 3 is entitled to vote on this Plan.

4. Watts Claim (Class 4)

a. *Classification*. Class 4 consists of the Watts Claim.

b. *Treatment*. The Watts Claim shall be Allowed. On the Effective Date or as soon as practicable thereafter, the Holder of an Allowed Watts Claim shall receive, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for such Allowed Watts Claim, the Watts Assets.

c. *Voting*. Claims in Class 4 are Impaired. Each Holder of an Allowed Claim in Class 4 is entitled to vote on this Plan.

5. Existing Interests (Class 5)

a. *Classification*. Class 5 consists of all Existing Interests.

b. *Treatment*. The legal, equitable, and contractual rights of the Holders of Existing Interests are unaltered by the Plan and will remain effective and outstanding for administrative convenience and shall be owned and held by the same applicable Entity that held and/or owed such Existing Interests immediately prior to the Effective Date. No property will be distributed to the Holders of Existing Interests on account of such interests.

c. *Voting*. Interests in Class 5 are Unimpaired and conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Accordingly, the Holders of Existing Interests in the Debtor are not entitled to vote on this Plan.

### C. Reservation of Rights Regarding Claims

Except as otherwise provided in this Plan or in other Final Orders of the Bankruptcy Court, nothing shall affect the rights or defenses of the Debtor or Liquidating Debtor, as applicable, whether legal or equitable, with respect to any Claim, including all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

### D. Subordination of Claims

Except as expressly provided herein, the Allowance, classification, and treatment of all Allowed Claims and Interests take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor and the Liquidating Debtor, as applicable, reserve the right to classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### E. Postpetition Interest on Claims

Except as required by applicable bankruptcy law, postpetition interest shall not accrue or be payable on account of any Claim.

### F. Insurance

Notwithstanding anything to the contrary herein, if applicable, if any Allowed Claim is covered by an insurance policy of the Debtor, such Claim shall first be paid from proceeds of such insurance policy, with the balance, if any, treated in accordance with the provisions of this Plan governing the Class applicable to such Claim.

### G. Confirmation Without Acceptance by All Impaired Classes

The Debtor requests Confirmation under section 1129(b) of the Bankruptcy Code if any Impaired Class does not accept or is deemed not to accept this Plan pursuant to section 1126 of the Bankruptcy Code. This Plan and Disclosure Statement shall constitute a motion for such relief.

### H. Elimination of Classes

To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**I. Class Without Voting Claim Holders**

If Holders of Claims in a particular Impaired Class of Claims are entitled to vote to accept or reject this Plan, but no Holders of Claims in such Impaired Class of Claims vote to accept or reject this Plan, then such Class of Claims shall be deemed to have accepted this Plan.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A. Vesting of Assets and Causes of Action in the Liquidating Debtor; Continued Corporate Existence**

On the Effective Date, except as otherwise provided in the Plan, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all Remaining Assets of the Debtor's Estate, including any Estate Causes of Action shall vest in the Liquidating Debtor free and clear of all Claims, interest, charges, Liens, or other encumbrances, subject to the treatment of the Secured Lender's Claims under the Plan. Except as otherwise provided in the Plan, the Debtor, as Liquidating Debtor, shall continue to exist on and after the Effective Date as a separate legal entity with all of the powers available to such legal entity under applicable law and pursuant to its organizational documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with applicable law.

On and after the Effective Date, the Liquidating Debtor may take any action, including, without limitation, the use, acquisition, sale, lease and disposition of property; and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein. On the Effective Date, the Liquidating Debtor is deemed to have satisfied all liabilities for purposes of dissolution under state law. On and after the Effective Date, the Liquidating Debtor shall be authorized to Wind Down its remaining operations, dissolve under state law, and to dispose of any Remaining Assets, without supervision or approval by the Bankruptcy Court and free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules. The Wind Down Officer is authorized to file all documents necessary to effectuate the dissolution of the Liquidating Debtor.

**B. Wind Down Officer**

1. *Appointment.* The Wind Down Officer's retention shall commence on the Effective Date and shall continue until: (a) the Bankruptcy Court enters an order closing the Chapter 11 Case, unless otherwise set forth in such order; (b) the Bankruptcy Court enters an order removing the Wind Down Officer for cause; or (c) the Wind Down Officer voluntarily resigns, upon notice filed with the Bankruptcy Court, and a successor Wind Down Officer is appointed in accordance with the Plan. The Wind Down Officer shall be the sole officer, member, and manager of the Liquidating Debtor.

2. *Authority*. The Wind Down Officer shall have the authority and right on behalf of the Debtor, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

a. except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process in accordance with the terms of this Plan, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtor;

b. make Distributions to holders of Allowed Claims in accordance with this Plan;

c. exercise his reasonable business judgment to direct and control the wind down under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

d. prepare, file, and prosecute any necessary filings or pleadings with the Bankruptcy Court to carry out the duties of the Wind Down Officer as described herein;

e. other than any Causes of Action released by the Debtors pursuant to the Plan or otherwise, prosecute all Causes of Action on behalf of the Debtors, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Wind Down Officer may determine is in the best interests of the Debtor and its Estate;

f. retain professionals to assist in performing its duties under the Plan;

g. maintain the books and records and accounts of the Debtor;

h. incur and pay reasonable and necessary expenses in connection with the performance of duties under this Plan, including the reasonable fees and expenses of professionals retained by the Wind Down Officer;

i. administer the Debtor's tax obligations, including (x) filing tax returns and paying tax obligations, (y) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Commencement Date through the liquidation of such Debtor as determined under applicable tax laws, and (z) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

j. prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtor that are required hereunder, by any Governmental Unit, or applicable law;

k. pay statutory fees in accordance with Section X.A of the Plan;

l. perform other duties and functions that are consistent with the implementation of the Plan; and

m. close the Chapter 11 Case.

3. *Indemnification*. The Liquidating Debtor and its Estate shall indemnify and hold harmless the Wind Down Officer solely in his capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the Wind Down Officer's bad faith, gross negligence, willful misconduct or criminal conduct.

## C. Wind Down

After the Effective Date, pursuant to the Plan, the Wind Down Officer shall effectuate the Wind Down without any further approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

After the Effective Date, the Wind Down Officer shall, subject to applicable non-bankruptcy law and consistent with the implementation of the Plan, cause the Liquidating Debtor to merge, dissolve, liquidate, or take such other similar action with respect to the Liquidating Debtor (including the cancellation of all Existing Interests each in accordance with the terms of the Plan) and complete the winding up of such Estate as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Estate or its shareholders or members, as applicable, or any payments to be made in connection therewith subject to the filing of a certificate of cancellation, a certificate of dissolution, or such other instrument as may be necessary or appropriate under applicable law to effectuate the dissolution of the Debtor with the appropriate Governmental Unit. The Wind Down Officer may, to the extent required by applicable non-bankruptcy law, maintain the Liquidating Debtor as a corporate entity in good standing until such time as the Liquidating Debtor is dissolved or merged out of existence in accordance with the Plan. After all Disputed Claims have been resolved (or appropriate amounts reserved), and all distributions required to be made by the Debtor under the Plan have been made, the Wind Down Officer shall expeditiously dissolve the Liquidation Debtor.

The Debtor, Liquidating Debtor, Wind Down Officer, as applicable, may, in their discretion, take such action as permitted by applicable law, including those the Debtor, Liquidating Debtor, or Wind Down Officer, as applicable, determine are reasonable, necessary or appropriate to effectuate the Plan, including: (a) the execution and delivery of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, transition services, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates of cancellation, certificates of dissolution, or such other instruments for merger, consolidation, or arrangement pursuant to applicable state or provincial law; (d) such other transactions that are required to effectuate this Plan; (e) rejection or assumption, as applicable, of Executory Contracts and

Unexpired Leases; and (f) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with this Plan, and such action and documents are deemed to require no further action or approval (other than any requisite filings required under the applicable state, provincial, and federal or foreign law).

On and after the Effective Date, except as otherwise provided in this Plan, the Liquidating Debtor may use, acquire, or dispose of property and maintain, prosecute, abandon, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by this Plan or the Confirmation Order, as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments, and other materials comprising the Plan Supplement.

At the conclusion of the Wind Down any residual Wind Down Amount shall be treated as a Remaining Asset to be distributed to the Secured Lenders on account of their Allowed Secured Lender Claim until such claim is paid in full and, thereafter, transferred to the GUC Pool.

