United States Bankruptcy Court
Southern District of Texas
ENTERED
October 08, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TEDDER INDUSTRIES, LLC,[1] | Case No. 25-90805 (CML) |
| Debtor. | |

**STIPULATION AND AGREED ORDER**
**REGARDING PROOFS OF CLAIM NUMBERS 6 AND 9**

This stipulation and agreed order ("**Stipulation and Agreed Order**") is entered into by and between (i) Tedder Industries, LLC, as debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**") and (ii) Arden Silverman d/b/a Capital Asset Protection ("**Silverman**"). The Debtor and Silverman shall be referred to herein as the "**Parties**" and each, a "**Party**." The Parties hereby stipulate and agree as follows:

## RECITALS

A. On December 8, 2025, the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**"). The Debtor continues to operate its business and manage its property as a debtor and debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

B. The Court has jurisdiction over the Debtor, its Estate, and this Chapter 11 Case pursuant to 28 U.S.C. § 1334, and this is a core proceeding within the meaning of 28 U.S.C. § 157(b).

[1] The last four digits of the Debtor's federal tax identification number are 7652. The location of the Debtor's service address is: 4411 W Riverbend Ave, Post Falls, ID 83854-8150.

C. Prepetition, the Debtor was subject to a lawsuit styled *Silverman v. Tedder Industries, LLC* (C.D. Cal. Case No. 24-cv-06989), (the "**California Litigation**") pending in the U.S. District Court for the Central District of California (the "**California Court**").

D. The California Litigation was commenced by Silverman and concerned an alleged breach of a tax services contract, dated April 5, 2023, between the Debtor and Goldman Sachs Capital LLC (the "**TSA**").

E. A copy of the Amended Complaint filed by Silverman in the California Litigation is attached hereto as **Exhibit 1**.

F. A copy of the TSA is attached to the Amended Complaint as Exhibit A.

G. Among other things, in the California Litigation Silverman alleged that Goldman Sachs Capital LLC assigned all of its rights, title, and interest to the claims it held against the Debtor to Silverman pursuant to an assignment agreement.

H. A copy of the purported assignment executed by Arden Silverman on behalf of Capital Asset Protection and Arian Egbali on behalf of Goldman Sachs Capital LLC is attached to the Amended Complaint as Exhibit B.

I. On September 18, 2025, the district court issued a prejudgment writ of attachment (the "**Writ**"), authorizing Silverman to attach certain property of the Debtor in the amount of $1,152,116.00.

J. Postpetition, at the request of the Debtor, on January 12, 2026, counsel for Silverman wrote a letter to the U.S. Marshal Service to terminate any and all attachments under the Writ while reserving Silverman's rights with respect thereto.

K. On January 27, 2026, Silverman filed proof of claim number six on the Debtor's claims register in the amount of $1,458,000 ("**Claim No. 6**"). Claim No. 6 asserts a secured claim

based on the Writ. Although the proof of claim incorrectly identifies the Debtor as the current creditor, it directs notice to Mr. Silverman and was signed by Mr. Silverman as the creditor.

L. On February 2, 2026, Ai Tax Solution filed proof of claim number seven on the Debtor's claims register in the amount of $1,127,365.96 ("**Claim No. 7**"). Claim No. 7 asserts a general unsecured claim for goods sold or services performed and states that the claim was not acquired from another party and does not amend another claim. Claim No. 7 was signed by Arian Egbali as CEO of AI Tax Solution.

M. On February 6, 2026, Silverman filed proof of claim number nine (9) on the Debtor's claims register for the same amount of $1,458,000, the same services, and the same asserted secured status ("**Claim No. 9**"). Claim No. 9 expressly states that Mr. Silverman acquired the claim from Goldman Sachs Capital LLC and that Claim No. 9 amends Claim No. 6.

N. On February 17, 2026, Ai Tax Solution filed proof of claim number twelve on the Debtor's claims register in the amount of $1,127,365.96 ("**Claim No. 12**" and, together with Claim No. 6, Claim No. 7, and Claim No. 9, the "**California Litigation Claims**"). Except for the Clerk's file stamp and the absence of a cover letter, Claim No. 12 is identical to Claim No. 7 in all other respects.

O. On April 1, 2026, the Court entered *Order (I) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances Pursuant to §§ 363(b) and (f) of the Bankruptcy Code; (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to § 365 of the Bankruptcy Code; and (III) Granting Related Relief* (Docket No. 156), approving the sale of substantially all of the Debtor's assets.

P. On July 21, 2026, the Debtor filed the Co*mbined Disclosure Statement and Chapter 11 Plan of Reorganization of Tedder Industries, LLC, Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 194] (as revised on July 27, 2026, and as may be further amended, supplemented, or otherwise modified from time to time, the "**Disclosure Statement**" or "**Combined Plan**," as applicable),[2] pursuant to sections 1125 and 1126 of the Bankruptcy Code.

Q. On September 8, 2026, the Court entered an order approving the adequacy of the Disclosure Statement and confirming the Combined Plan [Dkt. No. 219].

R. The Combined Plan treats the California Litigation Claims as a single filed general unsecured claim in Class 3 of the Combined Plan.

S. Accordingly, on August 13, 2026, the Debtor filed the *Debtor's First Omnibus Objection to Duplicate Claims (Claim Nos. 6,7, and 12)* [Dkt. No. 202] (the "**Objection**"), seeking an order disallowing and expunging Claim Nos. 6, 7, and 12.