### D. Cancellation of Existing Securities Agreements

Except to the extent necessary to evidence the Holders right to receive payment pursuant to the terms of this Plan, other than the Prepetition Loan Agreement which shall remain in full force and effect, all existing security interests and/or Liens and/or any other side letter, fee letter, credit document, agreement, and other document shall be automatically released, discharged, terminated, and of no further force and effect as of the Effective Date, and the obligations of the Debtor thereunder or in any way related thereto shall be fully released, terminated, extinguished, and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or any requirement of further action, vote, or other approval or authorization by any Person. The Holders of or parties to such instruments, agreements, side letters, fee letters, and other documents shall retain their rights vis-à-vis each other but shall have no rights against the Debtor or the Liquidating Debtor, as applicable, arising from or relating to such instruments, certificates, agreements, side letters, fee letters, and other documents or the cancellation thereof, except the rights provided pursuant to this Plan and the Confirmation Order.

### E. Corporate and Organizational Existence

Except as otherwise provided in this Plan, until it elects to dissolve under applicable state law (which it may do at its election without further order of the Court after the Plan is consummated), the Debtor shall continue to exist as of the Effective Date as a separate corporate Entity, the Liquidating Debtor, with all the powers of a corporation under the applicable law in the jurisdiction where the Debtor is incorporated or formed and under the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by this Plan or otherwise. To the extent such documents are amended on or prior to the Effective Date, such documents are deemed to be amended pursuant to the Plan without any further notice to or action, order, or approval of the Bankruptcy Court.

### F. Managers, Directors and Officers of Liquidating Debtor; Corporate Governance

On the Effective Date, (a) the members of the board of members and managers of the Debtor existing prior to the Effective Date shall be relieved of any and all duties with the respect to the Debtor and shall be deemed to have resigned without the requirement of having to take any further action and (b) the Wind Down Officer shall be the sole officer, member, or manager, as applicable, of the Liquidating Debtor in accordance with the Liquidating Debtor's organizational documents and any applicable Wind Down agreements that are executed pursuant to this Plan without the requirement of having to take any further action.

### G. Corporate Action

Each of the matters provided for under this Plan involving the company structure of the Liquidating Debtor and any corporate action to be taken by or required of the Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by partners, members, creditors, directors, or managers of the Debtor. On or (as applicable) before the Effective Date, the manager of the Liquidating Debtor shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, and instruments contemplated by this Plan (or necessary or desirable to effectuate the liquidation contemplated hereunder) in the name of and on behalf of the Debtor. All counterparties to any documents described in this Plan are authorized to and may execute any such documents as may be required or provided by such documents without further order of the Bankruptcy Court. The authorizations and approvals contemplated by this Section IV.G. shall be effective notwithstanding any requirements under nonbankruptcy law.

### H. Release of Liens

Except for the Liens held by the Secured Lenders or as otherwise specifically provided in this Plan or any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests, shall revert to the Liquidating Debtor, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtor, or the Liquidating Debtor.

### I. Exemption from Certain Transfer Taxes and Recording Fees

To the maximum extent provided by section 1146(a) of the Bankruptcy Code: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or

governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### J. Further Authorization

The Debtor, or, after the Effective Date, the Liquidating Debtor, as applicable, shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

## ARTICLE V
## DISTRIBUTIONS

### A. Distributions Generally

Except as otherwise provided herein, the Disbursing Agent shall make all Plan distributions on behalf of the Debtor in accordance with this Article V and other governing terms of this Plan.

### B. No Postpetition or Default Interest on Claims

Unless required by the Bankruptcy Code, postpetition and/or default interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to (a) interest accruing on such Claim on or after the Petition Date on any such Claim or (b) interest at the contract default rate, as applicable.

### C. Sources of Cash for Distributions and Operations.

All Cash necessary for the Debtor to make payments required by this Plan and for the claims reconciliation process shall be obtained from the Debtor's Cash on hand.

### D. Date of Distributions

Unless otherwise provided in this Plan, any distributions and deliveries to be made under this Plan shall be made on the Effective Date or as soon thereafter as is practicable; provided that the Liquidating Debtor may implement subsequent distribution dates to the extent it determines them to be necessary and appropriate.

### E. Distribution Record Date

As of the close of business on the Distribution Record Date, the various lists of Holders of Claims in each Class, as maintained by the Debtor, shall be deemed closed, and there shall be no further changes in the record Holders of any Claims after the Distribution Record Date. Neither the Debtor nor the Liquidating Debtor, as applicable, shall have any obligation to recognize any transfer of a Claim occurring after the close of business on the Distribution Record Date.

Case 25-90805 Document 194 Filed in TXSB on 07/27/26 Page 44 of 76

**F. Disbursing Agent**

All distributions under this Plan shall be made by the Disbursing Agent on or after the Effective Date. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties. The Debtor and Liquidating Debtor, as applicable, shall use all commercially reasonable efforts to provide the Disbursing Agent with the amounts of Claims and the identities and addresses of Holders of Claims, in each case, as set forth in the Debtor's books and records.

**G. Delivery of Distributions**

The Disbursing Agent will issue or cause to be issued the applicable consideration under this Plan and, subject to Bankruptcy Rule 9010, will make all distributions as and when required by this Plan to the address of the Holder of such Claim on the books and records of the Debtor or the address in any written notice of address change delivered to the Debtor, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001.

**H. Undeliverable Distributions and Unclaimed Property**

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current addresses of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code upon the earlier of (x) the expiration of six (6) months from the date on which such distribution was attempted to be made and (y) the final dissolution of the Liquidating Debtor; provided, further, that the Disbursing Agent shall use reasonable efforts to locate a Holder if any distribution is returned as undeliverable. After such date, all unclaimed property or interests in property shall transfer to the Liquidating Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandonment, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

**I. Manner of Payment Under Plan**

Except as specifically provided herein, at the option of the Debtor or Liquidating Debtor, as applicable, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor or Liquidating Debtor, as applicable.

**J. Time Bar to Cash Payments**

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the Liquidating Debtor, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for re-issuance of any check shall be made to the Liquidating Debtor by the holder of the Allowed Claim to whom such check was originally issued

### K. Minimum Distributions

If any final distribution under the Plan to the Holder of an Allowed Claim would be less than US $50.00, the Disbursing Agent may cancel such distribution which shall irrevocably revert to the Liquidating Debtor automatically and without need for a further order by the Bankruptcy Court notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary, and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

### L. No Distribution in Excess of Amount of Allowed Claim

Notwithstanding anything to the contrary in this Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan distributions in excess of the Allowed amount of such Claim.

### M. Allocation of Distributions Between Principal and Interest

Except as otherwise provided herein to the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount (as determined for federal income tax purposes) of the Claim and then to accrued but unpaid interest.

### N. Setoffs and Recoupments

The Liquidating Debtor or its designee as instructed by the Liquidating Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, offset or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim any and all claims, rights, and Causes of Action that the Liquidating Debtor or its successors may hold against the Holder of such Allowed Claim after the Effective Date to the extent that such setoff or recoupment is either (a) agreed in amount among the Liquidating Debtor and the Holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction.

### O. Withholding and Reporting Requirements

1. In connection with this Plan and all instruments issued in connection therewith and distributed thereon, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under this Plan shall be subject to any such withholding and reporting requirements. In the case of a non-Cash distribution, if any, that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and sell such withheld property to generate the Cash necessary to pay over the withholding tax. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

2. Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental

Unit, including income, withholding, and other tax obligations, on account of such distribution. The Disbursing Agent has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations.

3. As a condition of making any distribution under the Plan, each Person and Entity holding an Allowed Claim is required to provide any information necessary in writing, including returning W-8 or W-9 statements, as applicable, to effect the necessary information reporting and withholding of applicable taxes with respect to distributions to be made under the Plan as the Disbursing Agent may request. The Disbursing Agent shall withhold any distributions to a Holder of an Allowed Claim who fails to provide tax identification or social security information within the timeframe requested in writing by the Disbursing Agent to such Holder of an Allowed Claim, which timeframe shall not be less than 30 days. Any Distribution that would otherwise be made to any Holder of an Allowed Claim that fails to timely respond to the Disbursing Agent with the information required by this Section V.O. shall be treated as an undeliverable or unclaimed distribution pursuant to Section V.H. hereunder.

**P. Claims Paid or Payable by Third Parties**

4. *Claims Paid by Third Parties.* The Liquidating Debtor shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not the Liquidating Debtor. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Liquidating Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Liquidating Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan.