T. On September 21, 2026, the Court entered the *Order Sustaining Debtor's First Omnibus Objection to Duplicate Claims (Claim Nos. 6,7, and 12)* [Dkt No. 224], leaving Claim No. 9 as the sole remaining claim related to the California Litigation on the Debtor's Claim Register.

U. After filing the Objection, the Debtor entered into negotiations with counsel for Silverman with respect to the settlement of Claim No. 9 and the pending California Litigation.

V. Pursuant to the negotiations, the Parties agreed to avoid the costs and risks of further litigation by resolving their disputes on the terms and subject to the conditions set forth in this Stipulation and Agreed Order.

---

[2] Capitalized terms used, but not otherwise defined herein, shall have the meaning ascribed to such terms in the Combined Plan.

W. The Debtor has determined, in the exercise of its sound business judgment and in consultation with its advisors, that settling Claim No. 9 and the related California Litigation is in the best interests of the Debtor's Estate.

**NOW, THEREFORE,** in consideration of the foregoing recitals, which are incorporated into this Stipulation and Agreed Order, it is hereby **ORDERED** that:

1. Upon entry of his Stipulation and Agreed Order by the Court, Claim No. 9 shall be deemed allowed as a general unsecured claim (the "**Agreed Claim**") against the Debtor under the Combined Plan, subject in all respects to the terms and conditions of this Stipulation and Agreed Order, including the reinstatement provisions of paragraph 9 below.

2. Upon the Effective Date of the Plan and Silverman's actual receipt of the Settlement Payment (as defined in paragraph 4 below) in full, such allowance and payment shall constitute the full and final settlement and satisfaction of any and all claims or causes of action arising under or relating to the California Litigation and/or the TSA, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, held by Silverman.

3. Upon the receipt of the Settlement Payment, Silverman shall be deemed to release, to the fullest extent allowed by applicable law, the Debtor and the Debtor's current, former, and future Affiliates (as defined in section 101(2) of the Bankruptcy Code), member firms and associated entities, and with respect to each of the foregoing, their lenders, Affiliates, directors, managers, officers, and equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, employees, agents, trustees, advisory board members, investment fund advisors or managers, investment managers,

financial advisors, attorneys, insurers, accountants, investment bankers, consultants, representatives, and other professionals from any and all claims and causes of action, whether known or unknown, including any derivative claims asserted or assertable on behalf of itself or the Debtor or its Estate, that Silverman would have been legally entitled to assert prior to the Effective Date of the Plan, including any claim or cause of action based on or relating to the California Litigation, the TSA, or the Chapter 11 Case. For the avoidance of doubt, unless and until Silverman actually receives the Settlement Payment in full, no release, satisfaction, waiver, or discharge of any of Silverman's claims, rights, liens, or causes of action shall be or be deemed to be effective.

4. Upon Silverman's release of claims pursuant to paragraph 3 above, the Debtor shall be deemed to release, to the fullest extent allowed by applicable law, Silverman and Silverman's employees, agents, representatives, and other professionals from any and all claims and causes of action, whether known or unknown, including any derivative claims asserted or assertable on behalf of itself or its Estate, that the Debtor would have been legally entitled to assert prior to the Effective Date of the Plan, including any claim or cause of action based on or relating to the California Litigation, the TSA, or the Chapter 11 Case.

5. Notwithstanding anything to the contrary in the Combined Plan, Silverman's *pro rata* share of the GUC Pool on account of Claim No. 9 shall not exceed $50,000.00 (the "**Settlement Payment**").

6. The Settlement Payment shall be payable in cash by wire transfer or check delivered to Silverman's counsel. The Settlement Payment, once received, shall not be subject to reduction, setoff, recoupment, disgorgement, or clawback of any kind.

7. Within ten (10) days of Silverman's actual receipt of the Settlement Payment in full, Silverman shall take all steps necessary to effectuate the dismissal of the California Litigation, with prejudice, including all claims, counterclaims, cross-claims, and defenses asserted or that could have been asserted therein. Each Party shall execute such documents and take such actions as may be reasonably necessary to accomplish such dismissal. Unless and until such receipt occurs, the California Litigation shall remain pending, Silverman shall have no obligation to dismiss it, and no failure to dismiss it shall constitute a breach of this Stipulation and Agreed Order. If Silverman fails to uphold his obligations under this paragraph 7, the Debtor shall be authorized to take such actions in the California Court as are necessary to effectuate the dismissal with prejudice of the California Litigation.

8. Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay shall be modified to the extent necessary to allow the Parties to seek the dismissal, with prejudice, of the California Litigation as set forth herein.

9. If (a) any order confirming the Combined Plan is vacated, reversed, or stayed; (b) the Effective Date of the Combined Plan does not occur on or before December 31, 2026; (c) this Chapter 11 Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code; or (d) Silverman does not actually receive the Settlement Payment in full within ten (10 days of the Effective Date pursuant to the terms of the Combined Plan (each, a "**Reinstatement Event**"), then, at each Party's election upon written notice to the other Party and without further order of the Court: (i) this Stipulation and Agreed Order (other than this paragraph 9) shall be null and *void ab initio*; (ii) Claim No. 9 shall be reinstated on the Debtor's claims register, as if it had never been allowed, amended, withdrawn, released, or satisfied; and (iii) each Party's claims, liens, rights, and remedies, including all rights under or with respect to the Writ and the California

Litigation, shall be restored to the *status quo ante* as of the date of this Stipulation and Agreed Order. Any amounts actually received and retained by Silverman prior to a Reinstatement Event shall not be subject to disgorgement and shall be credited against Silverman's claims.