5. *Claims Payable by Third Parties*. Except as otherwise provided in this Plan, (a) no distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (b) to the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

6. *Applicability of Insurance Proceeds*. Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers.

## ARTICLE VI
## PROCEDURES FOR DISPUTED CLAIMS

### A. Allowance of Claims

On and after the Effective Date, the Liquidating Debtor shall have and retain any and all rights and defenses the Debtor had with respect to any Claim, including, but not limited to, any Administrative Expense Claim, immediately before the Effective Date. Except as expressly provided in this Plan or in any order entered in this Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in this Chapter 11 Case allowing such Claim.

### B. Objections to Claims

1. *Authority*. On and after the Effective Date, the Liquidating Debtor shall have sole authority to settle, compromise, litigate to judgment, or file objections to any Claim, including, but not limited to, any Administrative Expense Claim, and to withdraw any objections to any Claim, including, but not limited to, any Administrative Expense Claim that are pending as of the Effective Date. Except as set forth above, on and after the Effective Date, the Liquidating Debtor also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

2. *Objection Deadline*. As soon as practicable, but no later than the Claims Objection Deadline, the Liquidating Debtor may file objections with the Bankruptcy Court and serve such objections on the Holders of the Claims to which such objections are made. Nothing contained herein, however, shall limit the right of the Liquidating Debtor to object to Claims, if any, filed or amended after the Claims Objection Deadline. The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Liquidating Debtor.

### C. Estimation of Claims

The Liquidating Debtor, may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**D. No Distributions Pending Allowance**

If an objection to a Claim is filed in accordance with the terms of this Plan, no payment or distribution provided under this Plan shall be made on account of any disputed portion of such Claim.

**E. Resolution of Claims**

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims and Disputed Claims.

**F. Disallowed Claims**

All Claims held by Persons or Entities against whom or which the Debtor has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, 550 and/or 724 of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan; provided, Claims that are deemed Disallowed pursuant to this Section VI.F shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order and any sums due to the Debtor from such Person or Entity have been turned over or paid to the Debtor or Liquidating Debtor, as applicable.

Except as provided herein or otherwise agreed by the Debtor or Liquidating Debtor, any and all Proofs of Claim filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims or Interests, unless on or before the Confirmation Hearing such late Claim or Interest has been deemed timely filed by a Final Order.

**G. Amendments to Claims or Interests**

On or after the Effective Date, a Claim or Interest may not be filed or amended without the prior authorization of the Bankruptcy Court or the Liquidating Debtor and any such new or amended Claim or Interest filed without such authorization shall be deemed disallowed in full and expunged without any further action.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A. Assumption and Rejection of Executory Contracts and Unexpired Leases**

1. Except as otherwise provided in this Plan, all Executory Contracts and Unexpired Leases of the Debtor shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) was previously assumed or rejected by the Debtor, pursuant to the Sale Order or other Final Order of the Bankruptcy Court, (b) previously expired or terminated pursuant to its own

terms or by agreement of the parties thereto, (c) is the subject of a motion to reject filed by the Debtor on or before the Confirmation Date, or (d) is specifically designated by the Debtor as a contract or lease to be assumed on the Schedule of Assumed Executory Contracts and Unexpired Leases. Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of such Executory Contracts and Unexpired Leases as set forth in this Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts and Unexpired Leases in this Plan will be effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to this Plan, or by Bankruptcy Court order, will transfer to and be fully enforceable by the Liquidating Debtor or its assignees in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. Notwithstanding the foregoing paragraph or anything to the contrary herein, the Debtor reserves the right to supplement the Schedule of Assumed Executory Contracts and Unexpired Leases prior to the Effective Date.

2. With respect to the Assumed Contracts, subject to the payment of any applicable cure costs, any provision in any such agreement that:

a. prohibits, restricts, or conditions the assumption and/or assignment, or purports to prohibit, restrict, or condition the assumption and/or assignment (including any “change of control” provision) of such agreement or allows any party to such agreement to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assumption and/or assignment of such agreement constitutes an unenforceable anti-assignment and/or discrimination provision and is void and of no force and effect.

b. provides for modification, breach, or termination, or deemed modification, breach, or termination on account of or related to any of the following: (A) the commencement or continuation of the Chapter 11 Case, (B) the insolvency or financial condition of the Debtor at any time, (C) the Debtor’s assumption and/or assignment of such agreement, (D) a change of control or similar occurrence, or (E) the consummation of this Plan, such provision is modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition assumption and/or assignment, to modify, terminate, or declare a breach or default under such agreement, or to exercise any other breach- or default-related rights or remedies with respect thereto, including any provision that purports to allow the non-Debtor party thereto to terminate or recapture such agreement, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.

3. Upon the Debtor’s assumption of an Executory Contract or Unexpired Lease, as of the Effective Date pursuant to this Plan, no default or other unperformed obligations of the Debtor arising on or prior to the Effective Date shall exist, and each non-Debtor party is forever barred, estopped, and permanently enjoined from (a) declaring a breach or default under such agreement for any act or omission occurring on or prior to the Effective Date, (b) raising or asserting against the Debtor, the Estate or the Liquidating Debtor, or the assets or property of any of them, any fee,

default, termination, breach, Cause of Action, or condition arising under or related to the agreement based upon a fact or circumstance that occurred on or prior to the Effective Date, or (c) taking any other action as a result of the Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the agreement. Each non-Debtor party to such an agreement is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtor or the Liquidating Debtor, or the assets or property of any of them, any breach, default, or Cause of Action arising out of any indemnity or other obligation or warranties for acts, omissions, or occurrences arising or existing on or prior to the Effective Date and (ii) imposing or charging any rent accelerations, assignment fees, increases, or any other fees or charges as a result of assumption of the agreement.

4. Any Person or Entity that may have had the right to consent to the assumption and/or assignment of an Executory Contract or Unexpired Lease has consented to such assumption and/or assignment for purposes of section 365 of the Bankruptcy Code if such Person or Entity failed to object timely to the assumption of such agreement.

## B. Cure of Defaults Under Assumed Contracts

1. Any monetary defaults under each Assumed Contract shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Assumed Contracts may otherwise agree. In the event of a dispute regarding (a) the amount of any payments to cure such a default, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. Any objection by a contract or lease counterparty to a proposed assumption or related Cure Amount must be filed and served in accordance with the Solicitation Order. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Amount shall be deemed to have assented to such assumption or Cure Amount.

2. Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction or any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition of other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged without further notice to or action, order, or approval of the Bankruptcy Court.

## C. Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtor's Executory Contracts and Unexpired Leases pursuant to this Plan must be filed no later than 5:00 p.m. (prevailing Central Time) on the date that is thirty (30) days after the Effective Date. Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases that are not timely filed shall be Disallowed

automatically, forever barred from assertion, and shall not be enforceable against the Debtor without the need for any objection by the Debtor or further notice to or action, order, or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtor's Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of this Plan for such Claims.

### D. Contracts and Leases Entered Into After the Petition Date

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, shall be performed by the Debtor or Liquidating Debtor, as applicable, liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

### E. Insurance Policies

For the avoidance of doubt and notwithstanding anything in the Plan to the contrary, all of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, including any indemnification obligations thereunder or under separate indemnification agreements, including with the Debtor's members, managers, and officers, are treated as, and deemed to be, Executory Contracts under the Plan. Except as otherwise set forth in this Plan or in the Plan Supplement, on the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Liquidating Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

### F. Reservation of Rights

Nothing contained in this Plan shall constitute an admission by the Debtor or the Liquidating Debtor that any particular contract is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A. Conditions Precedent to the Effective Date

The occurrence of the Effective Date shall be subject to the following condition precedent: the Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall not have been reversed, stayed, modified, or vacated on appeal.

### B. Notice of Occurrence of Effective Date

As soon as practicable after the Effective Date, the Debtor shall file a notice of (a) the occurrence of the Effective Date, (b) the Administrative Expense Claims Bar Date, (c) the Professional Fee Claims Bar Date, and (d) such other matters as appropriate or as may be ordered by the Bankruptcy Court.

# ARTICLE IX
# EFFECT OF PLAN CONFIRMATION

## A. Binding Effect

Following the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtor, its Estate, the Liquidating Debtor, and all present and former Holders of Claims and Interests, whether or not such Holders voted in favor of this Plan, and their respective successors and assigns. On and after the Effective Date, all Holders of Claims shall be precluded and enjoined from asserting: (a) any Claim against the Liquidating Debtor or its remaining Estate Property based on any transaction or other activity of any kind that occurred prior to the Confirmation Date; and (b) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any other type of successor liability.