10. Nothing contained in this Stipulation and Agreed Order, and no actions taken pursuant hereto, shall be deemed (a) an agreement or admission by the Debtor as to the validity, categorization, amount, or priority of any other claims raised against the Debtor on any grounds; (b) a waiver or impairment of any rights, claims, or defenses of the Debtor or any other party in interest to dispute any other claim on any grounds; (c) a promise by the Debtor that any other "**Claim**" (as that term is defined in section 101(5) of the Bankruptcy Code) is payable pursuant to this Stipulation and Agreed Order; (d) a waiver of the rights or defenses of the Parties or any other party in interest under the Bankruptcy Code or any other law; (e) a grant of any third-party beneficiary status or bestowal of any additional rights on any third party; (f) an implication, admission, or finding that any other Claim is an administrative expense Claim, secured Claim, other priority Claim, or unsecured Claim; (g) a request or authorization to assume, assign, or reject any other agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (h) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's Estate; or (i) an admission that any property does not constitute property of the Estate. For the avoidance of doubt, nothing contained in this Stipulation and Agreed Order shall (i) create, nor is anything herein intended to create, any rights in favor of or enhance the status of any other Claim or any other cause of action held by any person or entity or (ii) be deemed to convert the priority of any Claim from a prepetition Claim into an administrative expense Claim.

11. This Stipulation and Agreed Order shall constitute the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

12. The undersigned who executes this Stipulation and Agreed Order by or on behalf of each respective Party represents and warrants that he or she has been duly authorized and empowered to execute and deliver this Stipulation and Agreed Order on behalf of such Party and that the respective Parties have full knowledge of, and have consented to, this Stipulation and Agreed Order. This Stipulation and Agreed Order may be executed in counterparts and by electronic signature, and each such counterpart together with the others shall constitute one and the same instrument.

13. This Stipulation and Agreed Order shall not be modified, altered, amended, or vacated without the written consent of all Parties hereto or by further order of the Court.

14. The Parties agree that each of them has had a full opportunity to participate in the drafting of this Stipulation and Agreed Order and any claimed ambiguity shall be construed neither for nor against either of the Parties.

15. The Parties each acknowledge that they have had the opportunity to seek advice of their own counsel in negotiating, drafting, and executing this Stipulation and Agreed Order. Each Party expressly disclaims any reliance on any statements or representations not expressly made in this Stipulation and Agreed Order in deciding whether to enter this stipulation and warrants that such Party will not assert that it was fraudulently induced into entering this Stipulation and Agreed Order by any Party or non-party.

16. Notwithstanding the provisions of rule 6004(h) of the Federal Rules of Bankruptcy Procedure, this Stipulation and Agreed Order shall be immediately effective and enforceable upon its entry.

17. Each Party shall bear its own fees and costs in preparing and prosecuting this Stipulation and Agreed Order.

18. This Court retains exclusive jurisdiction and power to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Stipulation and Agreed Order.

Signed: October 08, 2026

Christopher Lopez
United States Bankruptcy Judge

**STIPULATED AND AGREED TO BY:**

Dated: October 7, 2026

*/s/ Candice M. Carson*

**VARTABEDIAN KATZ HESTER & HAYNES LLP**
Jeff P. Prostok (Texas Bar No. 16352500)
Mary Taylor Stanberry (Texas Bar No. 24143781)
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Telephone: (817) 214-4990
Email: jeff.prostok@vkhh.com
mary.stanberry@vkhh.com

-and-

**VARTABEDIAN KATZ HESTER & HAYNES LLP**
Candice M. Carson (Texas Bar No. 24074006)
J. Blake Glatstein (Texas Bar No. 24123295)
2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201
Telephone: (469) 654-1340
Email: candice.carson@vkhh.com
blake.glatstein@vkhh.com

*Counsel to Debtor and Debtor-in-Possession*

**Arden Silverman d/b/a Capital Asset Protection**

**Exhibit 1**

**Amended Complaint**

PLD-C-001

Electronically Received 07/18/2024 08:46 AM

ATTORNEY OR PARTY WITHOUT ATTORNEY STATE BAR NUMBER:
NAME: John M. Kalajian 66366
FIRM NAME: Law Office of John M. Kalajian
STREET ADDRESS: Post Office Box 1690
CITY: Simi Valley STATE: CA ZIP CODE: 93062-1690
TELEPHONE NO.: (805) 526-8499 FAX NO.:
EMAIL ADDRESS: johnkalajian@gmail.com
ATTORNEY FOR (name): plaintiff ARDEN SILVERMAN

FOR COURT USE ONLY

FILED
Superior Court of California
County of Los Angeles
07/18/2024
David W. Slayton, Executive Officer / Clerk of Court
By: K. Hoffman Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 6230 Sylmar Avenue
MAILING ADDRESS: 6230 Sylmar Avenue
CITY AND ZIP CODE: Van Nuys, CA 91401
BRANCH NAME: VAN NUYS EAST

PLAINTIFF: ARDEN SILVERMAN dba CAPITAL ASSET PROTECTION

DEFENDANT: TEDDER ACQUISITION LLC

[X] DOES 1 TO 10

CONTRACT

[ ] COMPLAINT [X] AMENDED COMPLAINT (Number): FIRST AMENDED COMPLAINT

[ ] CROSS-COMPLAINT [ ] AMENDED CROSS-COMPLAINT (Number):