## B. Injunction and Continuation of the Automatic Stay

**Except as otherwise specifically provided in this Plan or the Confirmation Order, and subject to section 524(a) of the Bankruptcy Code, all Persons or Entities who have held, hold or** may **hold (a) Claims or Interests that arose prior to the Effective Date, (b) Causes of Action that are subject to exculpation pursuant to this Plan (but only to the extent of the exculpation provided in Section IX.C of this Plan), or (c) Claims, Interests or Causes of Action that are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of this Plan and all other parties-in-interest seeking to enforce such Claims, Interests, or Causes of Action are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim (including a Subordinated Claim) against or Interest in the Debtor, other than to enforce any right to a distribution pursuant to this Plan, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or the Liquidating Debtor with respect to any such Claim or Interest, other than to enforce any right to a distribution pursuant to this Plan, (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtor or the Liquidating Debtor, other than to enforce any right to a distribution pursuant to this Plan, or (iv) asserting any right of setoff (except for setoffs validly exercised prepetition) or subrogation of any kind against any obligation due from the Debtor or the Liquidating Debtor with respect to any such Claim or Interest. Such injunction shall extend to any successors or assignees of the Debtor or the Liquidating Debtor and their respective properties and interests in properties. Unless otherwise provided in the Plan or by Final Order of the Bankruptcy Court, all injunctions or automatic stays provided for in the Chapter 11 Case pursuant to section 105, if any, or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until entry of a Final Decree in these Chapter 11 Case at which time all such injunctions and automatic stays shall no longer be in effect.**

## C. Exculpation

**Effective as of the Effective Date, the Exculpated Party shall not have or incur liability for, and is exculpated from any Cause of Action related to any act or omission taking place**

**between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of this Plan and Disclosure Statement, the Plan Supplement, or any transaction under the Plan, contract, instrument, or document or transaction approved by the Bankruptcy Court in the Chapter 11 Case, except for (a) any Cause of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted fraud, willful misconduct, or gross negligence of such Person, and (b) any Cause of Action related to any liability of professionals to their clients pursuant to Texas Disciplinary Rules of Professional Conduct Rule 1.08(g).**

**D. Releases**

1. Debtor Releases. **NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, PURSUANT TO BANKRUPTCY CODE SECTION 1123(B) AND TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY IS DEEMED RELEASED AND DISCHARGED BY THE DEBTOR AND ITS ESTATE FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTOR OR ITS ESTATE, THAT THE DEBTOR AND ITS ESTATE WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), ANY SECURITIES ISSUED BY THE DEBTOR AND THE OWNERSHIP THEREOF, THE DEBTOR'S IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, THE CHAPTER 11 CASE, THE WIND DOWN, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING, AS APPLICABLE, OF THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE PLAN SUPPLEMENT, THE WIND DOWN, OR ANY RESTRUCTURING TRANSACTION CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE PLAN SUPPLEMENT, THE CHAPTER 11 CASE, THE FILING OF THE CHAPTER 11 CASE, THE DIP FINANCING DOCUMENTS, SOLICITATION OF VOTES ON THE PLAN, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE TRANSFER OR DISTRIBUTION OF ANY SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (A) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, PURSUANT TO THE WIND DOWN, OR ANY**

**DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN AND SHALL NOT RESULT IN A RELEASE, WAIVER, OR DISCHARGE OF ANY OF THE DEBTOR OR THE LIQUIDATING DEBTOR WITH RESPECT TO SUCH POST-EFFECTIVE DATE OBLIGATIONS OR (B) CLAIMS OR CAUSE OF ACTIONS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER BY A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE.**

2. Releases by Releasing Parties. **NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, OTHER THAN THE ALLOWED SECURED LENDER CLAIM HELD BY THE SECURED LENDERS, EACH RELEASING PARTY IS DEEMED TO HAVE RELEASED AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF ITSELF OR THE DEBTOR OR ITS ESTATE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), ANY SECURITIES ISSUED BY THE DEBTOR AND THE OWNERSHIP THEREOF, THE DEBTOR'S IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, THE CHAPTER 11 CASE, THE WIND DOWN, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE PLAN SUPPLEMENT, OR THE WIND DOWN, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT, THE DIP FACILITY, THE PLAN, THE PLAN SUPPLEMENT, THE CHAPTER 11 CASE, THE FILING OF THE CHAPTER 11 CASE, THE DIP FINANCING DOCUMENTS, SOLICITATION OF VOTES ON THE PLAN, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE TRANSFER OR DISTRIBUTION OF ANY SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (A) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, PURSUANT TO THE WIND DOWN, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN AND SHALL NOT RESULT IN A RELEASE, WAIVER, OR DISCHARGE OF ANY OF THE DEBTOR, THE LIQUIDATING DEBTOR, OR THE PLAN SPONSOR WITH RESPECT TO SUCH POST-EFFECTIVE DATE OBLIGATIONS OR (B) CLAIMS OR CAUSE OF ACTIONS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER BY A COURT OF**

**COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE.**

## E. Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

1. resolve any matters related to (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom, including Cure Amounts pursuant to section 365 of the Bankruptcy Code, (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned, and (c) any dispute regarding whether a contract or lease is or was executory or unexpired;

2. decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

3. Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or Allowance of Claims or Interests;

4. enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order;

5. resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

6. modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this

Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

7. hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; *provided*, *however*, that from and after the Effective Date the payment of fees and expenses by the Liquidating Debtor, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

8. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

9. adjudicate controversies arising out of the administration of the Estate or the implementation of this Plan;

10. resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including the Bar Date, related notice, claim objections, Allowance, Disallowance, estimation, and distribution;

11. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

12. adjudicate, decide, or resolve any and all matters related to Causes of Action that are pending as of the Effective Date or that may be commenced in the future, by, against, or on behalf of the Debtor or the Liquidating Debtor;

13. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

14. determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

15. enforce all orders, judgments, compromises, settlements, discharges, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

16. adjudicate controversies with respect to distributions to Holders of Allowed Claims;

17. determine requests for the payment of Claims and Interests entitled to priority under section 507 of the Bankruptcy Code;

18. hear and determine all matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

19. hear and determine all matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code;

20. hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code;

21. hear and determine any issues related to any matter adjudicated in the Chapter 11 Case;

22. enter an order concluding or closing the Chapter 11 Case; and

23. hear and determine any other matter not inconsistent with the Bankruptcy Code.

**F. Jurisdiction of Certain Other Agreements.**

This Plan shall not modify the jurisdictional provisions of the documents contained in the Plan Supplement. Notwithstanding anything herein to the contrary, on and after the Effective Date, the Bankruptcy Court's retention of jurisdiction pursuant to this Plan shall not govern the enforcement or adjudication of any rights or remedies with respect to or as provided in the documents in the Plan Supplement and the jurisdictional provisions of such documents shall control.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**A. Payment of Statutory Fees**

All U.S. Trustee Fees payable after the Effective Date, if any, shall be paid by the Liquidating Debtor until the closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code. The Liquidating Debtor shall file and serve on the U.S. Trustee quarterly reports of the disbursements made, within 15 days after the conclusion of each such period, until the Chapter 11 Case is converted, dismissed, or closed by entry of a final decree. Any such reports shall be prepared consistent with (both in terms and format) of the applicable Bankruptcy Court and U.S. Trustee Guidelines for such matters.

**B. Amendment or Modification of the Plan**

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

### C. Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### D. Reservation of Rights Regarding Certain Matters

If the requisite Classes do not vote to accept this Plan or the Bankruptcy Court does not confirm this Plan, the Debtor reserves its right to exercise its fiduciary duty regarding the resolution of the Chapter 11 Case.

### E. Exhibits and Schedules

All Exhibits and schedules to this Plan, including the Plan Supplement, are incorporated into and constitute a part of this Plan as if set forth herein.

### F. Severability of Plan Provisions

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### G. Successors and Assigns

Except as expressly provided otherwise in this Plan, this Plan shall be binding upon and inure to the benefit of the Debtor, and its respective successors and assigns. The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

### H. Revocation, Withdrawal, or Non-Consummation

The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of liquidation. If the Plan is revoked or withdrawn, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan, nor any action taken or not taken by the Debtor with respect to this Plan, the Disclosure Statement, or the Confirmation Order, shall (i) constitute or be deemed to constitute a waiver or

release of any Claims by or against, or any Interests in, the Debtor or any other Person; (ii) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (iii) constitute or be deemed to constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Person.