Jurisdiction (check all that apply):
[ ] ACTION IS A LIMITED CIVIL CASE (does not exceed $35,000)
Amount demanded [ ] does not exceed $10,000
[ ] exceeds $10,000
[X] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $35,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint
[ ] from limited to unlimited
[ ] from unlimited to limited

CASE NUMBER:
24VECV01237

1. Plaintiff* (name or names): ARDEN SILVERMAN dba CAPITAL ASSET PROTECTION

alleges causes of action against defendant* (name or names): TEDDER ACQUISITION LLC, DOES 1-10

2. This pleading, including attachments and exhibits, consists of the following number of pages: 13

3. a. Each plaintiff named above is a competent adult
[ ] except plaintiff (name):
(1) [ ] a corporation qualified to do business in California.
(2) [ ] an unincorporated entity (describe):
(3) [ ] other (specify):

b. [X] Plaintiff (name): ARDEN SILVERMAN
(1) [X] has complied with the fictitious business name laws and is doing business under the fictitious name (specify): CAPITAL ASSET PROTECTION
(2) [ ] has complied with all licensing requirements as a licensed (specify):

c. [ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.

4. a. Each defendant named above is a natural person
[X] except defendant (name): TEDDER ACQUSITION, LLC
(1) [ ] a business organization, form unknown.
(2) [ ] a corporation.
(3) [ ] an unincorporated entity (describe):
(4) [ ] a public entity (describe):
(5) [X] other (specify): Limited Liability Company

[ ] except defendant (name):
(1) [ ] a business organization, form unknown.
(2) [ ] a corporation.
(3) [ ] an unincorporated entity (describe):
(4) [ ] a public entity (describe):
(5) [ ] other (specify):

*If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.

4. b. The true names of defendants sued as Does are unknown to plaintiff.
   (1) [X] Doe defendants *(specify Doe numbers):* 1-5 were the agents or employees of the named defendants and acted within the scope of that agency or employment.
   (2) [X] Doe defendants *(specify Doe numbers):* 6-10 are persons whose capacities are unknown to plaintiff.
   c. [ ] Information about additional defendants who are not natural persons is contained in Attachment 4c.
   d. [ ] Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

5. [ ] Plaintiff is required to comply with a claims statute, and
   a. [ ] has complied with applicable claims statutes, *or*
   b. [ ] is excused from complying because *(specify):*

6. [ ] This action is subject to [ ] Civil Code section 1812.10 [ ] Civil Code section 2984.4.

7. This court is the proper court because
   a. [ ] a defendant entered into the contract here.
   b. [ ] a defendant lived here when the contract was entered into.
   c. [ ] a defendant lives here now.
   d. [X] the contract was to be performed here.
   e. [ ] a defendant is a corporation or unincorporated association and its principal place of business is here.
   f. [ ] real property that is the subject of this action is located here.
   g. [ ] other *(specify)* :

8. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   [X] Breach of Contract
   [X] Common Counts
   [ ] Other *(specify):*

9. [X] Other allegations: Plaintiff is the assignee of of Goldman Sachs Capital, LLC for the claims against TEDDER ACQUISITION, LLC based upon an Agreement dated April 5, 2023 attached as Ex. A. The assignment of all claims is attached as Exhibit C

10. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. [X] damages of: $ 1,127,365.96
   b. [X] interest on the damages
      (1) [X] according to proof
      (2) [X] at the rate of *(specify):* ten percent per year from *(date):*
   c. [ ] attorney's fees
      (1) [ ] of: $
      (2) [ ] according to proof.
   d. [X] other *(specify):*

11. [ ] The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers):*

Date: Julyl 15, 2024

John M. Kalajian, Attorney at Law
(TYPE OR PRINT NAME)

(SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.)*

PLD-C-001(1)

| SHORT TITLE: | CASE NUMBER: |
| --- | --- |
| SILVERMAN v TEDDER | 24VECV01237 |

FIRST (number) **CAUSE OF ACTION-Breach of Contract**

ATTACHMENT TO [X] Complaint [ ] Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1. Plaintiff *(name)*: ARDEN SILVERMAN dba CAPITAL ASSET PROTECTION

alleges that on or about *(date)*: April 5, 2023
a [X] written [ ] oral [ ] other *(specify)*:
agreement was made between *(name parties to agreement)*: plaintiff's assignor and TEDDER ACQUISITION, LLC

[X] A copy of the agreement is attached as Exhibit A, or
[ ] The essential terms of the agreement [ ] are stated in Attachment BC-1 [ ] are as follows *(specify)*:

BC-2. On or about *(dates)*: July 19, 2023
defendant breached the agreement by [ ] the acts specified in Attachment BC-2 [X] the following acts *(specify)*:
failed to pay plaintiff's assignor the 25% contingent fee per the terms of Exhibit A. Plaintiff's assignor was successful in obtaining benefits from the Internal Revenue Service totaling $4,503,209.23. Plaintiff's assignor should have received not less than $1,127,365.96 per the agreement

BC-3. Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or excused from performing.

BC-4. Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
[ ] as stated in Attachment BC-4 [X] as follows *(specify)*:
Defendant only paid plaintiff's assignor a total of $67,599.70 for plaintiff's assignor's services, leaving an unpaid balance due to plaintiff's assignor of $1,127,365.96, plus costs of suit and statutory daily interest of $308.87 per day for for 362 days or $111,810.94 through July 15, 2024.