**I. Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

**J. Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and Plan Supplement shall be immediately effective and enforceable.

**K. Entire Agreement**

On the Effective Date, this Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**L. Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code section 1125(e).

**M. Closing of Chapter 11 Case**

The Liquidating Debtor shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

**N. Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

## O. Notice

Any pleading, notice or other document required by this Plan or the Confirmation Order to be served on or delivered to counsel to the Debtor must be sent via electronic mail, overnight delivery service, or hand delivery on:

The Debtor

Tedder Industries LLC
1300 Post Oak Blvd., Suite 800
Houston, TX 77056
Attention: Kevin Dooley
E-mail: kdooley@mainstcapital.com

with a copy, which shall not constitute notice, to:

Vartabedian Katz Hester & Haynes LLP
Attention: Jeff P. Prostok, Esq
Candice M. Carson, Esq
J. Blake Glatstein, Esq
Mary Taylor Stanberry, Esq.
2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201
Tel: (469) 654-1340
Email: jeff.prostok@vkhh.com
candice.carson@vkhh.com
blake.glatstein@vkhh.com
mary.stanberry@vkhh.com

# ARTICLE XI
# CONFIRMATION OF THE PLAN

## A. VOTING PROCEDURES AND REQUIREMENTS

The Debtor is providing copies of this Plan and Disclosure Statement and Ballots to all known holders of Claims in Class 2, Class 3, and Class 4 who are entitled to vote on the Plan. The procedures for voting were approved by the Bankruptcy Court by Order entered on July 27, 2026, (Docket No. 194.)

Under the Plan, Holders of Claims in Class 2, Class 3, and Class 4 are Impaired and are entitled to vote. Holders of Claims and Interests in Class 1 and Class 5 are not Impaired and are presumed to have accepted the Plan. Holders of Claims in Class 2, Class 3, and Class 4 must state on their Ballots, under penalty of perjury, that they hold Claims that have not been assumed by another Person. Holders of Claims in Class 2, Class 3, and Class 4 that do not return their ballots or do not indicate whether their Claims have been so assumed will not be counted.

**Ballots may be emailed to the following address: TedderBalloting@vkhh.com. Ballots will be accepted through the Solicitation Agent by email, first-class mail, overnight courier, or hand delivery to the Solicitation Agent only. BALLOTS SUBMITTED VIA FACSIMILE**

**OR OTHER MEANS OF ELECTRONIC TRANSMISSION (OTHER THAN THE SOLICITATION AGENT'S EMAIL ADDRESS) WILL NOT BE COUNTED.**

## B. STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtor believes that: (a) the Plan satisfies or will satisfy all of the necessary statutory requirements of Chapter 11 of the Bankruptcy Code; (b) the Debtor has complied or will have complied with all of the necessary requirements of Chapter 11 of the Bankruptcy Code and the Plan has been proposed in good faith; and the Plan satisfies or will satisfy the applicable Confirmation requirements of section 1129 of the Bankruptcy Code set forth below:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtor, as the Plan proponent, will have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment: (a) made before the Confirmation of the Plan is reasonable; or (b) subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

- Either each Holder of an Impaired Claim has accepted the Plan or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated on that date under Chapter 7 of the Bankruptcy Code.

- Each Class of Claims that is entitled to vote on the Plan has either accepted the Plan or is not Impaired under the Plan, or the Plan can be confirmed without the approval of such Class pursuant to section 1129(b) of the Bankruptcy Code.

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Expense Claims and Other Priority Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Because this Plan specifically provides for the liquidation and wind-down of the Debtor from and after the Effective Date, confirmation of the Plan is not likely to

Case 25-90805 Document 194 Filed in TXSB on 09/07/25 Page 92 of 163

be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan other than is contemplated hereby.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Effective Date.

1. The Best Interest of Creditors Test and Liquidation Analysis

Often called the "best interest" test § 1129(a)(7) of the Bankruptcy Code requires that the bankruptcy court find, as a condition to confirmation that a Chapter 11 plan provides with respect to each class that each holder of a claim or an equity interest in such class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the Debtor liquidated under Chapter 7 of the Bankruptcy Code.

In chapter 7 cases, a chapter 7 trustee is appointed to commence a liquidation of the debtor's assets because the debtor is insolvent. To do so, the chapter 7 trustee retains professionals, conducts an initial evaluation of the debtor's assets, and then proceeds with what is generally referred to as a "fire sale" of the debtor's assets, seeking, if possible, to sell substantially all of the debtor's remaining assets either wholesale or through piecemeal liquidation in a compressed timeframe. In chapter 7 cases, creditors and interest holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been paid in full: (a) holders of secured claims, such as the DIP Claims, (to the extent of the value of their collateral); (b) holders of priority claims; (c) holders of unsecured claims; (d) holders of debt expressly subordinated by its terms or by order of the bankruptcy court; and (e) holders of interests. Accordingly, any cash amount that would be available for satisfaction of claims (other than secured claims) would consist of the proceeds resulting from the disposition of the unencumbered assets of the debtor, augmented by the unencumbered cash held by the debtor at the time of the commencement of the liquidation. Such Cash would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative and priority claims that may result from termination of the debtor's business and the use of chapter 7 for purposes of a liquidation.

The Debtor believes that confirmation of the Plan will provide each Holder of a Claim or Interest in the Debtor with a recovery greater than or equal to the value of any distributions if the Chapter 11 Case were converted to a case under chapter 7. As detailed in the section regarding the Debtor's prepetition capital structure, the Debtor's current liabilities far exceed their Remaining Assets on a book value basis.

As discussed above, following a robust marketing process, the Debtor sold substantially all of its assets to Safariland pursuant to the Sale Order. The Sale Order approved the $10.3 million purchase price as the highest and best offer available to the Debtor and approved Safariland as a good faith purchaser of the Debtor's assets. Unfortunately, the proceeds of the sale do not come close to satisfying the Debtor's approximately $20.55 million Secured Lender Claim, much less the claims of any other holders of Claims against or Interests in the Debtor. Further, pursuant to section 2.2 of the Sale Order, the Debtor's Remaining Assets consist mainly of company records,

accounts receivable that accrued prior to closing the sale, and Causes of Action,[7] all of which remain fully encumbered by the liens of the Debtor's Secured Lenders. Thus, all recoveries provided to more junior classes of creditors under this Plan are provided as part of a compromise and settlement with the Debtor's Secured Lenders who have agreed to provide (a) the GUC Pool for the Debtor's general unsecured creditors and (b) the Watts Assets to Watts in exchange for the finality provided by a confirmed Plan. The Watts Stipulation, in particular, removes an approximately $1.43 million Claim from the GUC Pool, which increases the amount available to the Debtor's other unsecured creditors. No such settlements would exist in liquidation under chapter 7 of the Bankruptcy Code.

The Debtor further believes that any recovery received by the Debtor's creditors in a hypothetical chapter 7 liquidation would be reduced. Any liquidation pursuant to chapter 7 of the Bankruptcy Code would have to take into account the fees incurred by the chapter 7 trustee to get up to speed with the events of the Debtors' Chapter 11 Case and effectuate an orderly wind down of the Debtor, effectively increasing the administrative burden of the Debtor's Estate and reducing the amount available to distribute to creditors. In fact, it is likely that a hypothetical chapter 7 Trustee would analyze the Debtor's Remaining Assets and determine that nothing of value remains in the Estate for the trustee to liquidate. In such a scenario, the trustee would quickly close the chapter 7 case by distributing the Remaining Assets to creditors in order of priority.

Regardless of whether a hypothetical chapter 7 trustee would move quickly or slowly to distribute the Remaining Assets, given the fact that the expected recovery for the Debtor's Secured Lenders is far less than the full value of their claims, all other holders of claims and interest in the Debtor would receive nothing in a hypothetical chapter 7 liquidation.

As a result the Debtor believes that a chapter 7 liquidation would result in smaller distributions being made to the Debtor's Creditors than those provided for in the Plan because: (a) the Secured Lenders have only agreed to provide the GUC Pool and Watts Assets pursuant to a Plan; (b) the delay associated with the conversion of the Chapter 11 Case; (c) additional administrative expenses attendant to the appointment of a trustee and the trustee's potential employment of attorneys and other professionals; and (d) additional expenses and Claims, some of which would be entitled to priority, which may be generated during the chapter 7 case.