BC-5. [ ] Plaintiff is entitled to attorney fees by an agreement or a statute
[ ] of $
[ ] according to proof.

BC-6. [ ] Other:



Form Approved for Optional Use
Judicial Council of California
PLD-C-001(1) [Rev. January 1, 2007]

**CAUSE OF ACTION-Breach of Contract**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

CEB ceb.com Essential Forms

ARDEN SILVERMAN CAPITAL ASSET PR

PLD-C-001(2)

| SHORT TITLE: SILVERMAN v TEDDER | CASE NUMBER: 24VECV01237 |
|---|---|

## SECOND (number) CAUSE OF ACTION-Common Counts

ATTACHMENT TO [X] Complaint [ ] Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

CC-1. Plaintiff *(name):* ARDEN SILVERMAN dba CAPITAL ASSET PROTECTION

alleges that defendant *(name):* TEDDER ACQUISITION LLC

became indebted to [ ] plaintiff [X] other *(name):* Plaintiff's assignor

a. [X] within the last four years
   (1) [X] on an open book account for money due.
   (2) [X] because an account was stated in writing by and between plaintiff and defendant in which it was agreed that defendant was indebted to plaintiff.

b. [X] within the last [X] two years [ ] four years
   (1) [ ] for money had and received by defendant for the use and benefit of plaintiff.
   (2) [X] for work, labor, services and materials rendered at the special instance and request of defendant and for which defendant promised to pay plaintiff.
      [X] the sum of $ 1,127,365.96
      [X] the reasonable value.
   (3) [ ] for goods, wares, and merchandise sold and delivered to defendant and for which defendant promised to pay plaintiff
      [ ] the sum of $
      [ ] the reasonable value.
   (4) [ ] for money lent by plaintiff to defendant at defendant's request.
   (5) [ ] for money paid, laid out, and expended to or for defendant at defendant's special instance and request.
   (6) [X] other *(specify):*
   See invoice attached as Exhibit B

CC-2. $ 1,127,365.96, which is the reasonable value, is due and unpaid despite plaintiff's demand, plus prejudgment interest [ ] according to proof [ ] at the rate of ten percent per year from *(date):* July 19, 2023

CC-3. [ ] Plaintiff is entitled to attorney fees by an agreement or a statute
   [ ] of $
   [ ] according to proof.

CC-4. [ ] Other:



Form Approved for Optional Use
Judicial Council of California
PLD-C-001(2) (Rev. January 1, 2009)

CAUSE OF ACTION-Common Counts

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

CEB ceb.com Essential Forms

ARDEN SILVERMAN CAPITAL ASSET PR

# EXHIBIT A

This agreement is entered into, by and between Goldman Sachs Capital ("FIRM"), and

TEDDER ACQUISITION LLC C LAYTON POW ("CLIENT").

FINANCIAL/TAX SERVICES TO BE PROVIDED. The legal services to be provided by the Firm to the Client for Employee Retention Credit service are as follows:

CONDITIONS AND RETAINER. This agreement will not take effect, and FIRM will have no obligation to provide financial and/or tax services until the CLIENT returns a signed copy of this agreement and a signed copy of the Employee Retention Credit Package:

WHEREAS, Client believes that he/she qualifies for the COVID-19 Employee Retention Credit (the "Credit") made available under the Coronavirus Aid, Relief, and Economic Security Act and modified by the Taxpayer Certainty and Disaster Tax Relief Act of 2020, the American Rescue Plan Act of 2021, and the Infrastructure Investment and Jobs Act (collectively the "Act"); Client desires to hire FIRM to assist Client in calculating and claiming the Credit; and FIRM will rely upon the information provided by the Client in providing the Services outlined herein.

NOW THEREFORE, in consideration of the foregoing and the mutual promises and covenants contained herein, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. Engagement: Upon the terms and subject to the conditions hereof, Client hereby agrees to engage FIRM to provide Client with the Services as defined in Section 2 of this Agreement and to compensate FIRM as outlined herein and FIRM will provide Client with the Services as outlined herein.

2. Services:

a. The scope of services to be provided by FIRM under this agreement are as follows ("Services"):

i. FIRM will assist Client in determining whether Client is an Eligible Employer, as defined in the Act, for purposes of the Credit;

ii. FIRM will review Client's financial statements provided to FIRM by Client, including Form 941s filed by Client for 2020 and 2021 and detailed payroll reports for 2020 and 2021;

iii. Using the information provided by Client, FIRM will analyze and compare Client's gross receipts during the calendar quarters of 2020 and 2021 to the corresponding calendar quarter of 2019 to determine whether Client is eligible to claim the Credit based on a reduction in revenue, as further described in the Act;

iv. Analyze Client's business impacts to determine whether Client is eligible for the Credit based on operations being fully or partially suspended due to government orders, as further described in the Act; and

v. FIRM may utilize the affiliated certified public accountant(s) (the "CPA") to file the appropriate Form(s) 941-X for purposes of claiming the Credit.

b. FIRM reserves the right to refuse to calculate or assist a Client in claiming a Credit that FIRM believes in good faith lacks merit.

c. FIRM shall rely upon all representations made by the Client, including, but not limited to, financial statements, Forms 941, payroll reports, gross receipts, business impacts, previous credits, and other relief or benefits obtained by Client in assessing Client's eligibility for the Credit. FIRM ultimately will rely upon the CPA to make a final determination for eligibility based on these representations by the Client. Client shall notify FIRM of any Paycheck Protection Program ("PPP") loans received. An Eligible Employer may claim the Credit if it received a PPP loan authorized under the CARES Act; however, FIRM will rely on the information provided to ensure that employee wages that are covered costs for PPP loan forgiveness are not also used towards the Credit.