Accordingly, the Debtor and its management team believe that Confirmation of the Plan will provide a substantially greater return to Holders of Claims or Interests than would a liquidation under chapter 7 of the Bankruptcy Code. There can be no assurance, however, as to values that would actually be realized in a chapter 7 liquidation, nor can there be any assurance that a

[7] The Debtor is unaware of any remaining Causes of Action that could bring value to its Estate. The Debtor released all claims it had against its Secured Lenders pursuant to the DIP Order and Cash Collateral Order, the Debtor is unaware of any actionable chapter 5 Causes of Action, and, to the extent the Debtor holds cross claims against the Plaintiff in the California Litigation, recovery on those claims is speculative, and the Debtor is not able to value them at this time. However, the Debtor believes that, given the amounts at stake in the California Litigation, recoverable amounts are unlikely to exceed the amounts outstanding on the Secured Lender Claim. Finally, any recovery on potential Causes of Action would require additional funding by the Debtors' Secured Lenders to pursue, further increasing their claim.

Bankruptcy Court would accept the Debtor's conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

2. Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Plan). This Plan specifically provides for the liquidation and wind-down of the Debtor from and after the Effective Date. As described herein, substantially all of the Debtor's Assets have already been sold to Safariland. Pursuant to the Plan, all of the Debtor's Remaining Assets, to the extent not otherwise released, disbursed, or rejected under this Plan, shall be distributed to the Secured Lenders on account of their Claims. Therefore, as this is a liquidating plan, the Bankruptcy Court's confirmation of this Plan will not be followed by liquidation or the need for any further reorganization.

3. Acceptance by an Impaired Class

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or interests that is impaired under a Chapter 11 plan accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable, and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable, or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance. For a class of impaired equity interests to accept a plan, section 1126(d) of the Bankruptcy Code requires acceptance by equity interest holders that hold at least two-thirds in amount of the allowed equity interests of such class, counting only those equity interests that actually voted to accept or reject the plan. Thus, a class of equity interests will have voted to accept the plan only if two-thirds in amount actually voting cast their ballots in favor of acceptance.

The Claims in Class 1, and the Interests in Class 5, are not Impaired under the Plan, and, as a result, the Holders of such Claims or Interests are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and their votes will not be solicited.

The Claims in Classes 2, 3, and 4 are Impaired under the Plan. However, the holders of the Claims in Class 2 are "insiders" (as such term is defined in 11 U.S.C. § 101(31)) of the Debtor whose vote may not be counted for the purposes of determining whether a class of claims has accepted the Plan pursuant to section 1129(a)(10). Accordingly, only the votes of holders in Class

3 and 4 may be considered for determining whether a Class of Claims has accepted this Plan. These Classes will have accepted the Plan if the Plan is accepted by at least two-thirds in amount and a majority in number of the Claims of Classes 3 and 4 (other than any Claims of Creditors designated under section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Plan. As discussed below, if one of these Classes does not accept the Plan, the Debtor will still seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class.

4. Confirmation Without Acceptance by All Impaired Classes; "Cram Down"

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted it if the plan has been accepted by at least one impaired class. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, such plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

a. No Unfair Discrimination

This test applies to classes of Claims or Interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will consider a number of factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

b. Fair and Equitable Test

This test applies to classes of different priority and status *(e.g.,* secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class. As to the dissenting class, the test sets different standards depending upon the type of claims or equity interests in such class.

*Unsecured Claims:* The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the following requirement that either: (1) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (2) the holder of any claim or any equity interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or junior equity interest any property.

If one of Class 3 or Class 4 does not accept the Plan, the Debtor will seek to confirm the Plan utilizing the "cram down" provision of section 1129(b) of the Bankruptcy Code. The Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan and any exhibits thereto or the Plan Supplement, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

The Debtor submits that if it "crams down" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured such that it does not "discriminate unfairly" and satisfies the "fair and equitable" requirement. With respect to the unfair discrimination requirement, all Classes under the Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank or such Class has agreed to lesser treatment. With respect to the fair and equitable requirement, no Class under the Plan will receive more than 100 percent of the amount of Allowed Claims or Interests in that Class. The Debtor believes that the Plan and the treatment of all Classes of Claims or Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

## ARTICLE XII
## PLAN-RELATED RISK FACTORS

**PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS THAT ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.**

**HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FOLLOWING RISK FACTORS AND THE OTHER INFORMATION INCLUDED IN THIS PLAN AND DISCLOSURE STATEMENT AND THE OTHER DOCUMENTS DELIVERED OR INCORPORATED BY REFERENCE IN THIS PLAN AND DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**ALTHOUGH THESE RISK FACTORS ARE MANY, THESE FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTOR'S BUSINESS OR THE PLAN AND ITS IMPLEMENTATION.**

### A. GENERAL BANKRUPTCY LAW AND PLAN RELATED CONSIDERATIONS

1. There May Be Objections to the Classification of Claims and Interests

Bankruptcy Code section 1122 provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtor believes that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created four (4) Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. However, a Holder of a Claim or Interest could challenge the Debtor's classification. In such an event, the cost of the Chapter 11 Case and the time needed to confirm the Plan may increase, and there can be no assurance that the Bankruptcy Court will agree with the Debtor's classification. If the Bankruptcy Court concludes that the classifications of Claims and Interests under the Plan do not comply with the requirements of the Bankruptcy Code, the Debtor may need to modify the

Plan. The Plan may not be confirmed if the Bankruptcy Court determines that the Debtor's classification of Claims and Interests is not appropriate.

2. The Debtor May Run Out of Financing

The Debtor is able to operate in chapter 11 because of the use of its Cash on hand, which is the Collateral of the Secured Lenders, and access to the DIP Facility, however this is a finite resource. If Confirmation of the Plan becomes significantly contested or the Effective Date is delayed, the Debtor may exhaust its available resources. If the Debtor runs out of Cash and the DIP Facility is exhausted, there is no guarantee that the Debtor will be able to secure additional financing to address liquidity concerns and the liquidation of the Debtor may be harmed as a result.

3. The Debtor May Not Get Enough Votes to Confirm the Plan

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor may seek, as promptly as practicable thereafter, Confirmation. If the Plan does not receive the required support from Classes 3 or 4, the Debtor may elect to amend the Plan or proceed with liquidation outside of the Plan. There can be no assurance that the terms of any such alternative chapter 11 plan or liquidation would be similar or as favorable to the Holders of Allowed Claims as the contemplated Plan.

In the event that any impaired class of Claims does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the proponents' request if at least one impaired class (as defined under section 1124 of the Bankruptcy Code) has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired class(es). The Debtor believes that the Plan satisfies these requirements, and the Debtor may request such nonconsensual Confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion. In addition, the pursuit of nonconsensual Confirmation or Consummation of the Plan may result in, among other things, increased expenses on the Debtor's Estate.

4. Non-Confirmation of Plan

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court in accordance with the Bankruptcy Code, the Debtor cannot assure you that the Plan will be confirmed by the Bankruptcy Court. Bankruptcy Code section 1129 sets forth the requirements for confirmation of a plan, and requires, among other things, a finding by the Bankruptcy Court that the plan is "feasible," that all claims and interests have been classified in compliance with the provisions of Bankruptcy Code section 1122, and that, under the plan, each holder of a claim or interest within each impaired class either accepts the plan or receives or retains cash or property of a value, as of the date the plan becomes effective, that is not less than the value such Holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. With respect to impaired classes of claims or interests that do not accept the plan, section 1129(b) requires that the plan be fair and equitable (including, without limitation the "absolute priority rule") and not discriminate unfairly with respect to such classes. There can be

no assurance that the Bankruptcy Court will conclude that the feasibility test and other requirements of Bankruptcy Code section 1129 (including, without limitation, finding that the Plan satisfies the "new value" exception to the absolute priority rule, if applicable) have been met with respect to the Plan. If and when the Plan is filed, there can be no assurance that modifications to the Plan would not be required for Confirmation, or that such modifications would not require a re-solicitation of votes on the Plan.

The Bankruptcy Court could refuse to finally approve this Disclosure Statement and determine that the votes in favor of the Plan could be disregarded. The Debtor would then be required to recommence the solicitation process, which could include re-filing a plan and disclosure statement.

If the Plan is not confirmed, the Chapter 11 Case may be converted into a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed to liquidate the Debtor's Remaining Assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtor believes that liquidation under chapter 7 of the Bankruptcy Code would result in, among other things, smaller or no better distributions being made to creditors and interest Holders than those provided for in the Plan because:

- substantially all of the Debtor's assets have already been sold during the Chapter 11 Case;
- the Remaining Assets are fully encumbered by the Liens of the Secured Lenders;
- of additional administrative expenses involved in the appointment of a chapter 7 trustee; and
- of additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation.