Initial SL____

d. Client agrees that the CPA will monitor the status of the Credit. The Client will not be charged an additional fee for such services. Client agrees to complete and execute Form 8821 – Tax Information Authorization (attached as Exhibit A and incorporated herein by reference). Client agrees that the CPA will file the completed Form 8821 on behalf of the Client with the Internal Revenue Service ("IRS"), which will entitle the CPA and FIRM to obtain information related to the status, transcripts, any problems that may arise, and the processing of the Credit (the "Credit Submission"). Client authorizes the CPA and FIRM to share information about the Credit Submission freely with Client's representatives so that FIRM can best advise Client of the collectability and expected timelines of the Credit processing.

e. The authorized Tax Return Information includes, but is not limited to, employee payroll, healthcare costs, tax returns, profit and loss statements, Forms 941, and other financial documents used for tax preparation. FIRM will keep all provided Tax Return Information confidential and safeguarded in compliance with IRS revenue procedures and federal law.

f. FIRM or its affiliate's will represent the Client for any audit solely related to the Employee Retention Credit. The Services shall include representation by the FIRM before the IRS or any other governmental entity regarding audit, investigation, status, and any other problem that may arise in processing the credit. The FIRM is not responsible for any prior relationship/dealing between the client and the IRS before entering into this contract. FIRM will not audit of Client's drawings or documentation provided, which is expected to be accurate and truthful; verification of Client's information for accuracy or completeness, or to detect errors, fraud, or theft; identification or communication of deficiencies in Client's internal controls; and legal advice to Client.

3. Client Obligations: The Client shall: (1) provide accurate and complete information to FIRM, including in the Client Questionnaire (attached as Exhibit B and incorporated herein by reference or which will be made available electronically by FIRM) or similar document provided by FIRM to Client; (2) provide any supplemental information reasonably required by the IRS to process the Credit; (3) inform FIRM in writing whether Client was closed down due to a federal, state, or local government order; (4) file the original Forms 941 for each quarter in calendar years 2020 and 2021; (5) notify FIRM in writing if Client has previously filed for a Credit in any quarter in calendar years 2020 and 2021; (6) notify FIRM of any PPP loans received and whether employee wages were covered costs for any PPP loan forgiveness; (7) indemnify and hold harmless FIRM from any claim arising from Client's production of false or misleading information, as further described below; (8) properly report all Credits; and (9) notify FIRM in writing of any disagreement with or objection to the Credit delivered to Client and give FIRM the opportunity to amend the Credit, as necessary.

4. Fees and Payments: The Fee for Services outlined herein shall be an amount equal to (25%) of the Gross Credit identified by FIRM and awarded by the IRS to Client ("Fee"). The pro rata portion of the Fee shall be due to FIRM when the IRS pays the Credit for each quarter. FIRM will not charge any upfront fees. The Fee is due and payable within fourteen (14) days after the Client receives the Credit from the IRS and must be remitted to Goldman Sachs Capital LLC at 18653 Ventura Blvd # 107 Tarzana Ca 91356, or by wire transfer (consult your representative for wire transfer instructions). Suppose Goldman Sachs Capital (FIRM) does not receive the Fee within 14 days. In that case, the Client agrees to pay interest charges equal to the higher amount of ten percent (10%) annually or the maximum rate permitted by law until paid in full. The Fee (25%) will be deemed non-refundable for any reason once collected by FIRM. It is hereby acknowledged and agreed that all shareholders of the company are financially responsible and personally guarantee this contract.

In the event that a refund check for the Employee Retention Tax Credit is different from the amount claimed in the amended Form 941, then Client will need to initially call the Internal Revenue Service to "Request a Transcript of Explanation." If there is an error of miscalculation, then FIRM will charge the service fee based upon the actual amount of the refund check. However, if Client owes the IRS any outstanding tax liabilities that will reduce the actual check refund amount, then the Service Fee is still applicable, and is based on the actual amount claimed in the amended Form 941.

5. Confidentiality: The Client grants FIRM the right to access

Initial SL ____

Client's confidential information ("Confidential Information"), including business documents, records, processes, intellectual property, financial information, financial statements, and all other forms of proprietary client information, to provide the Services. Client agrees to provide all Confidential Information to FIRM necessary to provide the Services promptly. FIRM will hold all Confidential Information in such a manner as to protect the Confidential Information from being accessed by third parties as required by law. FIRM is under no obligation to store or otherwise retain Client's Confidential Information or other Client files, and the Client is advised to retain its paper and electronic version of all Client's files, including, without limitation, relevant source data, for at least six (6) years. FIRM reserves the right to destroy, or otherwise dispose of, Client's Confidential Information or other Client files at any time.

6. Representations and Warranties:

a. FIRM represents and warrants that FIRM shall perform the Services in a professional and workmanlike manner.

b. Client represents and acknowledges that FIRM' Services to Client hereunder are not exclusive. FIRM shall be free to furnish similar services to others, including other third parties who may be Client's competitors.

c. Client represents and acknowledges that FIRM makes no guarantees concerning the Credit and that FIRM cannot control or determine whether the IRS will allow or disburse any Credit.

d. except for the express representations and warranties contained in this section, neither FIRM nor any other person on FIRM' behalf, has made or makes any express or implied representation or warranty, either oral or written, whether arising by law, course of dealing, course of performance, usage, trade or otherwise, all of which are expressly disclaimed and Client acknowledges that it has not relied upon any representation or warranty made by FIRM or any other person on FIRM' behalf, except as specifically provided in this section.