5. Parties in Interest May Object to the Plan's Amount or Classification of Claims or Interests

Except as otherwise provided in the Plan, the Debtor and other parties in interest reserve the right to object to the amount or classification of any Claim under the Plan. Any estimates set forth in the Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection. Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in the Plan and Disclosure Statement.

6. Non-Occurrence or Delayed Occurrence of the Effective Date

Although the Debtor believes that the Effective Date will occur after the Confirmation Date following satisfaction of any applicable conditions precedent, there can be no assurance as to the timing of the Effective Date. If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived, then the Confirmation Order may be vacated, in which event no distributions would be made under the Plan, the Debtor and all holders of Claims and Interests would be restored to the status quo as of the day immediately preceding the Confirmation Date, and the Debtor's obligations with respect to Claims and Interests would remain unchanged.

7. The Releases, Injunction, or Exculpation Provisions May Not be Approved

The Plan provides for certain releases, injunctions, and exculpations, including a release of liens that may otherwise be asserted against the Debtor or Released Parties, as applicable. The releases, injunctions, and exculpations provided in the Plan are subject to objection by parties in interest and may not be approved. If the releases are not approved, certain Released Parties may withdraw their support for the Plan.

The releases provided to the Released Parties and the exculpation provided to the Exculpated Party are necessary to the success of the Debtor's Plan because the Released Parties and Exculpated Party have made contributions to the Debtor's Chapter 11 Case that are important to the success of the Plan and have agreed to make further contributions. The Plan's release and exculpation provisions are an inextricable component of the Plan.

8. Allowed Administrative Expense Claims and Other Priority Claims May be Higher than Anticipated

Allowed Administrative Expense Claims and Allowed Other Priority Claims may be higher than anticipated. Accordingly, there is a risk that the Debtor will not be able to pay in full in cash all Administrative Expense Claims and Other Priority Claims on the Effective Date as is required to confirm a chapter 11 plan.

9. Allowed Claims Against the Debtor May be Greater than Anticipated

There can be no assurance that the estimated Allowed amount of Claims in certain Classes will not be significantly more than projected, which, in turn, could cause the value of distributions to be reduced substantially. Inevitably, some assumptions will not materialize, and unanticipated events and circumstances may affect the ultimate results. Therefore, the actual amount of Allowed Claims may vary from those set forth in this Plan, and that variation may be material.

10. The Debtor May Be Adversely Affected by Potential Litigation, Including Litigation Arising Out of the Chapter 11 Case

In addition to the litigation described herein, in the future, the Liquidating Debtor may become party to litigation. In general, litigation can be expensive and time consuming to bring or defend against. It is also possible that certain parties will commence litigation with respect to the treatment of their Claims under the Plan. It is not possible to predict the potential litigation that the Debtor or the Liquidating Debtor may become party to, nor the final resolution of such litigation. The impact of any such litigation on the Debtor's financial stability, however, could be material.

## B. RISKS ASSOCIATED WITH FORWARD LOOKING STATEMENTS

**Any financial information contained in this Disclosure Statement has not been audited.** In preparing this Plan and Disclosure Statement, the Debtor relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtor has used its reasonable business judgment to ensure the accuracy of the financial information provided in this Plan and Disclosure Statement, and while the Debtor believes that such financial information fairly reflects the financial condition of the Debtor, the Debtor is unable

to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

## C. DISCLOSURE STATEMENT DISCLAIMER

1. Information Contained Herein Is for Soliciting Votes

The information contained in this Plan and Disclosure Statement is for the purpose of soliciting acceptances of the Plan and may not be relied upon for any other purposes.

2. This Plan and Disclosure Statement May Contain Forward Looking Statements

This Plan and Disclosure Statement may contain “forward looking statements” within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as “may,” “expect,” “anticipate,” “estimate” or “continue” or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements. The liquidation analysis, distribution projections or other information contained herein and attached hereto are estimates only, and the timing and amount of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates, or recovery projections may or may not turn out to be accurate.

3. No Legal or Tax Advice Is Provided to You by this Plan and Disclosure Statement

This Plan and Disclosure Statement is not legal advice to you. The contents of this Plan and Disclosure Statement should not be construed as legal, business, or tax advice. Each Holder of a Claim or an Interest should consult his or her own legal counsel and accountant with regard to any legal, tax, and other matters concerning his or her Claim or Interest. This Plan and Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

4. No Admissions Made

The information and statements contained in this Plan and Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtor) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, Holders of Allowed Claims or Interests or any other parties in interest.

5. No Waiver of Right to Object or Right to Recover Transfers and Assets

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Debtor, the Liquidating Debtor, or any party in interest, as the case may be, to object to that Holder’s Allowed Claim, or recover any preferential, fraudulent, or other voidable transfer or assets, regardless of whether any Claims, Causes of

Action, or Avoidance Actions of the Debtor or its Estate are specifically or generally identified herein.

6. Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors

Counsel to and other advisors retained by the Debtor have relied upon information provided by the Debtor in connection with the preparation of this Plan and Disclosure Statement. Although counsel to and other advisors retained by the Debtor have performed certain limited due diligence in connection with the preparation of this Plan and Disclosure Statement, they have not verified independently the information contained herein.

7. Potential Exists for Inaccuracies, and the Debtor Has No Duty to Update

The statements contained in this Plan and Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Plan and Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtor has used its reasonable business judgment to ensure the accuracy of all of the information provided in this Plan and Disclosure Statement, the Debtor nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this Plan and Disclosure Statement. Further, although the Debtor may subsequently update the information in this Plan and Disclosure Statement, the Debtor has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

8. No Representations Outside the Plan and Disclosure Statement are Authorized

No representations concerning or relating to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Plan and Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan other than as contained in, or included with, this Plan and Disclosure Statement, should not be relied upon by you in arriving at your decision.

## D. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtor believes that the Plan affords the Holders of Claims and Interests the potential for a better realization on the Debtor's assets than a Chapter 7 liquidation, and therefore, is in the best interests of such Holders. If, however, the Plan is not confirmed, the theoretical alternatives include (a) formulation of an alternative plan or plans of liquidation under chapter 11, (b) liquidation of the Debtor under chapter 7 of the Bankruptcy Code, or (c) dismissal of the Chapter 11 Case. Each of these possibilities is discussed in turn below.

1. Alternative Plan(s)

If the requisite acceptances are not received or if the Plan is not confirmed, the Debtor could attempt to formulate and propose a different plan of liquidation.

With respect to an alternative plan, the Debtor has explored various other alternatives in connection with the negotiation process involved in the formulation and development of the Plan. The Debtor believes that the Plan enables creditors to realize the greatest possible value under the circumstances, and that, as compared to any alternative plan, has the greatest chance to be confirmed and consummated.

2. Liquidation Under Chapter 7

If the Plan is not confirmed, the Debtor's Chapter 11 Case could be converted to liquidation cases under chapter 7 of the Bankruptcy Code. In a case under Chapter 7 of the Bankruptcy Code, a trustee would be appointed to promptly liquidate the assets of the Debtor.

The Debtor believes that in a liquidation under Chapter 7 of the Bankruptcy Code, before creditors received any distributions, additional administrative expenses involved in the appointment of a trustee and attorneys, accountants, and other professionals to assist such trustee, would cause a substantial diminution in the value of the Estate. The assets available for distribution to Holders of Claims and Interests would be reduced by such additional expenses.

3. Dismissal of the Chapter 11 Case

If the Plan is not confirmed, the Debtor or other parties in interest may seek dismissal of the Chapter 11 Case pursuant to section 1112 of the Bankruptcy Code. Without limitation, dismissal of the Chapter 11 Case would terminate the automatic stay and might allow creditors to foreclose on their liens. Accordingly, the Debtor believes that dismissal of the Chapter 11 Case would reduce the value of the Debtor's Remaining Assets.