7. Limitation of Remedies: FIRM' liability under this agreement is limited to actual direct damages and the amount that FIRM received from the Client. In no event shall FIRM be liable for any incidental, consequential, special, indirect, punitive, or third-party damages or claims, including lost profits, lost savings, lost productivity, loss of data, or loss from interruption of business under this agreement.

8. Indemnification: Client shall defend, indemnify, and hold harmless FIRM and its attorneys, directors, officers, agents, representatives, members, managers, employees, successors, and assigns (collectively "Indemnitees"), to the maximum extent permitted by law for any action, suit, or proceeding, whether civil, criminal, investigative, or administrative, arising from or related to this agreement. Client shall indemnify, defend, and hold FIRM and its Indemnitees harmless from and against any costs, damages, claims, suits, actions, liabilities, losses, and judgments, including attorney fees, arising out of or relating to Client's (a) access to or use of the Services, (b) breach of any representation and warranty or any covenant under this agreement, (c) providing false, misleading, or incorrect information (d) failure to claim the tax credit on business tax returns properly, and (e) negligence, fraud, or willful misconduct, including the negligence, fraud, or willful misconduct of the Client's affiliates and representatives. Goldman Sachs Capital LLC (FIRM) is an affiliated, associated, authorized entity of Tax Resolution Plus located at 1231 E Dyer Rd ste170 Santa Ana, CA and all processing will be done by Tax Resolution Plus.

9. Severability: If a court of competent jurisdiction holds that any provision of this agreement is invalid, illegal, or unenforceable, that holding shall not affect the validity of the other provisions of this agreement, which shall remain in full force and effect, and this agreement shall be construed as if the offending provision(s) had not been contained herein.

10. Modification: No part of this agreement may be amended, modified, or waived unless such amendment, modification, or waiver is outlined in a later writing signed by both Parties. A modification, amendment, or waiver of any one provision of this agreement shall not be deemed a modification, amendment, or waiver of any other provision.

Initial SL

11. Waiver. The Parties agree that any waiver of any part of this agreement shall not be a waiver of any other part of the agreement, nor shall any waiver of a breach of any part of this agreement constitute a waiver of any breach of any other part of this agreement or any other breach.

12. Mediation and Jurisdiction. If a dispute arises from or related to this agreement or the breach thereof, and if the dispute cannot be settled through direct discussions, then the Parties agree to engage in mediation through a mutually agreed-upon mediator. This agreement will be governed and construed in all respects according to the laws of California. Goldman Sachs Capital LLC (FIRM) is an affiliated and authorized entity of Tax Resolution Plus. Any action arising from or related to this agreement shall be brought in the federal or state courts in Santa Ana or Orange County in California.

13. Attorney's Fees: In any action to interpret or enforce the terms of this agreement, the prevailing Party shall be entitled to recover its reasonable attorney fees and out-of-pocket costs incurred in connection with such action in addition to any other relief which may be awarded.

14. Entire Agreement. This agreement constitutes the agreement and understanding between the Parties concerning the subject matter. It supersedes any prior Agreement or understanding relating to this agreement, whether express or implied.

زبان اولیه اینجانب انگلیسی نمی باشد، زمان کافی و توضیحات لازمه در جهت خواندن ، درک و امضای این قرارداد را دریافت کرده ام .

Английский не мой основной язык.Мне дали достаточно времени, чтобы прочитать и понять этот договор.

Անգլերենն իմ առաջնային լեզուն չէ: Ինձ հատկացվել է բավականաչափ ժամանակ տվյալ պայմանագիրը կարդալու և հասկանալու համար:

English is not my primary language, I have been given enough time to read and understand this agreement.

Inglés no es mi idioma principal. Se me ha dado suficiente tiempo para leerlo y entender este acuerdo.

**IN WITNESS WHEREOF, the undersigned Client has signed this agreement as of the date set forth above.**

**Signature:** Sanaz Little ____________ **Owner/Authorized name:** Sanaz Little

**Date:** 04/05/2023 **Companies Name: TEDDER ACQUISITION LLC C LAYTON POW**

Initial SL

## ADDENDUM TO AGREEMENT

This Addendum to that certain Agreement between Goldman Sachs Capital and its owners and affiliates ("FIRM") and TEDDER ACQUISITION LLC C LAYTON POW ("CLIENT"), dated April 5, 2023 ("Agreement") relating to the services provided by FIRM regarding the potential for CLIENT to claim a refund relating to the Employee Retention Tax Credit ("Credit") under the Act.