## ARTICLE XIII
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### A. General Tax Considerations

The following is a general summary of certain material U.S. federal income tax consequences of the Plan to the Debtor and to certain Holders (which solely for purposes of this discussion includes beneficial owners for U.S. federal income tax purposes) of certain Claims. The following summary does not address the U.S. federal income tax consequences to Holders of Claims or Interests not entitled to vote on the Plan. This summary is based upon the Internal Revenue Code of 1986, as amended (the "**Tax Code**"), the Treasury Department regulations promulgated thereunder ("**Treasury Regulations**"), judicial decisions and current administrative rulings and practice, all as in effect on the date hereof. These authorities are all subject to change at any time by legislative, judicial, or administrative action, and such change may be applied retroactively in a manner that is detrimental to Holders of Claims or Interests in the Debtor.

Due to a lack of definitive judicial or administrative authority or interpretation, the complexity of the application of the Tax Code and Treasury Regulations to the implementation of the Plan, the possibility of changes in the law, the differences in the nature of various Claims and Interests, and the potential for disputes as to legal and factual matters, the tax consequences discussed below are subject to substantial uncertainties. No legal opinions have been requested or obtained from counsel with respect to any of the tax aspects of the Plan, and no rulings have been

or will be requested from the IRS or any other taxing authority with respect to any of the issues discussed below. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

The summary does not cover all aspects of U.S. federal income taxation that may be relevant to the Debtor or to certain Holders of Claims in light of their particular circumstances. For example, the description does not address issues of special concern to certain types of taxpayers, such as life insurance companies, financial institutions, tax exempt organizations, S corporations, partnerships, or other pass-through entities for U.S. federal income tax purposes and their owners, and non-U.S. persons, nor, except as specifically provided herein, does it address tax consequences to Holders of Interests. In addition, the description does not discuss any U.S. federal non-income (including estate or gift), state, local or non-U.S. tax, or alternative minimum tax.

**THE TRANSACTIONS CONTEMPLATED BY THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY HOLDER OF A CLAIM OR INTEREST. THAT IMPACT MAY BE ADVERSE TO SUCH HOLDER. NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.**

### B. Certain U.S. Federal Income Tax Consequences to the Debtor

In general, absent an exception, a debtor will realize and recognize cancellation of debt ("**COD**") income upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness. The amount of COD income, in general, is the excess of (a) the adjusted issue price of the indebtedness satisfied over (b) the sum of (i) the amount of cash paid and (ii) the fair market value of any consideration (including equity of a debtor or a party related to such debtor) given in satisfaction, or as part of the discharge, of such indebtedness at the time of the exchange. The Plan provides that holders of DIP Claims and holders of Secured Lender Deficiency Claims will waive their Claims. As of the date hereof, the DIP Loan has not been drawn. The Debtor will continue to access the DIP Loan through the Effective Date and may need to seek additional loans if the Chapter 11 Case is unexpectedly extended. Accordingly, the estimated amount of COD income is uncertain at this time.

Under section 108 of the Tax Code, a taxpayer is not required to include COD income in gross income if the debtor is under the jurisdiction of a court in a case under chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that proceeding. As a consequence of such an exclusion, a debtor generally must reduce its tax attributes by the amount of COD income that it excluded from gross income. In general, such tax attributes are reduced in the following order: (a) NOLs; (b) general business credit carryovers; (c) minimum tax credit carryovers; (d) capital loss carryovers; (e) tax basis in assets (but not below the amount of liabilities to which the taxpayer remains subject immediately after the cancellation of indebtedness); (f) passive activity loss and credit carryovers; and (g) foreign tax credit carryovers. Alternatively, a taxpayer with excluded COD may elect first to reduce the basis of its depreciable assets (a '**Section 108(b)(5) Election**"), in which case the limitation described in (e) does not apply to the reduction in basis of depreciable property and, following such reduction, any remaining COD

income that is excluded from gross income reduces any remaining tax attributes in the order specified in the prior sentence. The reduction of the taxpayer's tax attributes occurs at the end of the tax year for which the excluded COD income is realized, but only after the taxpayer's net income or loss for the taxable year of the debt discharge has been determined; in this way, the attribute reduction is generally effective as of the start of the taxable year following the discharge. If the amount of excluded COD income exceeds available tax attributes, the excess generally is not subject to U.S. federal income tax. Where a taxpayer joins in the filing of a consolidated U.S. federal income tax return, applicable Treasury Regulations require, in certain circumstances, that certain tax attributes of other members of the group also be reduced.

In connection with the implementation of the Plan, the Debtor may realize excluded COD income for U.S. federal income tax purposes. If the Debtor does not make a Section 108(b)(5) Election, their NOLs, if any, as well as a portion of their asset tax basis, will be reduced as a result of the COD attribute reduction arising in connection with the Plan.

## C. Certain U.S. Federal Income Tax Consequences for Holders of Class 2, Class 3, and Class 4 Claims

Generally, a U.S. Holder of a Class 2 Claims, Class 3 Claims, and Class 4 Claims should recognize gain or loss equal to the difference between the amount of Cash received by such Holder in respect of such Claim (other than any Cash received in respect of accrued and unpaid interest, which will be taxed as set forth in the next paragraph below) and such Holder's adjusted tax basis in such Claim. The character of any such gain or loss will depend on a number of factors, including the tax status of the Holder, the nature of the Claim in the Holder's hands, whether the Claim was purchased at a discount, whether the Claim constitute a capital asset in the hands of the Holder, the Holder's holding period of the Claim, and the extent to which the Holder previously claimed a bad debt deduction or deduction for the worthlessness of all or a portion of the Claim. Subject to the market discount rules discussed below, if the Claim is a capital asset in the Holder's hands, any gain or loss realized will generally be characterized as capital gain or loss and will constitute long-term capital gain or loss if the Holder has held such Claim for more than one year. Under current U.S. federal income tax law, non-corporate Holders may be eligible for reduced rates of taxation. The deductibility of capital losses is subject to limitations.

To the extent any amount of Cash received by a Holder of a Class 2, Class 3, or Class 4 Claims is attributable to accrued but unpaid interest in respect of such Claim, the receipt of such Cash will be taxable to such Holder as ordinary income to the extent not previously included in income by such Holder. Conversely, a Holder who previously included in its income accrued but unpaid interest attributable to its Class 2, Class 3, or Class 4 Claims may be able to recognize a deductible loss to the extent that such accrued but unpaid interest is not paid in full.

Under the "market discount" provisions of the Tax Code, some or all of any gain realized by a Holder in respect of its Class 2, Class 3, or Class 4 Claim may be treated as ordinary income (instead of capital gain), to the extent of the amount of "market discount" on the debt instruments constituting the exchanged Claim. Any gain recognized by a U.S. Holder on the taxable disposition of a Claim that was acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while the Claim was considered to be held by the Holder (unless the Holder elected to include market discount in income as it accrued).

## D. Information Reporting and Withholding

In connection with the Plan, the Debtor and Liquidating Debtor, as applicable, will comply with all applicable withholding and information reporting requirements imposed by U.S. federal, state, local, and foreign taxing authorities, and all distributions under the Plan will be subject to those withholding and information reporting requirements. Holders may be required to provide certain tax information as a condition to receiving distributions pursuant to the Plan.

In general, information reporting requirements may apply to distributions pursuant to the Plan. Additionally, under the backup withholding rules, a Holder may be subject to backup withholding (currently at a rate of 24%) with respect to distributions made pursuant to the Plan, unless a Holder provides the applicable withholding agent with a taxpayer identification number, certified under penalties of perjury, as well as certain other information, or otherwise establishes an exemption from backup withholding. Backup withholding is not an additional tax. Any amounts withheld under the backup withholding rules will be allowed as a credit against a Holder's U.S. federal income tax liability, if any, and may entitle a Holder to a refund, provided the required information is timely furnished to the IRS.

In addition, from an information reporting perspective, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders of Claims or Interests are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the Holder's tax returns.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR INTEREST IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE PLAN.**

## E. Reservation of Rights

This tax section is subject to change (possibly substantially) based on subsequent changes to other provisions of the Plan. The Debtor and their advisors reserve the right to further modify revise or supplement this Article XIII and the other tax related sections of the Plan prior to the date by which objections to Confirmation of the Plan must be filed and served.

# ARTICLE XIV
# CONCLUSION, RECOMMENDATION, AND CONFIRMATION REQUEST

The Debtor believes that Confirmation of the Plan is desirable and in the best interests of all holders of Claims and Interests. The Debtor urges you to vote to accept the Plan and to evidence such acceptance by returning the Ballot(s) so they will be received by the Voting Deadline.

The Debtor requests Confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

Dated: July 27, 2026

Respectfully submitted,

Tedder Industries LLC

By: */s/ Kevin Dooley*
Name: Kevin Dooley
Title: Chief Administrative Officer