WHEREAS, the Agreement provides in Section 10 that the Agreement may not be amended, modified or waived unless such amendment. modification or waiver is in writing signed by both parties;

WHEREAS, the FIRM and the CLIENT desire to amend and modify the Agreement as provided in this Addendum.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and covenants contained herein, the receipt and sufficiency of which is hereby acknowledge, the Parties agree as follows:

1. Refund of Fees and Payments. Paragraph 4 of the Agreement is replaced in its entirety with the following:

> 4. Fees and Payments. The Fee for Services outlined herein shall be an amount equal to 25% of the amount of the Credit shown on any of the CLIENT's Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund (i.e., Form 941-X) for which FIRM has identified that CLIENT is eligible to receive and that the IRS refunds to the CLIENT ("Fee") regardless of whether such refund is reduced due to the CLIENT's other outstanding tax liabilities. The Fee is due and payable within fourteen (14) days after the CLIENT receives any refund from the Department of Treasury resulting from claiming the Credit. All payments shall be remitted to Goldman Sachs Capital LLC at 18653 Ventura Blvd #107, Tarzana, CA 91356. At the expiration of the 14-day period, the CLIENT will owe FIRM interest equal to the lesser of ten percent (10%) per annum or the maximum rate permitted by law.
>
> In the event of any adjustment to the amount of the Credit so that the CLIENT is required to return any portion of the Credit received by CLIENT, FIRM shall refund to CLIENT any portion the Fee attributable to the amount payable by CLIENT. By way of example, if the CLIENT's Credit is adjusted so that the CLIENT must repay $100,000 of the Credit received by CLIENT, then FIRM will refund $25,000 to Client ($100,000 times 25% fee). Upon the issuance of any adjustment to the amount of the Credit so that the CLIENT is required to return any portion of the Credit it received, the FIRM will pay CLIENT the refund of the Fee within 14 days of the final determination that the CLIENT's Credit amount is adjusted. At the

expiration of the 14-day period, the FIRM will owe CLIENT interest equal to the lesser of ten percent (10%) per annum or the maximum rate permitted by law.

The shareholder and owners of CLIENT and FIRM hereby agree and acknowledge they personally guarantee all payments under this Section 4 of the Agreement.

2. Definitions. Except as defined herein, all capitalized terms used in this Addendum shall have the same definitions and meaning as provided in the Agreement.

3. Successors and Assigns. The Agreement and this Addendum shall be binding on all successors, assigns and affiliates of the FIRM and the CLIENT.

4. Ratification. Except as amended and modified in Paragraph 1, above, all provisions of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the undersigned have executed this Addendum on the date set forth below.

| FIRM | CLIENT |
|---|---|
| GOLDMAN SACHS CAPITAL | TEDDER ACQUISITION LLC C LAYTON POW |
| By: [signature] | By: [signature] |
| Name: Arian Eghbali | Name: Sanaz Little |
| Title: Manager | Title: COO |
| Date: 7-26-2023 | Date: 7-26-23 |

\\fs1\dms\wdocs\clntfls\23578\21910050\00855530.docx

# EXHIBIT B

**Goldman Sachs Capital LLC**
18653 Ventura Blvd # 107
Tarzana, CA 91356 US
Billing@goldmansc.com

## INVOICE

BILL TO
TEDDER ACQUISITION LLC
C LAYTON POW
4411 W Riverbend Ave
Post Falls, ID 83854

| | |
|---|---|
| INVOICE | 9843 |
| DATE | 07/19/2023 |
| TERMS | 5 days |
| DUE DATE | 08/23/2023 |

| ACTIVITY | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| ERC CHECKS | $270,398.79 : 4th Quarter of 2020 | 270,398.79 | 0.25 | 67,599.70 |
| Services | PAID $67,599.70 | -67,599.70 | 1.00 | -67,599.70 |
| ERC CHECKS | $1,232,204.04 : 3rd Quarter of 2021 | 1,232,204.04 | 0.25 | 308,051.01 |
| ERC CHECKS | $1,533,556.71 : 2nd Quarter of 2021 | 1,533,556.71 | 0.25 | 383,389.18 |
| ERC CHECKS | $1,467,049.69 : 1st Quarter of 2021 | 1,467,049.69 | 0.25 | 366,762.42 |
| ERC CHECKS | $276,653.41 : 2nd Quarter of 2020 | 276,653.41 | 0.25 | 69,163.35 |

| | |
|---|---|
| SUBTOTAL | 1,127,365.96 |
| TAX | 0.00 |
| TOTAL | 1,127,365.96 |
| BALANCE DUE | **$1,127,365.96** |



| | |
|---|---|
| 308,051•01 | + |
| 383,389•18 | + |
| 366,762•42 | + |
| 69,163•35 | + |
| 1,127,365•96 | * |
| 0• | C |
| 1,232,204•04 | + |
| 1,533,556•71 | + |
| 1,467,049•69 | + |
| 276,653•41 | + |
| 4,509,463•85 | x |
| 0•25 | = |
| 1,127,365•97 | * |

# EXHIBIT C

Arden B. Silverman dba Capital Asset Protection Pro Per (Assignee)
23679 Calabasas Rd. #677
Calabasas, CA. 91302
818 404 9800

| | |
|---|---|
| Arden Silverman dba Capital Asset Protection; Plaintiff/Assignee<br>vs.<br>Tedder Industries, LLC; Tedder Acquisitions, LLC; Inc. Tedder Acquistion LLC C Layton POW; Sanaz Little; Main Street Equity Interests, Inc, MSC Equity Holding, LLC; Tetiri Tedder, Thomas Tedder; TI Holdings LLC etc. et. al<br>Defendant(s) | Assignment |
| Goldman Sachs Capital LLC<br>Assignor | |

For good and valuable consideration, the receipt of which is hereby acknowledged, Assignor named on p.1 above hereby assigns to assignee herein

their right title and interest to all claims they hold against all Defendants.

Dated:

Capital Asset Protection

By: ______________________

Arden Silverman, assignee

Dated:

Goldman Sachs Capital

By: ______________________

Arian Egbali, assignor